Thomas C. Lundin Jr. (admitted *pro hac vice*)
tom.lundin@fisherbroyles.com
FISHERBROYLES LLP
111 Favre Street
Waveland, MS 39576
Tel. (678) 778-8857

Larry R. Schmadeka (SBN 160400)
larry.schmadeka@fisherbroyles.com
FISHERBROYLES LLP
260 Newport Center Dr., Ste. 100
Newport Beach, CA 92660
Tel. (949) 694-5388

*Attorneys for Defendants*
*Michael Len Williams, II; Sounds*
*From Eardrummers, LLC; W Chappell*
*Music Corp f/k/a WB Music Corp.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>ONIKA TANYA MARAJ P/K/A NICKI MINAJ, et al.<br><br>Defendants. | Case No. 2:23-cv-05061-PA-AFM<br><br>**DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date:  November 6, 2023<br>Time:  1:30 p.m.<br>Place:  Courtroom 9A<br><br>**Honorable Percy Anderson** |

I, Thomas C. Lundin Jr., hereby declare:

1.    I am an attorney with the law firm FisherBroyles LLP, located at 111 Favre Street, Waveland, Mississippi 39576, and counsel for defendants Michael Len Williams, II; Sounds From Eardrummers, LLC; and W Chappell Music Corp. d/b/a WC Music Corp. f/k/a WB Music Corp. ("the Moving Defendants"). I am a member in good standing of the State Bars of Georgia, Louisiana, and Mississippi and have been admitted *pro hac vice* before this Court. I submit this declaration in support of the Motion to Dismiss Complaint by Moving Defendants filed concurrently herewith.

2.      I have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would competently testify thereto.

3.      Attached as Exhibit A hereto is a true and correct copy of my letter letter to Plaintiff's counsel dated September 15, 2023 with the subject line "Local Rule 7-3 Conferral; Rule 11 Notice[.]"

4.      Attached as Exhibit B hereto is a true and correct copy of the letter of Plaintiff's counsel to me in response dated September 22, 203.

5.      Attached as Exhibit C hereto is a true and correct copy of my letter to Plaintiff's counsel in response dated September 25, 2023.

6.      Attached as Exhibit D hereto is a true and correct copy of *Circular 50: Copyright Registrations for Musical Compositions* published by the U.S. Copyright Office, available at <https://www.copyright.gov/circs/>.

7.      Attached as Exhibit E hereto is a true and correct copy of *Circular 56: Copyright Registrations for Sounds Recordings* published by the U.S. Copyright Office, available at <https://www.copyright.gov/circs/>.

8.      Attached as Exhibit F hereto is a true and correct copy of *Circular 56A: Copyright Registration of Musical Compositions and Sound Recordings* published by the U.S. Copyright Office, available at <https://www.copyright.gov/circs/>.

9.      Attached as Exhibit G hereto is a true and correct copy of a "Cease And Desist" letter from Plaintiff's counsel to Jeffrey Harleston, Esq.; Onika Tanya Maraj a/k/a/ and p/k/a Nicki Minaj; Universal Music Publishing Group, Inc[.] dated March 31, 2022, which is referenced in Paragraph 54 of the Complaint in this action.

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted, October 5, 2023

/s/Thomas C. Lundin Jr.
Thomas C. Lundin Jr. (admitted *pro hac vice*)
tom.lundin@fisherbroyles.com
FISHERBROYLES LLP
111 Favre Street
Waveland, MS 39576
Tel. (678) 778-8857

Larry R. Schmadeka (SBN 160400)
larry.schmadeka@fisherbroyles.com
FISHERBROYLES LLP
260 Newport Center Dr., Ste. 100
Newport Beach, CA 92660
Tel. (949) 694-5388

*Attorneys for Defendants*
*Michael Len Williams, II; Sounds*
*From Eardrummers, LLC; W Chappell*
*Music Corp f/k/a WB Music Corp.*

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Exhibit A

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

**Thomas C. Lundin Jr.**
Partner
tom.lundin@fisherbroyles.com
Direct: 678.778.8857
Mailing: 111 Favre St.
          Waveland, MS 39576
Office:  3440 Peachtree Rd. NE, Suite 1800
         Atlanta, GA 30326
www.FisherBroyles.com

September 15, 2023

**BY EMAIL (DAYNA@COOPERLEGALSOLUTIONS.COM; LSANDELL@MEIMARK.COM; MLI@MEIMARK.COM);
CONFIRMATION COPY BY PRIORITY MAIL**

| Ms. Dayna C. Cooper | Mr. Lawrence M. Sandell | Ms. Manni Li |
|---|---|---|
| Cooper Legal, LLC | Mei & Mark LLP | Mei & Mark LLP |
| 1 Olympic Pl., Suite 900 | P.O. Box 65981 | 9465 Wilshire Blvd., Suite 300 |
| Towson, MD 21204 | Washington, DC 20035-5981 | Beverly Hills, CA 90212 |

   Re: *Johnson v. Maraj et al.*, No. 2:23-cv-5061-PA-AFM
    Local Rule 7-3 Conferral; Rule 11 Notice

Counsel:

As noted in my September 3, 2023 email message, this firm represents Michael Len Williams II and Sounds from Eardrummers, LLC ("Eardrummers") in connection with the above-referenced civil action filed by you on behalf of Julius Johnson.

This letter is to notify you of serious deficiencies in the Complaint that require withdrawal of the Complaint or other action to remedy the deficiencies. This letter is being sent in accordance with C.D. Cal. L.R. 7-3, Judge Anderson's Standing Order [D.I. 12], and Fed. R. Civ. P. 11.

Having reviewed the Complaint, my clients intend, at a minimum, to file a motion to dismiss under Fed. R. Civ. P. 12(b)(6) as a result of the numerous deficiencies discussed below. In addition, certain of the deficiencies are of such significance that the allegations appear to violate Rule 11(b), and my clients likely will file a motion seeking sanctions under Rule 11(c) if the claims are not withdrawn or absent provision of certain information requested herein. A Rule 11 motion is not a step we undertake lightly, and we want to give you full opportunity to provide your purported good faith basis before this matter escalates into a full-blown Rule 11 motion.

As you may know, Judge Anderson's Standing Order provides, in pertinent part:

> Many motions to dismiss or to strike could be avoided if the parties confer in good faith (as they are required to do under L.R. 7-3), especially for perceived defects in a complaint, answer or counterclaim which could be corrected by amendment. . . . These principles require that counsel for the plaintiff should carefully evaluate the defendant's contentions

---

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

5
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 2 of 15

> as to the deficiencies in the complaint and in many instances, the moving party should agree to any amendment that would cure a curable defect.

D.I. 12 at 4-5. In light of that admonition and the requirements of L.R. 7-3, we are providing the following identification of defects in the Complaint.

As an initial matter, each of the below defects renders the Complaint and/or relevant individual claim subject to dismissal under Fed. R. Civ. P. 12(b)(6) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and their progeny, including applications thereof by Ninth Circuit courts.

**Failure to Distinguish Among Named Defendants**

The entire Complaint is subject to dismissal because it impermissibly lumps all defendants together without distinguishing among the named defendants and identifying specific facts that allegedly give rise to liability for each defendant separately. The Complaint is a prototypical "shotgun pleading" that the Ninth Circuit has repeatedly and consistently held is subject to dismissal. Indeed, the Complaint is a "shotgun pleading" in each of the two senses used by the Central District of California and the Ninth Circuit:

> One common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term "Defendants" throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong. Another type is where the plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then "each count incorporates every antecedent allegation by reference."

*Sollberger v. Wachovia Sec., LLC*, 2010 U.S. Dist. LEXIS 66233, at *12 (C.D. Cal. June 30, 2010). Here, the Complaint suffers from both deficiencies. A "shotgun pleading" is subject to dismissal on that ground alone. *Gavriliuc v. Teksystems, Inc.*, No. 8:20-cv-02164-JLS-DFM, 2021 U.S. Dist. LEXIS 168287, at *6-7 (C.D. Cal. Apr. 14, 2021) ("This defect alone warrants dismissal.").

The Complaint's failure to distinguish among named defendants "mak[es] it impossible to discern which allegations are targeted against which defendants." *Id.* (quoting *Zinzuwadia v. Mortg. Elec. Registration Sys., Inc.*, No. 2:12-CV-02281-KJM, 2012 U.S. Dist. LEXIS 182797, 2012 WL 6737837, at *7 (E.D. Cal. Dec. 28, 2012)). The Complaint is rife with examples. Paragraph 31 alleges that "Defendants in their individual and respective capacities and/or acting in concert with each other," allegedly infringed Plaintiff's alleged work. And every subsequent paragraph alleges action(s) by "Defendants" collectively,

---

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

6
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 3 of 15

that is, "uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong." *Sollberger*, 2010 U.S. Dist. LEXIS 66233, at *12.

Note that the bare, conclusory allegation that "[o]n information and belief, . . . Defendants . . . act[ed] in concert with each other" [Compl. ¶ 31] cannot remedy this deficiency. *See, e.g., Gavriliuc*, 2021 U.S. Dist. LEXIS 168287, at *6-7 ("Although Plaintiff reiterates his allegation from the Complaint that 'all Defendants acted as agents of all other Defendants in committing the acts alleged in the complaint,' this conclusory legal allegation does not absolve Plaintiff of the basic federal pleading requirements under Rule 8(a), *Twombly*, and *Iqbal*.").

Another, particularly egregious example is shown by the Complaint's assertion of claims against "All Defendants" for each of direct infringement, vicarious infringement, and contributory infringement of Plaintiff's alleged copyright rights. This constitutes a separate and independent ground for dismissal of those claims, as discussed in greater detail below, but also exemplifies the impossibility of discerning which allegations are targeted at which defendants, in violation of the notice requirements of Fed. R. Civ. P. 8 and *Twombly*.

Further, in attempting to allege access, as discussed in greater detail below, the Complaint relies on the vague allegations that "[o]n information and belief, associates and/or affiliates of Minaj and Williams found or otherwise acquired Johnson's hard drive containing the Composition." [Compl. ¶ 28] Aside from the other serious defects discussed below, the failure to distinguish between Mr. Williams and Ms. Minaj, and failure to "identif[y] a single occasion in which [Mr. Williams] or [Ms. Minaj] engaged in unlawful conduct[,]" *Gavriliuc*, 2021 U.S. Dist. LEXIS 168287, at *6-7, together "mak[e] it impossible to discern which allegations are targeted against which defendants." *Id.; see also Sollberger,* 2010 U.S. Dist. LEXIS 161357, at *18-20 (Complaint failed to make specific allegations against specific defendants).

As a result of the foregoing, the entire Complaint fails to satisfy Fed. R. Civ. P. 8 and *Twombly*, and is subject to dismissal under Fed. R. Civ. P. 12(b)(6). *See, e.g., Beyond Blond Prods. v. Heldman*, 2020 U.S. Dist. LEXIS 150556, at *11 (C.D. Cal. Aug. 17, 2020) ("[A] complaint which lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).").

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

7
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 4 of 15

**The Complaint Alleges Direct, Vicarious, and Contributory Copyright Infringement Against All Defendants**

Well-established and controlling Ninth Circuit precedent holds that a defendant cannot be secondarily liable for its own infringement. *See, e.g., A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by *a third party*.") (emphasis added). Accordingly, claims for contributory and vicarious copyright infringement against defendants who are also alleged to have directly infringed cannot survive dismissal. *See, e.g., Smith v. Weeknd*, 2019 U.S. Dist. LEXIS 221922, at *7-9 (C.D. Cal. Aug. 23, 2019).

In dismissing such claims in *Smith,* the court rejected the plaintiff's argument that "defendants are simultaneously direct, contributory, and vicarious infringers" because "while the Defendants certainly directly infringe, they also necessarily contributorily and vicariously infringe when the song is played on streaming services, advertised and played on social media, downloaded, and sold in stores or online[.]" *Id.* Citing *A&M Records,* the court dismiss the vicarious and contributory infringement claims with leave to amend, noting that any amended claims must include well-pleaded facts, as opposed to legal conclusions, alleging specific conduct by each specific defendant. *Id.*; *see also*

The court in *Sound & Color, LLC v. Smith*, 2023 U.S. Dist. LEXIS 34402 (C.D. Cal. Feb. 28, 2023), similarly dismissed claims for contributory and vicarious infringement where the Complaint failed to "distinguish[] which of these defendants took what specific actions," such that it pleaded the elements of secondary liability for copyright infringement: "Plaintiff asserts all three of its claims against all defendants and alleges that all defendants engaged in the same broad conduct, without providing sufficient non-conclusory facts that would assist each defendant is deciphering what grounds Plaintiff is basing its claims against them." *Id.* at *49-50 *(quoting Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1074 (E.D. Cal. 2021) ("A plaintiff who sues multiple defendants must allege the basis of [its] claim against each defendant."); *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088 (E.D. Cal. 2014) (dismissing complaint where it lacked "facts of the defendants' specific wrongdoing to provide fair notice as to what each defendant is to defend.")).

Because the Complaint alleges direct, vicarious, and contributory infringement against all defendants, at least the claims for vicarious and contributory infringement cannot stand under controlling Ninth Circuit precedent. Moreover, the assertion of each claim against all defendants fails to give each defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555. As a result all three claims for direct, vicarious, and contributory infringement must be dismissed under *Twombly. See, e.g., Lynwood Invs. CY Ltd. v. Konovalov*, 2021 U.S. Dist. LEXIS 58501, at *52-

---

ATLANTA  |  AUSTIN  |  BOSTON  |  CHARLOTTE  |  CHICAGO  |  CINCINNATI  |  CLEVELAND  |  COLUMBUS  |  DALLAS
DENVER  |  DETROIT  |  HOUSTON  |  LONDON  |  LOS ANGELES  |  MIAMI  |  NAPLES  |  NEW YORK  |  PALO ALTO
PHILADELPHIA  |  PRINCETON  |  SALT LAKE CITY  |  SEATTLE  |  WASHINGTON D C  |  WILMINGTON

8
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 5 of 15

53 (N.D. Cal. Mar. 25, 2021) (dismissing direct infringement claim where Complaint "lumps all the defendants together without stating which entity or person copied the work" and some allegations "belie the notion that all defendants copied the work"); *Bravado Int'l Group Merch. Servs. v. Cha*, 2010 U.S. Dist. LEXIS 80361, 2010 WL 2650432, at *6 (C.D. Cal. June 30, 2010).

**The Complaint Fails to Plausibly Allege Direct Infringement**

Courts in the Ninth Circuit may dismiss copyright claims at the pleading stage when those claims are deficient on their face. *Patel Burica & Assocs. v. Lin*, 2020 U.S. Dist. LEXIS 15774, at *7 (C.D. Cal. Jan. 30, 2020) (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018); *Gadh v. Spiegel*, 2014 U.S. Dist. LEXIS 64081, 2014 WL 1778950, at *3 n. 2 (C.D. Cal. Apr. 2, 2014) (collecting cases and finding that for "fifty years" courts have followed the Ninth Circuit's decision in *Christianson v. West Publishing Co.*, 149 F.2d 202, 203 (9th Cir. 1945) to "dismiss[] copyright claims that fail from the face of the complaint ... in light of all matters properly considered on a motion to dismiss"). Here, the Complaint fails to allege the required elements of copying, access, or substantial similarity.

"Absent direct evidence of copying, proof of [copyright] infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016); see also *Schkeiban v. Cameron*, 2012 U.S. Dist. LEXIS 194037, at *1-2 (C.D. Cal. May 10, 2012) ("Copying may be established by demonstrating that, (1) the defendant had access to the work and (2) "that the works at issue are substantially similar in their protected elements.") (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).

Failure to plead sufficient facts, as opposed to mere speculation, to render any one of the foregoing elements plausible on its face, including without limitation access, renders a claim subject to dismissal. *See, e.g., Schkeiban*, 2012 U.S. Dist. LEXIS 194037, at *2 (dismissing claim where "Plaintiff has pled no facts indicating that it was reasonably possible that defendants had access to the work but rather merely speculate that it occurred without foundation"); *Evans v. NBCUniversal Media, LLC*, 2021 U.S. Dist. LEXIS 194586, at *13-14 (C.D. Cal. Sep. 30, 2021) (denying motion for leave to file amended complaint because proposed amendments failed to cure deficiencies identified by the court in dismissing claims for failure to plead access). "Plaintiff's failure to allege access alone defeats the claim[.]" *Hayes v. Minaj*, 2013 U.S. Dist. LEXIS 201336, at *8 (C.D. Cal. Aug. 13, 2013).

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). Access "may not be inferred through mere speculation or conjecture," but rather must be based on "significant, affirmative and probative evidence." *Hayes*, 2013 U.S. Dist.

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

9
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 6 of 15


LEXIS 201336, at *7 (quoting *Bernal v. Paradigm Talent and Literary Agency*, 788 F. Supp. 2d. 1043, 1053-54 (C.D. Cal. 2010)). A plaintiff can either "(1) establish[] a chain of events linking the plaintiff's work and the defendant's access, or (2) show[] that the plaintiff's work has been widely disseminated."[1] *Carlini v. Paramount Pictures Corp.*, 2021 U.S. Dist. LEXIS 46481, at *20-21 (C.D. Cal. Feb. 2, 2021).

**The Complaint Fails to Allege Access**

The Complaint attempts to allege a "chain of events" by alleging "on information and belief" that unnamed "associates and/or affiliates" of defendants Minaj and Williams were present at the Art Institute of Atlanta during the same ambiguous period as Plaintiff, and that said unnamed "associates and/or affiliates of Minaj and Williams found or otherwise acquired" a hard drive that Plaintiff allegedly lost. [Compl. ¶ 24-28] Voluminous authority establishes that such wildly speculative allegations are insufficient to survive a motion to dismiss. *See, e.g., Carlini v. Paramount Pictures Corp.*, 2021 U.S. Dist. LEXIS 46481, at *20-21 (C.D. Cal. Feb. 2, 2021) (speculation based on attenuated connections insufficient to plead access); *Karmo v. Morgan Creek Entm't Grp.*, 2019 U.S. Dist. LEXIS 133833, at *12-13 (C.D. Cal. Apr. 12, 2019) (speculation insufficient to establish access); *Washington v. ViacomCBS, Inc.*, 2020 U.S. Dist. LEXIS 188005, at *7-9 (C.D. Cal. Aug. 20, 2020) (mere speculation that defendant viewed work); *Johnson v. Knoller*, 2017 U.S. Dist. LEXIS 217782, at *4-5 (C.D. Cal. Sep.

---

[1] The Complaint does not allege widespread dissemination. Even if it could be interpreted to allege access through widespread dissemination, such an allegation would fail as a matter of law. As to alleged dissemination of Plaintiff's alleged work prior to the alleged infringement, the Complaint alleges only: "On September 23, 2011, Johnson, via his personal YouTube channel, JcubedEnt, published the Composition. Exhibit A. The Composition is still available for viewing at https://www.youtube.com/watch?v=Q-ATmEOOjs0&t=71s (last accessed June 14, 2023)." Compl. ¶ 22. Such an allegation is insufficient to plead widespread dissemination. *See, e.g., Loomis*, 2013 U.S. Dist. LEXIS 162607, at *47 ("The availability of a copyrighted work on the Internet, in and of itself, is insufficient to show access through widespread dissemination."); *Batts v. Adams*, 2011 U.S. Dist. LEXIS 161402, at *11-12 (C.D. Cal. Feb. 8, 2011) (finding that access was not established by evidence that the plaintiffs' song was posted on YouTube, Amazon.com and iTunes); *Hayes v. Keys*, 2015 U.S. Dist. LEXIS 2860, at *7 (C.D. Cal. Jan. 7, 2015) (finding that access was not established by the plaintiffs' sole allegation that the work was uploaded to YouTube). Here, the appearance of Plaintiff's alleged work on YouTube alone would not establish widespread dissemination, particularly where, as of this writing, the YouTube post has been viewed only 116 times in approximately 12 years. Any argument that Paragraph 23 alleges widespread dissemination ("Johnson repeatedly re-published and re-circulated the Composition from the years of 2012-2015 via his personal social media platform(s).") would fail for the same reasons, *see, e.g., Batts*, 2011 U.S. Dist. LEXIS 161402, at *11-12, and because that allegation fails to allege facts concerning the number of times the alleged work was posted prior to the alleged infringement, the identity of the social media accounts, the number of followers of the social media accounts, and other facts.

---

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

10
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 7 of 15

18, 2017) (bare allegations and mere speculation insufficient to raise more than a mere possibility of access); *Batts v. Adams*, 2011 U.S. Dist. LEXIS 161402, at *9 (C.D. Cal. Feb. 8, 2011) (*quoting Herzog v. Castle Rock Entmt.,* 193 F.3d 1241, 1252 (11th Cir. 1999) ("An inference of access "requires more than a mere allegation that someone known to the defendant possessed the work in question"); *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996) (rejecting claim of access based upon a "tortious [sic] chain of hypothetical transmittals")); see also *Hord v. Jackson*, 281 F. Supp. 417, 423 (S.D.N.Y. 2017) ("Plaintiffs' naked assertions in their Complaint, that two non-parties allegedly showed the work to Defendants, are insufficient to establish access.") (quoted in *Karmo*); *Davis v. Raymond,* 2012 U.S. Dist. LEXIS 197347, at *7-9 (S.D. Fla. Nov. 29, 2012); *Weller v. Flynn*, 312 F. Supp. 3d 706, 718-19 (N.D. Ill. 2018).

In each of the above-cited cases, except for *Davis*, the pleadings contained allegations *specifically identifying* the persons in the alleged chain who allegedly received the plaintiff's work. Yet in each instance, the court found the purported "chain" to be too speculative or attenuated to plausibly plead access, and dismissed the claims for that reason. Here, the Complaint is even more deficient than the claims dismissed in those cases in that it relies solely on an "information and belief" allegation that *unnamed, unidentified* alleged "associates and/or affiliates" of defendants Minaj and Williams. Moreover, the Complaint alleges only that said unnamed, unidentified alleged "associates and/or affiliates" allegedly possessed the alleged hard drive, not defendants Minaj or Williams. As such, the Complaint does not even allege that any defendant received or heard the alleged work. *See, e.g., Washington*, 2020 U.S. Dist. LEXIS 188005, at *7-9.

The allegations of the Complaint are similar to those in *Davis*. There, the "allegations of access boil down to a single, nebulous claim that an unidentified songwriter delivered the work to Defendants[,]" namely, that "[u]pon information or belief, one of the aforementioned songwriters or artists, without authorization, delivered or caused to have delivered" the song to Defendants. The court found the plaintiff did not "identify which songwriter or artist delivered the work, nor does he specify which of Defendants received it. In fact, there are no details whatsoever describing when, where, and how the delivery occurred, or the nature of the relationship, if any, between the delivering songwriter and the receiving Defendant." Accordingly, the court found the Complaint "nothing more than mere speculation and conjecture" and dismissed it. 2012 U.S. Dist. LEXIS 197347, at *7-9; *see also Weiss v. DreamWorks SKG*, 2015 U.S. Dist. LEXIS 193840, 2015 WL 12711658, at *5 (C.D. Cal. Feb. 9, 2015) ("Plaintiff alleges that DreamWorks 'collaborated and schemed' to have a 'man in jeans and a black leather jacket' steal Plaintiff's flash drive that contained a copy of the script of Just Like Marilyn. There is no evidence that DreamWorks or Amblin had any part in the theft of the flash drive, and Plaintiff makes no allegations of such a connection. The chain of events, as alleged, is highly improbable at best.") (cited in *Karmo*); *Weller*, 312 F. Supp. 3d at 718-19 (recitation of a chain of professional

---

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

11
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 8 of 15

relationships and "speculation that some unidentified intermediary, for some reason" showed defendants alleged copyrighted work insufficient to plead access).

Accordingly, the Complaint's mere speculation as to unnamed third parties possibly coming into possession of Plaintiff's allegedly lost hard drive fails to allege access through a "chain of events" by Mr. Williams (or any other defendant). As a result, the Complaint fails to allege access and the copyright infringement claim should be dismissed.[2]

**Violation of Rule 11(b) as to Attempted Access Allegations**

Further, the "information and belief" allegations concerning unnamed "associates and/or affiliates" of Ms. Minaj and Mr. Williams appear to be unsupported by any good faith basis under Rule 11(b). We request that you provide your good faith basis for these "information and belief" allegations of Paragraphs 25-28 of the Complaint by providing (i) the identity of the unnamed "associates and/or affiliates"; (ii) the nature of such person(s) alleged "association" or "affiliation"; (iii) whether said "association" or "affiliation" is with Ms. Minaj or Mr. Williams or both; (iv) the factual basis for said allegation of "association" or "affiliation"; (v) the factual basis for the allegation that said person(s) were at the Institute during the same period as Plaintiff; (vi) the factual basis for the allegation that said person(s) "found or otherwise acquired" Plaintiff's alleged lost hard drive; and (vii) whether Plaintiff alleges that said person(s) gave said hard drive to Ms. Minaj, or whether Plaintiff alleges that said person(s) gave said hard drive to Mr. Williams, and, if either of the foregoing, the factual basis for said allegation. We also request that you provide details of any pre-filing investigation concerning the allegations of Paragraphs 25-28 of the Complaint.

**The Complaint Fails to Allege Striking Similarity as an Alternative to Access**

If Plaintiff were to contend that Paragraph 41 of the Complaint alleges "striking similarity" as an alternative to alleging access, that position conflicts with established Ninth Circuit law. *See, e.g., Gray v. Perry*, 2018 U.S. Dist. LEXIS 138263 (C.D. Cal. Aug. 13, 2018), *aff'd, Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022); *Lois v. Levin*, 2022 U.S. Dist. LEXIS 168358, at *13 n.5 (C.D. Cal. Sep. 16, 2022);

---

[2] If Plaintiff contends that the allegations of Paragraphs 25-28 are not intended to allege access for the purposes of the copyright infringement claims, Plaintiff must so state and agree to amend the Complaint to limit those allegations to other purportedly relevant counts. As the Complaint stands, it is subject to dismissal as a result of incorporating those allegations into every count. *See, e.g., Sollberger*, 2010 U.S. Dist. LEXIS 66233, at *12 (one type of "shotgun pleading" occurs when "plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then each count incorporates every antecedent allegation by reference").

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

12
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 9 of 15

*Sound & Color*, 2023 U.S. Dist. LEXIS 158043; *Morrill v. Stefani*, 338 F. Supp. 3d 1051 (C.D. Cal. 2018); Patel Burica & Assocs., 2020 U.S. Dist. LEXIS 15774, at *14-15 (C.D. Cal. Jan. 30, 2020)

Paragraph 41 alleges: "On information and belief, at least the substantially identical nature of the instrumentation and beat in the Composition and *I lied* demonstrates that Defendants had access to Johnson's Composition and directly copied it." [Compl. ¶ 41] As an initial matter, this paragraph contains merely legal conclusion. Moreover, the Complaint fails to identify what is the "substantially identical nature" of the alleged "instrumentation and beat" allegedly shared by the accused work and Plaintiff's alleged work. That is, the Complaint fails to state what instrument(s) are "substantially identical" between the two works; what is the "substantially identical" beat, i.e., what time signature, the two works allegedly share; or any other facts concerning the vague and ambiguous "instrumentation and beat." Moreover, the only elements that this paragraph alleges are "substantially identical" between the accused work and Plaintiff's alleged work—"instrumentation and beat"—are unprotectable elements under established copyright law in the Ninth Circuit and other circuits. Both of the foregoing are true even if Plaintiff were to contend that its reference to "instrumentation and beat" in Paragraph 41 should be interpreted to include the elements stated in Paragraph 39: "the same style instrument bed, rhythm, beats per minute, and song key." That is, the Complaint fails to identify the instrument(s), rhythm, beats per minute or tempo, or key allegedly shared by the two works; and those elements are unprotectable. Even if Plaintiff were to contend that the Complaint's inclusion of a link to "clip" on his counsel's website was sufficient to incorporate the statements made in that "clip"—which it is not—those statements ("both songs are within 65-67BPM," "both use syncopated highhats [sic] in triplet form," "both songs encompass an airy synth to carry the melody," "phrasing, tempo, genre identical in chord progression," "pacing and uniqueness of the songs identical") identify only unprotected elements.

"[T]he key or scale in which a melody is composed is not protectable as a matter of law." *Perry*, 2020 U.S. Dist. LEXIS 46313, at *20. Rhythm also is not protectable. *Id. (*citing *Batiste v. Najm*, 28 F. Supp. 3d 595, 615-623 (E.D. La. 2014) (citing *inter alia N. Music Corp. v. King Record Distrib. Co.*, 105 F. Supp. 393, 400 (S.D.N.Y. 1952) ("originality of rhythm is a rarity, if not an impossibility"))*; see also Morrill*, 338 F. Supp. 3d at 1060 (rhythm not protectable); *Sound & Color*, 2023 U.S. Dist. LEXIS 158043, at *32. A "triplet"—merely a musical pattern in which three notes are played in the time of two notes—is simply a type of rhythm. Similarly, "syncopation" is not protectable. *Perry*, 2020 U.S. Dist. LEXIS 46313, at *20; *Morrill*, 338 F. Supp. 3d at 1060. Nor are chord progressions protectable. *Hudson*, 28 F.4th at 100 ("[C]hord progressions may not be individually protected' because they are basic musical building blocks.") (quoting *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004)); *Lois*, 2022 U.S. Dist. LEXIS 168358, at *13 n.5 (key, tempo, use of four dyads in a chord progression all unprotectable). Use of common instruments like synthesizers and hi-hats is not protectable. *See, e.g.,*

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

13
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 10 of 15

*Hudson*, 28 F.4th at 99. Plainly, "genre" and "uniqueness" are not concepts that are protectable under copyright law.

As stated by the court in *Perry*:

> Musical elements that are "common or trite"—such as the "use of a long-short-long rhythm," "chord progressions," certain "tempos," a "recurring vocal phrase," repeating "hook phrases," the alternating "emphasis of strong and weak beats," "syncopation," the use of "tritones," or the use of "basic musical devices in different manners," are, accordingly, not protectable. Nor are other elements "ubiquitous in popular music" like "rhythms," "glissando[s]," "chants," "the use of horns," or "jingling or pulsing synthesizer element[s]" entitled to protection. "These building blocks belong in the public domain and cannot be exclusively appropriated by any particular author."

2020 U.S. Dist. LEXIS 46313, at *15-16 (citing, *e.g.*, *Morrill*, 338 F. Supp. 3d at 1060; *Smith v. Jackson*, 84 F.3d 1213, 1216 n.3 (9th Cir. 1996); *Swirsky*, 376 F.3d at 850; *Batiste*, 28 F. Supp. 3d at 615-623 (such elements are "common in nearly all pop genres" and thus 'unoriginal and, thus, unprotectable' as a matter of law").

In affirming *Perry*, the Ninth Circuit in *Hudson* held both that each of the individual elements was not protectable and that they were not protectable as a "combination of unprotectable elements."[3] 28 F.4th at 25-28. The court concluded that the alleged similarity consisted of "a manifestly conventional arrangement of musical building blocks." *Id.* at 28. Thus, the resulting combination of unprotectable elements did not meet the level or originality required for protection of a combination of same. *Id.*; *see also Morrill*, 338 F. Supp. 3d at 1060 (no protection, even across entire song, for five unprotectable elements). The same applies to the unprotectable elements alleged in the Complaint.

Moreover, the foregoing decisions all were considering whether works were "substantially similar" for the second prong of the copying analysis. The test for "striking similarity" as an alternative to pleading access is even higher. "Striking similarity is a high bar." *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155,1167 (N.D. Cal. 2014). "The similarities should be sufficiently unique or complex as to make it unlikely that both pieces were copied from a prior common source, . . . or that the defendant was able to compose the accused work as a matter of independent creation." *Stewart v. Wachowski*, 574 F. Supp. 2d 1074,

---

[3] A collection of otherwise unprotected elements may be found eligible for copyright protection "only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1074-76 (9th Cir. 2020).

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

14
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 11 of 15

1103 (C.D. Cal. 2005); *see also McCormick v. Sony Pictures*, 2008 U.S. Dist. LEXIS 127715, at *11 (C.D. Cal. Feb. 4, 2008) ("striking similarity" is "a more stringent standard than the showing of 'substantial similarity' required when a plaintiff has shown access) (citing *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003)). Here, the conclusory allegations pleaded in the Complaint that the alleged unprotectable elements are allegedly "substantially identical" are insufficient to show "striking similarity" because those elements are not "sufficiently unique or complex."

Accordingly, the Complaint fails to allege non-conclusory, non-speculative facts as to access or striking similarity, and the claim for direct copyright infringement is subject to dismissal on that ground, as well.

**Counts VI, V, VII, and VIII Are Not Viable as a Matter of Law**

Well-established Ninth Circuit law provides that claims for unfair competition and false advertising under the Lanham Act and under California statute do not lie for allegedly false claims of "authorship." Such claims are preempted by the Copyright Act.

A Lanham Act claim, whether couched as unfair competition or false advertising, does not lie for misrepresentations concerning authorship. *Focal Point Films, LLC v. Sandhu*, 2019 U.S. Dist. LEXIS 219314, at *16 (N.D. Cal. Dec. 20, 2019) (collecting cases). The court in *Focal Point Films* noted that "numerous courts have relied on *Sybersound [Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143 (9th Cir. 2008)] to conclude that misrepresentations concerning authorship do not fall within the ambit" of the Lanham Act. *Id.* at *14; *see also Cannarella v. Volvo Car USA LLC*, 2016 U.S. Dist. LEXIS 192449, at *9 (C.D. Cal. Dec. 12, 2016) (accord); *Friedman v. Zimmer*, 2015 U.S. Dist. LEXIS 143941, at *3-4 (C.D. Cal. July 10, 2015) (accord); *Grady v. Scholastic Inc.*, 2013 U.S. Dist. LEXIS 199969, at *5 (C.D. Cal. Jan. 31, 2013) (accord); *Brion Jeannette Architecture v. KTGY Grp. Inc.*, 2009 U.S. Dist. LEXIS 136223, at *4 n.2 (C.D. Cal. July 30, 2009) (accord); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009) ("Following *Sybersound's* reasoning, we conclude that authorship, like licensing status, is not a nature, characteristic, or quality, as those terms are used in Section 43(a)(1)(B) of the Lanham Act."). Further, the Supreme Court in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), held that "'origin' under the Lanham Act could not be construed to include authorship, as this would effectively grant a perpetual copyright[.]" *Micro/sys v. DRS Techs., Inc.*, 2015 U.S. Dist. LEXIS 190099, at *6-7 (C.D. Cal. Feb. 18, 2015). The Court held that the term "origin" referred instead to "the producer of the tangible goods that are offered for sale, and not to the author of the idea, concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37. The sole "recourse for unauthorized copying, . . . through a false claim of authorship . . . , lies in copyright law, not in trademark." *Micro/sys*, 2015 U.S. Dist. LEXIS 190099, at *8 (quoting *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307-08 (S.D.N.Y. 2011)).

---

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 12 of 15

Indeed, claims for unfair competition, whether brought under the Lanham Act or state statutory or common law, are preempted when they are essentially claims for copyright infringement. *See Kodadek v. MTV Networks*, 152 F.3d 1209, 1212-13 (9th Cir. 1998); *Bethea v. Burnett*, 2005 U.S. Dist. LEXIS 46944, 2005 WL 1720631, at *17 (C.D. Cal. June 28, 2005) ("Unfair competition claims based on allegations of misappropriation of intellectual property are preempted by the Copyright Act."); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1240 (C.D. Cal. 1987) (statutory unfair competition claim preempted when "[t]he essence of plaintiffs complaint is derived from defendants alleged unauthorized use of a copyrighted work."); *Micro/sys*, 2015 U.S. Dist. LEXIS 190099, at *15-17 (quoting 6 Patry on Copyright § 18:47).

This is plainly true for claims brought under the California unfair competition statute. *See, e.g., Xerox Corp. v. Apple Comput., Inc.*, 734 F. Supp. 1542, 1550-51 (N.D. Cal. 1990). To state a claim under the California unfair competition statute, a plaintiff must show a "likelihood of consumer confusion as to source or sponsorship." *Id.* But a claim "based upon the premise that [defendant's] products incorporate elements copyrighted by [plaintiff] and misappropriated by [defendants]" simply alleges violation of § 103(a) of the Copyright Act. *Id.* (California unfair competition claims preempted); *see also Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236 (C.D. Cal. 1987) (no qualitative difference between a claim for unfair competition under Cal.Bus. & Prof.Code §§ 17200 et seq. and § 17500 and copyright infringement claim alleging defendant copied plaintiff's music without authorization; state law claims preempted).

## Assertion of Counts IV, V, VII, and VIII Violate Rule 11(b)

As you know, Rule 11(b) provides that "[b]y presenting to the court a pleading, . . . whether by signing, filing, submitting, or *later advocating it*" counsel "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that, among other things, "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b) (emphasis added). Counts IV, V, VII, and VIII inarguably are preempted by the Copyright Act. To the extent that you failed to conduct an adequate prefiling investigation, such that you were unaware of the legal basis for said claims, by bringing this lack of legal merit to your attention, you now have an obligation to withdraw said claims. Rule 11 imposes a continuing obligation, in that counsel may not "later advocate" a claim that lacks either a good faith basis or is not warranted by existing law.

---

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 13 of 15

To the extent that you contend that there remains a good faith basis for Counts IV, V, VII, and VIII, on the argument that they are not preempted by the Copyright Act, we request that you provide your purported "nonfrivolous argument" in support thereof.

**The Complaint Lacks Any Alleged Facts in Support of Count VI**

Count VI, for Conversion, "repeats and realleges the allegations contained in" all of the preceding paragraphs and alleges: "In taking the actions described above, at least one Defendant knowingly converted the hard drive described above to their own use and benefit, and the use and benefit of all Defendants." [Compl. ¶¶ 106, 108]

In addition to being subject to dismissal for the failure to distinguish among defendants, failure to allege any specific facts with respect to any specific defendant, and the incorporation of all preceding allegations, as discussed above, Count VI is separately and independently subject to dismissal because no preceding paragraph of the Complaint alleges that any *defendant* converted—or, indeed, that any *defendant* ever even came into possession of—Plaintiff's alleged lost hard drive. Instead, the only allegations concerning Plaintiff's hard drive are that "on information and belief" unnamed *third parties*, namely unnamed "associates and/or affiliates of Minaj and Williams found or otherwise acquired Johnson's hard drive containing the Composition." [Compl. ¶ 28] The Complaint does not allege anywhere that Ms. Minaj or Mr. Williams, or any defendant, came into possession of the alleged hard drive. As such, there is no allegation of fact to support the conclusory statements in Count VI.

Further, if Plaintiff were to contend that the Complaint should be interpreted to allege conversion by defendants, even absent an allegation that any defendant came into possession of the alleged hard drive, by virtue of the allegation that defendants copied the alleged work contained on the hard drive, then Count VI would be preempted by the Copyright Act. *See, e.g., Hoff v. Walt Disney Pictures*, 2019 U.S. Dist. LEXIS 140343, at *16 (C.D. Cal. Aug. 19, 2019) ("In the Ninth Circuit, a state law claim is preempted by the Copyright Act if 'the subject matter of the state law claim fails within the subject matter of copyright'") (*quoting Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006)). In the event of such a contention, the gravamen of Plaintiff's claim would be for copyright infringement, *i.e.*, that defendants converted the intellectual property on the alleged hard drive. *Id.* In *Hoff*, the court rejecting the plaintiff's argument that an allegation that the defendants "received tangible copies of Plaintiff's screenplay" could avoid preemption. Instead, the court found that "Plaintiff's conversion claim is, at its core, a claim for copyright infringement. . . . Plaintiff alleges Defendants converted Plaintiff's screenplay by misusing Plaintiff's intellectual property. Plaintiff's conversion claim is thus preempted." Id. (citing, e.g., Adams v. Paramount Pictures Corp., 2009 WL 10671572, at *3-5 (C.D. Cal. Jan. 6, 2009) (finding the plaintiff's conversion claim preempted where the "thrust of plaintiff's

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

17
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 14 of 15

grievance is Defendants' improper possession, reproduction, and distribution of materials related to
[his] intellectual property"); *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 822-23 (C.D. Cal.
1997) (same)).

Here, unlike in *Hoff*, the Complaint does not even allege that any defendant received a tangible item
owned by Plaintiff. As a result, Count VI either lacks any supporting factual allegation or is preempted
by the Copyright Act, and must be dismissed.

For all of the foregoing reasons, and each independently, the Complaint fails to "include sufficient facts
to indicate the plausibility of the claims asserted, raising the 'right to relief above a speculative level[.]'"
*Twombly*, 550 U.S. at 555.  Certain of Plaintiff's claims rest on conclusory statements that do not
amount to even the "formulaic recitation of the elements of a cause of action," *id.*, that the Supreme
Court has found warrants dismissal.  Other legal claims are not warranted by existing, well-established
Ninth Circuit law. Accordingly, the Complaint should be dismissed under Rule 12(b)(6).

Further, certain allegations and claims are so deficient as to appear to lack a good faith basis under
Rule 11(b), as discussed in detail above. As noted above, we will not take the step of filing a Rule 11
motion unless forced to do so by refusal to provide the information requested herein regarding your
good faith basis for the identified allegations and legal claims. All we are asking is that you provide the
very information you will need to share with the court if my clients proceed with a Rule 11 motion. If
there is a misunderstanding by either side, it behooves us to clear it up now.

In light of the current October 5 deadline for my clients to respond to the Complaint, and the need to
prepare a motion to dismiss for any claims not withdrawn, we request that you provide your responses
to issues raised herein by September 22. Similarly, to the extent that the Complaint or any claims
therein are not withdraw, we request that you provide in full the requested information concerning Rule
11(b) violations by the same date.

In light of the extensive nature of the deficiencies identified herein, if you need additional time to
consider these matters, we suggest that the parties agree to an extension of the deadline for my clients
to respond to the Complaint. I can be available on September 20 in the morning Central time to confer
on any of the issues raised herein. (I can also be available September 19 if you are in a position to do
so on that date.)

Please note that, should Plaintiff refuse to withdraw the Complaint and decline to make any
amendments that would cure the deficiencies identified herein, such that my clients are forced to file a
motion to dismiss, and Plaintiff thereafter amends the Complaint under Fed. R. Civ. P. 15(a), my clients

---

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

18
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 15, 2023
Page 15 of 15

will move the court for sanctions in the form of costs and attorneys' fees for violation of L.R. 7-3 and Judge Anderson's Standing Order.

This letter is written without prejudice to any and all rights and remedies that may be available to Mr. Williams or Eardrummers in connection with this matter, whether at law or in equity, and nothing contained in, or omitted from, this letter is intended to or does waive any of their rights, claims, remedies, or contentions, whether factual or legal, all of which are expressly reserved.

Sincerely,

*Tom Lundin Jr.*
FisherBroyles LLP

cc:  Steven S. Sidman
Larry R. Schmadeka

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D C | WILMINGTON

19
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Exhibit B

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**COOPER LEGAL**

1 Olympic Place, Suite 900
Towson, MD 21204
(202) 642.5470

September 22, 2023

**VIA ELECTRONIC MAIL**
Tom Lundin, Jr., Esq.
FisherBroyles, LLP
3440 Peachtree Rd. NE, Suite 1800
Atlanta, GA 30326
tom.lundin@fisherbroyles.com

Re: *Johnson v. Maraj et al.*, No. 2:23-cv-5061-PA-AFM

Dear Mr. Lundin:

I am in receipt of your correspondence dated September 15, 2023. Please see my response to the issues outlined in your correspondence.

**Claims Against All Defendants**

As required by the rules, we have set out a "a short and plain statement of the claim showing that the plaintiff is entitled to relief." Fed. R. Civ. P. 8. Given that there appears to be many persons involved in the claims alleged and discovery is needed to ascertain which defendant(s) may be liable for the direct infringement, and rather than reciting every single possibility in which a single defendant or defendants might be an actor of a specific allegation and/or claim, a short and plain statement supporting that a defendant or defendants are liable requires an exception to the "shot gun" pleading rule. *See, Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 167 F. Supp. 2d 1114, 1122 (C.D. Cal. 2001)("Cybernet *may* have a direct role in the infringement. Until the exact relationship between Cybernet and the potentially infringing websites is established, the Court cannot conclude that no set of facts exists that could make Cybernet liable for direct infringement. Thus, the motion to dismiss the allegation of direct copyright infringement must be denied.").

**The Complaint Plausibly Alleges Direct Infringement**

Johnson has sufficiently pleaded direct infringement. To successfully plead a claim for copyright infringement, a plaintiff must plead facts that tend to establish "(1) ownership of the copyright; and (2) infringement – that the defendant copied protected elements of the plaintiff's work." *EAS Technolotgies, LLC v. Higbee*, No. SACV1001130JVSAJWX, 2010 WL 11595841, at *2 (C.D. Cal. Oct. 28, 2010)(Here, plaintiff alleges that it owns a copyright in its website. Moreover, plaintiff alleges that defendant "in effect cop[ied]" its websites. These allegations suffice to state a claim for copyright infringement.)(internal citations omitted). In the instant case, there is no question that Johnson has alleged ownership. Most notably, the copyright registration is attached as an exhibit. In addition, throughout the Complaint, Johnson explicitly states that the Defendants "copied" the work and reiterates/summarizes the claims under Count I in paragraphs 63-79.

Tom Lundin, Jr., Esq
Page 2 of 4

## Conversion (Count VI) Is Sufficiently Pleaded

Johnson's Complaint sufficiently alleges conversion. To adequately plead a claim of conversion the plaintiff must show: (1) a present right to possess the property, (2) the defendant's conversion by a wrongful act or disposition of property, and (3) damages. *Hernandez v. Lopez* 180 Cal.App.4th 932, 939–40, 103 Cal.Rptr.3d 376 (2009); *Hanover Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1100 (N.D. Cal. 2014). The unauthorized transfer of property constitutes a conversion. *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 209, 166 Cal. Rptr. 3d 877, 882 (2014)(citing to 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 711(2), p. 1035 (Witkin).); *also*, *Franklin v. Municipal Court*, 26 Cal. App. 3d 884, 103 Cal. Rptr. 354 (1st Dist. 1972) (holding that a general allegation that the defendant converted the property to the defendant's own use suffices to allege conversion). Under California law, "conversion is the wrongful exercise of dominion over another's personal property in denial of or inconsistent with the rights in the property." *In re Emery*, 317 F.3d 1064, 1069 (9th Cir.2003); Plaintiff can show the defendant assumed control over the property either by preventing the plaintiff from taking possession, or by showing the defendant applied the property to his own use. *See, Messerall v. Fulwider,* 199 Cal.App.3d 1324, 1329, 245 Cal.Rptr. 548 (1988). These elements are pleaded throughout the entire complaint and summarized under Count VI. Compl. ¶¶ 107-110.

In addition, the conversion claim is not preempted by the Copyright Act. "Conversion of tangible property involves actions different from those proscribed by the copyright laws, and thus is not preempted." *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984). The hard drive containing other copyrighted works constitute tangible property and is not limited to or encompassing of the infringement claim. Compl. ¶ 107.

## Striking Similarity and Access are Sufficiently Pleaded

Johnson is not required to use "magic words" as long as the pleading gives fair notice of the claims. *Willis v. City of Seattle*, 943 F.3d 882, 889 (9th Cir. 2019)("Plaintiffs were not required to incant magic words, and the pleading undoubtedly gave defendants fair notice of plaintiffs' facial claims."). In the instant case, as you noted, the pleading clearly alleges that the works are substantially "identical." In addition, in paragraph 54, Johnson alleges "Upon his first hearing of *I Lied*, Johnson immediately recognized that, with the exception of the vocals, most critical elements in *I Lied* were substantially identical to those of his copyrighted Composition."[1] Given that striking similarity has been alleged, pleading access is not required. *Unicolors, Inc. v. Urban Outfitters, Inc.,* 853 F.3d 980, 988-89 (9th Cir. 2017)(9th Cir. 2017). I disagree with your analysis that Johnson has failed to establish a chain of events linking his work and the defendants' access. But, I will not waste party resources on a moot issue, given the fact that the striking similarity allegation has been sufficiently pleaded and thus obviated the access issue.

---

[1] To your point that the representative examples of the copied elements are unprotectable, first the arrangement of those elements are protectable; and moreover, Plaintiff did not allege those were the only copied elements. Furthermore, Plaintiff is not required to plead every single fact at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 667-68 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)). Throughout the Complaint Plaintiff alleges that the work as "copied" by Defendants. This is sufficient.

Tom Lundin, Jr., Esq
Page 3 of 4

## There is No Violation of Rule 11(b) as to Attempted Access Allegations

Your attempt to compel discovery before filing an answer under the threat and guise of Rule 11 sanctions is improper. The proper method to obtain the information requested is during ADR or through discovery. As provided above, Johnson is only required to provide a short and plain statement that he is entitled to relief which he has done. The Complaint is clear that Johnson believes that associates of defendants had access to his works while they were students or at present at the Institute. Due to the fact that TMZ[2] (*i.e.*, nonlawyers) was able to construe the Complaint to ascertain this information, I am highly confident that the judge will be able to do the same. Accordingly, it goes without saying, we will not be divulging our legal theories or producing discoverable information prior to your client filing an answer.

## The Unfair Competition and False Advertising Claims Are Viable

Further, the allegations as pleaded are not preempted. "Under the extra element test, it is clear that federal copyright law does not preempt state causes of action alleging fraud or conversion—the two theories pleaded in the complaint." *Gladstone v. Hillel*, 203 Cal. App. 3d 977, 987, 250 Cal. Rptr. 372, 378 (Ct. App. 1988). Fraud involves "the extra element of misrepresentation." *Id.* (citing to *Brignoli v. Balch Hardy and Scheinman, Inc.*, 645 F.Supp. 1201, 1205.). Conversion entails the "wrongful possession of the tangible embodiment of a work. On appeal, Gladstone also relies on two provisions in the state unfair competition law. Business and Professions Code section 17200, which broadly condemns "unlawful, unfair or fraudulent business practice," has been construed to prohibit "appropriating the property of another and selling it as one's own." *Id.* (citing to *Ojala v. Bohlin* (1960) 178 Cal.App.2d 292, 301, 2 Cal.Rptr. 919.). *See also*, *Capitol Records, LLC v. BlueBeat, Inc.,* C.D.Cal.2010, 765 F.Supp.2d 1198 ("finding that BlueBeat is liable for copyright infringement, misappropriation, unfair competition, and conversion.").

## Demand for Legal Theories and Discovery

Your demand that we provide a briefing of our legal theory is unsupported by the rules or the law. *In re 3dfx Interactive, Inc.*, 347 B.R. 394 (Bankr. N.D. Cal. 2006)("materials containing the mental impressions, conclusions, opinions and legal theories of an attorney are discoverable *only in rare and extraordinary circumstances*.")(emphasis added). "The pleadings need not identify any particular legal theory under which recovery is sought." *Crull v. GEM Ins. Co.,* 58 F.3d 1386, 1391 (9th Cir.1995). It is enough that the complaint gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests so that the defendant can frame a responsive pleading. *See, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

---

[2] "Johnson claims associates of Nicki and Mike Will Made It were at the Institute around the same time and believes they somehow got their hands on his missing hard drive."

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Tom Lundin, Jr., Esq
Page 4 of 4

      In sum, it is my hope that this correspondence clarifies your questions with respect to the allegations as pleaded. To that end, we are not amenable to an extension as we suspect that your client has been on notice of the lawsuit since TMZ posted the article and naming your client as a defendant. Should you have any additional questions, please do not hesitate to contact me at Dayna@CooperLegalSolutions.com or (202) 642.5470.

      Thank you for your time and anticipated cooperation.

Best regards,

Dayna C. Cooper

cc: Larry Sandell, Esq.
    Manni Li, Esq.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Exhibit C

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

**Thomas C. Lundin Jr.**
Partner
tom.lundin@fisherbroyles.com
Direct: 678.778.8857
Mailing: 111 Favre St.
          Waveland, MS 39576
Office:  3440 Peachtree Rd. NE, Suite 1800
          Atlanta, GA 30326
www.FisherBroyles.com

September 25, 2023

**BY EMAIL (DAYNA@COOPERLEGALSOLUTIONS.COM; LSANDELL@MEIMARK.COM; MLI@MEIMARK.COM)**

| | | |
|---|---|---|
| Ms. Dayna C. Cooper | Mr. Lawrence M. Sandell | Ms. Manni Li |
| Cooper Legal, LLC | Mei & Mark LLP | Mei & Mark LLP |
| 1 Olympic Pl., Suite 900 | P.O. Box 65981 | 9465 Wilshire Blvd., Suite 300 |
| Towson, MD 21204 | Washington, DC 20035-5981 | Beverly Hills, CA 90212 |

> **Re:** *Johnson v. Maraj et al.*, No. 2:23-cv-5061-PA-AFM
> **Local Rule 7-3 Conferral; Rule 11 Notice**

Counsel:

Thank you for your September 22, 2023 response to my September 15, 2023 Local Rule 7-3 conferral and Rule 11 letter. The positions set forth in your response are without legal merit. Briefly:

- Your reliance on the Rule 8 "short plain statement" language (and citation of a pre-*Twombly* case) ignores the *Twombly* pleading standard and the well-established Ninth Circuit case law cited in my letter regarding "shotgun" pleadings. There is no "exception to the 'shot gun' [sic] pleading rule" that applies where a plaintiff is unable to plead a factual basis for a claim as to each separate defendant. Further, your citation of *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001), is inapposite; that case did not involve failure to distinguish between defendants, and the issue addressed in the portion of the decision you cited was whether a website could ever be liable for direct copyright infringement carried out by its users.

- Similarly, merely alleging ownership of a copyright and that "defendants copied" is not sufficient to satisfy the *Twombly* pleading standard. As you concede, a complaint asserting direct infringement must plead "copying of constituent elements of the work that are original." *See, e.g., Hall v. Swift*, 2018 U.S. Dist. LEXIS 43575, at *9 (C.D. Cal. Feb. 13, 2018) (citing *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010)). Your response merely states that the Complaint "states that the Defendants 'copied' the work[.]" This is insufficient to state a claim as a matter of law.

- Your response as to the conversion count ignores the fact, pointed out in my letter, that the Complaint does not allege any defendant came into possession of the allegedly lost hard drive. As such, the Complaint does not allege that any defendant "assumed control over" the "tangible property" purportedly comprising Plaintiff's allegedly lost hard drive. And as noted in my letter, to the extent that Plaintiff argues that any defendant's possession of the hard drive should be inferred

---

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D.C. | WILMINGTON

26
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 25, 2023
Page 2 of 3

from its allegations concerning infringement of the work, the claim is preempted by the Copyright Act.

- I understand your response to state that Plaintiff need not plead access because he is relying on "striking similarity." Further, I understand your response to state that Plaintiff is relying on the argument that "arrangement of unprotectable elements" is protectable. Pretermitting whether a complaint needs to "plead every single fact at the pleading stage," a complaint for copyright infringement must plead "copying of constituent elements of the work that are original." *Id.* Thus, as an initial matter, your suggestion that there might be other, unpleaded purportedly protectable elements does not save the Complaint. Second, the Complaint does not satisfy the "high bar" for pleading "striking similarity," *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155,1167 (N.D. Cal. 2014); *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005); *McCormick v. Sony Pictures*, 2008 U.S. Dist. LEXIS 127715, at *11 (C.D. Cal. Feb. 4, 2008), for the reasons set forth in my letter, including the discussion of, *e.g., Gray v. Perry*, 2018 U.S. Dist. LEXIS 138263 (C.D. Cal. Aug. 13, 2018), *aff'd, Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022), and *Morrill v. Stefani*, 338 F. Supp. 3d 1051 (C.D. Cal. 2018).

- Your interpretation of the Rule 11 issue is incorrect. The issue is not whether the Complaint can be interpreted to assert "Johnson believes that associates of defendants had access to his works while they were students at or present at the Institute." Rather, the issue is that there appears to be no good faith basis for that fact allegation. Your response makes it more apparent that there was no prefiling investigation and no factual basis for that claim. Plaintiff should expect our motion for sanctions under Rule 11(c) in due course.

- Your response ignores the clear Ninth Circuit precedent that the Lanham Act and California unfair competition statues do not cover misrepresentations as to *authorship*, as set forth in detail in my letter. Your reliance on *Gladstone v. Hillel*, 203 Cal. App. 3d 977, 987, 250 Cal. Rptr. 372, 378 (Ct. App. 1988), is unavailing because that case predates the Supreme Court's ruling in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) and the Ninth Circuit's ruling in *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143 (9th Cir. 2008), discussed in my letter. Further, *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1205 (C.D. Cal. 2010), is inapposite—indeed, supports my clients' position—because there the state law claims were expressly limited to "Pre-1972 Recordings" that were not covered by the plaintiff's copyright infringement claim. *See id.* at 1206 ("BlueBeat does not dispute that, *like the Copyrighted Recordings*, it reproduced, sold, and publicly performed *the pre-1972 Recordings* without proper authorization.")

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D.C. | WILMINGTON

27
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Fisher Broyles

Ms. Dayna C. Cooper, Cooper Legal, LLC
Mr. Lawrence M. Sandell, Mei & Mark LLP
Ms. Manni Li, Mei & Mark LLP
September 25, 2023
Page 3 of 3

Having conferred in accordance with Local Rule 7-3, my clients will proceed with their motion to dismiss and will note Plaintiff's refusal to withdraw or amend any of the claims of the Complaint. Separately, we intend to move for sanctions under Rule 11(c) as to the violations of Rule 11(b) set forth in my letter.

This letter is written without prejudice to any and all rights and remedies that may be available to Mr. Williams or Eardrummers in connection with this matter, whether at law or in equity, and nothing contained in, or omitted from, this letter is intended to or does waive any of their rights, claims, remedies, or contentions, whether factual or legal, all of which are expressly reserved.

Sincerely,

*Tom Lundin Jr.*
FisherBroyles LLP

cc:  Steven S. Sidman
     Larry R. Schmadeka

ATLANTA | AUSTIN | BOSTON | CHARLOTTE | CHICAGO | CINCINNATI | CLEVELAND | COLUMBUS | DALLAS
DENVER | DETROIT | HOUSTON | LONDON | LOS ANGELES | MIAMI | NAPLES | NEW YORK | PALO ALTO
PHILADELPHIA | PRINCETON | SALT LAKE CITY | SEATTLE | WASHINGTON D.C. | WILMINGTON

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Exhibit D



CIRCULAR
**50**

Copyright Registration for
# Musical Compositions

This circular provides information about registering musical compositions with the U.S. Copyright Office. It introduces the difference between a musical composition and a sound recording under copyright law and offers guidance about

• Completing a copyright application
• Submitting a deposit
• Registering multiple unpublished musical compositions

This circular is intended as a guide to registering musical compositions with the U.S. Copyright Office. For specific information, see **chapter 800** of the *Compendium of U.S. Copyright Practices*.[1]

## Musical Compositions

The Copyright Act provides in section 102(a)(2) for copyright protection in "musical works, including any accompanying words," that are fixed in some tangible medium of expression. Musical works include original compositions and original arrangements or other new versions of earlier compositions to which new copyrightable authorship has been added.

Copyright protection gives the owner of copyright in a musical composition the exclusive right to make copies, prepare derivative works, sell or distribute copies, and perform or display the work publicly. The owner of copyright may also authorize others to exercise the exclusive rights.

The copyright in a musical work includes the right to make and distribute, or to authorize, the first sound recording of a performance of the musical composition. Once a musical composition is published in the United States on phonorecords, others are permitted to make subsequent sound recordings of the musical composition subject to a compulsory licensing provision in the copyright law.[2] For more information, see *Compulsory License for Making and Distributing Phonorecords* (**Circular 73**).

## Musical Compositions Versus Sound Recordings

A musical composition and a sound recording are two separate works. A registration for a musical composition covers the music and lyrics, if any, embodied in that composition, but it does not cover a recorded performance of that composition.



United States Copyright Office

copyright.gov

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

For example, the song "Rolling in the Deep" and a recording of Aretha Franklin singing "Rolling in the Deep" are two distinct works. The song itself (i.e., the music and the lyrics) is a musical composition, and a recording of an artist performing that song is a sound recording.

In most cases, a musical composition and a sound recording must be registered separately with the Copyright Office. However, in limited circumstances, a sound recording and the underlying musical composition can be registered with one application, filing fee, and deposit. For information about registering a sound recording, see **Circular 56**. For information about registering a musical composition together with a sound recording, see **Circular 56A**.

## Copyright Registration

To register a claim to copyright in a musical composition, you must submit the following to the Copyright Office: (1) a completed application form; (2) a nonrefundable filing fee; and (3) the required "deposit copies" of your work. This circular highlights issues common to registrations of musical compositions. For more guidance on registering a musical composition, see **chapter 800**, section 802.9, of the *Compendium*. For general registration information, see *Copyright Registration* (**Circular 2**).

**NOTE:** Copyright Office fees are subject to change. For current fees, see *Copyright Office Fees* (**Circular 4**), available on the Office's website at **www.copyright.gov** or call the Office at (202) 707-3000 or 1-877-476-0778 (toll free).

Mistakes in applications lead to delays in registration, so it is important to complete the application accurately. Instructions for completing an online application appear in the "help" text that accompanies the application. Here are some tips regarding common points of confusion.

### Type of Work

- At the beginning of the application, select "Work of the Performing Arts" on the "Type of Work" screen. The questions in the application are based on the type of work you select. If you select the wrong option, you will need to start over.

### Title

- Provide the title of the musical composition you are registering exactly as it appears on the work itself.

### Publication

"Publication" occurs when copies or phonorecords of a work are distributed to the public by sale or other transfer of ownership or by rental, lease, or lending. Publication also occurs when a copyright owner offers to distribute copies or phonorecords of a work to a group of persons for the purpose of further distribution, public performance, or public display. A public performance or display of a musical composition does not, in and of itself, constitute publication.

- If the work has not been published, state that the work is "unpublished."
- If the work has been published, give the month, day, and year that the copies or phonorecords were first distributed to the public or first offered to a group of persons for further distribution, public performance, or public display.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

### Year of Completion

The year of completion is the year in which the version of the work you are registering was first fixed in writing or recorded in any other tangible form.

- If you are registering a work that was written or recorded over a period of time, or a work that constitutes a new version of an earlier work, give the year of completion of the final work or new version.

### Author

The author of a musical composition is the person who wrote or created the music and lyrics, if any, unless the work is a work made for hire.

- If the music was created as a work made for hire, give the name of the employer, not the person who actually created the music.

**NOTE:** Check "Made for Hire" only if the work was prepared by an employee within the scope of his or her employment or commissioned by a third party (1) as a contribution to a compilation or a collective work, (2) as part of a motion picture or other audiovisual work, or (3) as a musical arrangement with an express written agreement signed by both parties that the work would be considered a work made for hire. For more information, see *Works Made for Hire* (**Circular 30**).

### Type of Authorship

- Specify what the author created in the copy or phonorecord that accompanies the application.
- If you are registering a musical composition, you can describe authorship in terms of the lyrics, the music, and/or the musical arrangement.
- If you are also registering artwork, photographs, or liner notes that appear on the copy or phonorecord, include a brief statement to that effect in the "Other" field.
- If you are registering a compilation or a collective work, such as an album, describe the authorship and the material included in the claim by stating "Compilation of Musical Compositions" in the "Other" field.

**NOTE:** Do not include elements that are not present in the copy or phonorecord. Do not include elements that are not protected by copyright, such as ideas, concepts, names, or titles.

### Limitation of Claim

- If you are registering a musical work that contains preexisting material, identify that material in the "Material Excluded" field, and identify the new material in the "New Material Included" field. If the preexisting material has been registered with the Copyright Office, include the registration number and year. Complete this space only if the work being registered contains an appreciable amount of material that

  » was previously published;

  » was previously registered in the U.S. Copyright Office;

  » is in the public domain; or

  » is not owned by the claimant named in the application.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Leave this space blank if the work does not contain an appreciable amount of any of this kind of material. For more information, see **chapter 500**, section 507 of the *Compendium*.

### Deposit Requirements

To register your musical composition, you must send a deposit of the work to the Copyright Office. This deposit should be a complete copy of the work being registered. A complete copy means that the deposit is legible, is assembled in orderly form, is labeled with the title of the work, and includes everything to be covered by the registration.

Where possible, the Copyright Office encourages you to upload the deposit in an acceptable file format through the online registration system. Deposits may also be mailed to the Office following the directions in the shipping slip generated from the "Submit Your Work" screen. Once a deposit has been submitted, it becomes part of the public record and cannot be returned.

How you submit your deposit depends on the format in which the musical composition is produced and whether and where it is published. The table below provides the deposit requirements of some common formats for musical compositions. If you are registering a work first published outside the United States, you can generally submit one complete copy of the score as first published.

| Format of Musical Composition | Publication Status of the Work | |
| --- | --- | --- |
| | *Unpublished* | *Published in the United States* |
| *Print copies only* | Upload one complete copy | Send one complete copy of the best edition of the printed work |
| *Digital copies only* | Upload one complete copy of the digital work | |
| *Physical and digital sheet music* | Upload one complete copy | Send one complete copy of the best edition of the physical format |
| *Physical recording only* | Upload one complete phonorecord[2] | Upload or send one complete phonorecord |
| *Digital recording only* | Upload one complete phonorecord | Upload one complete phonorecord |
| *Both print copies and recordings* | Upload one complete copy or phonorecord | Send one complete copy of the best edition of the printed work |
| *Both digital copies and recordings* | Upload one complete copy or phonorecord | Upload one complete copy of the best edition of the digital work |
| *Solely in a motion picture* | Provide a transcription of the entire musical work or a phonorecord with the entire musical work and reproductions of the title, credits for the soundtrack, and copyright notice for the soundtrack | |

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**Best Edition**

A "best edition" is the edition published in the United States at any time before the date of deposit that the Library of Congress determines most suitable for its purposes. In the case of musical compositions, the Office has set forth best edition requirements only for works published in print formats, such as sheet music. Compositions published only as sound recordings or as part of a motion picture are not subject to the best edition requirement. If there are multiple printed formats, you must decide which format constitutes the "best edition." Use the following criteria to identify the highest-quality edition. For more information, see *Best Edition of Published Copyrighted Works for the Collections of the Library of Congress* (Circular 7B).

    A. Fullness of Score

        1. Vocal music

            a. With orchestral accompaniment—

                i. Full score and parts, if any, rather than conductor's score and parts, if any. (In cases of compositions published only by rental, lease, or lending, this requirement is reduced to full score only.)

                ii. Conductor's score and parts, if any, rather than condensed score and parts, if any. (In cases of compositions published only by rental, lease, or lending, this requirement is reduced to conductor's score only.)

            b. Unaccompanied: Open score (each part on separate staff) rather than closed score (all parts condensed to two staves)

        2. Instrumental music

            a. Full score and parts, if any, rather than conductor's score and parts, if any. (In cases of compositions published only by rental, lease, or lending, this requirement is reduced to full score only.)

            b. Conductor's score and parts, if any, rather than condensed score and parts, if any. (In cases of compositions published only by rental, lease, or lending, this requirement is reduced to conductor's score only.)

    B. Printing and Paper

        1. Archival-quality rather than less-permanent paper

    C. Binding and Packaging

        1. Special limited editions rather than trade editions

        2. Bound rather than unbound

        3. If editions have different binding, apply the criteria in I.A.2–I.A.12, in Circular 7B.

        4. With protective folders rather than without

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## Multiple Musical Compositions

As a general rule, you must submit a separate application, filing fee, and deposit for each work you want to register. However, the Copyright Office offers an accommodation for group registration of unpublished works. You can use the online registration system to register up to ten unpublished songs, song lyrics, or other musical works with one application and fee if you satisfy certain requirements: all works must be created by the same author or authors, all of the authors must be named as copyright claimants, and the authorship claim for all authors must be the same.

**NOTE:** You may register up to ten unpublished sound recordings along with the musical works embodied in those recordings if both works are unpublished, if the copyright claimant(s) for both works is the same, and if the applicant chooses "Sound Recording" at the beginning of the application.

In the following examples, Al can register unpublished musical works using one application.

1. Al wrote the music, and Sue wrote the lyrics to each of eight songs. Al must list Sue as an author and claimant on the application.

2. Sue wrote the music, and Al and Larry wrote the lyrics to each of four songs. Al must list Sue and Larry as authors and claimants on the application.

In the following examples, Al cannot register unpublished musical works using one application.

1. Al wrote the lyrics and music to three songs and co-wrote lyrics and music to four songs with Sue. Al would submit two applications: one for the songs he wrote by himself and another for the songs he co-wrote with Sue.

2. Sue wrote the music for six songs. Al wrote the lyrics to two of the songs, and Larry wrote the lyrics to four of the songs Sue would submit two applications: one for the four songs co-written with Larry and another for the two songs co-written with Al.

When completing a group registration application that covers multiple unpublished musical compositions, give titles for each of the individual musical compositions. In addition, name all the individuals who contributed authorship to the musical works included in the group. If the authors are members of a performing group, you may state this after each name. Naming a performing group as the author without naming the individual members who created the works is not sufficient. For more information about group registration of unpublished works, see *Multiple Works* (**Circular 34**).

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**NOTES**

1. This circular is intended as an overview of copyright registration for musical compositions. The authoritative source for U.S. copyright law is the Copyright Act, codified in Title 17 of the *United States Code*. Copyright Office regulations are codified in Title 37 of the *Code of Federal Regulations*. Copyright Office practices and procedures are summarized in the third edition of the *Compendium of U.S. Copyright Office Practices*, cited as the *Compendium*. The copyright law, regulations, and the *Compendium* are available on the Copyright Office website at **www.copyright.gov**.

2. A "phonorecord" is a material object in which sounds are fixed and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Examples include a cassette tape, a vinyl disc, an mp3, or a compact disc. A phonorecord does not include sounds accompanying a motion picture or other audiovisual work.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## For Further Information

### By Internet

The copyright law, the *Compendium*, electronic registration, application forms, regulations, and related materials are available on the Copyright Office website at **www.copyright.gov**.

### By Email

To send an email inquiry, click the *Contact Us* link on the Copyright Office website.

### By Telephone

For general information, call the Copyright Public Information Office at (202) 707-3000 or 1-877-476-0778 (toll free). Staff members are on duty from 8:30 am to 5:00 pm, eastern time, Monday through Friday, except federal holidays. To request application forms or circulars by postal mail, call (202) 707-9100 or 1-877-476-0778 and leave a recorded message.

### By Regular Mail

Write to
      Library of Congress
      U.S. Copyright Office
      Outreach and Education Section
      101 Independence Avenue, SE #6304
      Washington, DC 20559-6304

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Exhibit E

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT



CIRCULAR

**56**

Copyright Registration for
# Sound Recordings

A sound recording is generally a recorded performance, often of another work. It must be fixed—captured in a medium from which it can be perceived, reproduced, or otherwise communicated—in a digital track, disc, tape, or other format. This circular introduces legal concepts and registration issues related to sound recordings. It covers

• Distinction between sound recordings and other works
• Completing an application
• Deposit requirements
• Registering multiple sound recordings
• Scope of copyright protection

This circular provides general information about the requirements for registering sound recordings with the U.S. Copyright Office. For specific information about this topic, see **chapter 800** of the *Compendium of U.S. Copyright Practices, Third Edition*.[1]

## What is a Sound Recording?

The Copyright Act defines sound recordings as "works that result from the fixation of a series of musical, spoken, or other sounds but not including sounds accompanying a motion picture or other audiovisual work." Generally, a sound recording is a recorded performance, often of another work. A sound recording must be fixed, meaning that the sounds must be captured in a medium from which they can be perceived, reproduced, or otherwise communicated. The author may fix the sounds in a digital track, disk, tape, or other format.

Common examples of sound recordings include an audio recording of:

• A person singing a song or playing a musical instrument.

• A person reading a book or delivering a lecture.

• A group of persons hosting a podcast or performing a radio play.

• A person speaking, a dog barking, a bird singing, wind chimes ringing, or other sounds from the natural world (assuming the recording contains a sufficient amount of production authorship).

A sound recording typically includes the contributions of the parties whose performance is captured in the recording and the parties who captured and processed those sounds to make the final recording. Short sound recordings may lack



United States Copyright Office

39

copyright.gov

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

a sufficient amount of authorship to warrant copyright protection, just as words and short textual phrases are not copyrightable. Sound recordings captured by purely mechanical means without originality of any kind also lack a sufficient amount of authorship to warrant copyright protection.

### Sound Recordings Distinguished from Underlying Creative Works

Sound recordings often contain other separate copyrightable creative works, such as songs, plays, lectures, or readings. The copyright in a sound recording covers the recording itself. It does not cover the music, lyrics, words, or other underlying content embodied in that recording. For example, the song "Rolling in the Deep" authored by Adele and Paul Epworth and a recording of Aretha Franklin singing "Rolling in the Deep" are two distinct works. The underlying music and lyrics are a "musical work," and a recording of an artist performing that song is a "sound recording."

This circular focuses on registration issues involving sound recordings. It does not address registration of the music, lyrics, or other content that may be embodied in the recording itself. For information on registering a song, book, or other content that may be embodied in a sound recording, see *Copyright Registration for Musical Compositions* (**Circular 50**) and **chapter 700** of the *Compendium*. For information on registering a sound recording together with the content embodied in that recording, see *Copyright Registration of Musical Compositions and Sound Recordings* (**Circular 56A**).

### Sound Recordings Distinguished from the Sounds Accompanying a Motion Picture

There is a legal distinction between a sound recording and the soundtrack for a motion picture or other audiovisual work. The Copyright Act states that "sounds accompanying a motion picture or audiovisual work" are not sound recordings. These types of sounds are considered part of the motion picture or audiovisual work.

Common examples of works that do not qualify as sound recordings include:

- The soundtrack for a cartoon, documentary, or major motion picture.
- The soundtrack for an online video, music video, or concert video.
- A musical performance during a scene or during the credits for a motion picture.

### Sound Recordings Distinguished from Phonorecords

A sound recording is not the same as a phonorecord. A phonorecord is the statutory term for a physical object that contains a sound recording, such as a digital audio file, a compact disc, or an LP. The term "phonorecord" includes any type of object that may be used to store a sound recording, including digital formats such as .mp3 and .wav files.

### Derivative Sound Recordings

A derivative sound recording is an audio recording that incorporates preexisting sounds, such as sounds that were previously registered or published or sounds that were fixed before February 15, 1972. The preexisting recorded sounds must be rearranged, remixed, or otherwise altered in sequence

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

or character, or the recording must contain additional new sounds. The new or revised sounds must contain at least a minimum amount of original sound recording authorship.

Examples of derivative sound recordings include:

- A mashup comprising tracks and sounds from multiple sources.

- Additional tracks added to a previously published album.

Mechanical changes or processes, such as a change in format, declicking, or noise reduction, generally do not contain enough original authorship to warrant registration.

## Registering a Sound Recording

To register a claim to copyright in a sound recording, you must submit the following to the Copyright Office: (1) a completed application form; (2) a nonrefundable filing fee; and (3) the required "deposit" of your work. This circular highlights some common issues in registering a sound recording with the Copyright Office. For more guidance in registering a sound recording, see **chapter 800**, section 803.9 of the *Compendium*. For general registration issues, see *Copyright Registration* (**Circular 2**).

## Completing the Application

When completing an online application, the Copyright Office offers the following tips.

### Type of Work

- When you begin an application, select the "Sound Recording" option on the "Type of Work" screen. The questions you encounter when filling out the application are based on the choice you make at the beginning of the application. If you select the wrong option you will need to start over.

### Title

- Provide the title exactly as it appears on the work itself.

### Publication

"Publication" occurs when phonorecords of a work are distributed to the public by sale, transfer of ownership, or by rental, lease, or lending. Offering to distribute phonorecords to a group of persons for the purpose of further distribution or publicly performing the work also constitutes publication. Simply performing a sound recording publicly does not constitute publication.

- If the work has not been published, state that the work is "unpublished."

- If the work has been published, give the month, day, and year that phonorecords were first distributed to the public or first offered to a group of persons for further distribution or public performance.

### Author

- The author of a sound recording is the performer featured in the recording and the producer who captured and processed the sounds that appear in the final recording.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

- If the performer or producer created the sound recording during the course of his or her employment under a typical employment relationship, then the sound recording is a work made for hire, and the employer is the author of the sound recording.

- If the performer or producer created the sound recording for a third party as a compilation or contribution to a collective work, and if the parties agreed in writing that the sound recording will be a "work made for hire," then the third party is the author of the work.

For more information on works made for hire, see *Works Made for Hire* (**Circular 30**).

### *Type of Authorship*

- When registering a sound recording, check the box for "Sound Recording"
- When registering artwork, photographs, or text of liner notes, include a brief statement to that effect in the "Other" field.
- When registering a compilation or a collective work (see below), state "compilation of sound recordings" in the "Other" field.

### *Limitation of Claim*

- When registering a derivative sound recording, identify the preexisting material in the "material excluded" field and identify the new material in the "new material included" field. If the preexisting material has been registered with the Copyright Office, include the registration number and year.

## Submitting the Deposit Copies of the Work

To register your sound recording, you must submit the work to the Copyright Office. Once a deposit has been submitted, it becomes part of the public record and cannot be returned.

When registering a sound recording that is unpublished or published solely in a digital form, the Copyright Office strongly encourages you to submit the deposit as a digital file uploaded through the online registration system. Do not also submit a physical phonorecord, such as a CD, flash drive, or other physical storage device. Each file must be uploaded in an **acceptable file format** and each uploaded file must not exceed 500 MB in size.

When you are registering a sound recording published in a physical format, such as a compact disc or LP, submit the work in the physical format, even if there is a corresponding digital version. To submit a physical copy of your work after completing an online application, print a shipping slip from the bottom of the "Submit Your Work" screen and send the shipping slip and deposit in the same package to the address given on the shipping slip. To submit a physical copy of your work with a paper application, complete Form SR and submit the deposit in the same package with the application and the filing fee.

If your sound recording has been published in the United States, you may need to comply with the "best edition" requirement by sending two copies of the "best" edition that exists at the time of registration. The "best" edition generally is the highest quality edition that has been publicly distributed in the United States. The Library of Congress has identified the following list, in descending order, of what it considers to be the best edition for sound recordings:

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1. Compact disc
2. Vinyl disc
3. Open-reel tape
4. Cartridge tape
5. Cassette tape

For example, if the work was published both on compact disc and vinyl disc before the date of the application to register the work, you should submit the compact disc rather than the vinyl disc.

If your sound recording has not been published in any of the formats listed above, you may upload a digital file that contains any published version of the work.

## Registering Multiple Sound Recordings

As a general rule, you must submit a separate application, filing fee, and deposit for each work you want to register. It may be possible to register multiple sound recordings with one application if they qualify for one of the following special registration accommodations.

## Group Registration of Unpublished Sound Recordings

You may register up to ten unpublished sound recordings using the online group registration option of unpublished works if all of the recordings were created by the same author or authors and all of the authors are named as copyright claimants. For more information, see *Multiple Works* (**Circular 34**).

> *Example*
>
> Sue Smith and Joe Jones co-create five unpublished sound recordings, and co-own the copyright. They may register the five unpublished sound recordings on one application. The registration will cover all five sound recordings.

## Collective Work

You may register multiple sound recordings as a "collective work" if they have been assembled together into a collective whole, such as a digital album or compact disc. The registration will cover the copyrightable authorship in the selection, coordination, or arrangement of the collective work as a whole. It also may cover each individual sound recording if (1) the collective work and the individual sound recordings are owned by the same party, and (2) the individual sound recordings have not been previously published or previously registered and are not in the public domain.

> *Examples*
>
> This year, the Oldies Recording Company published a "best of" album titled "Greatest Hits from the Age of Aquarius" featuring sound recordings originally published in the late 1960s. The Oldies Recording Company may register "Greatest Hits from the Age of Aquarius" as a collective work. The registration will cover the authorship involved in creating the album as a whole, but will not cover the individual sound recordings because they were previously published.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

ABC Records, Inc., publishes a new album containing twelve new tracks that were never before published. ABC Records owns the copyright in both the album and the individual tracks. ABC Records may register the album as a collective work. The registration will cover both the album and the sound recordings because the copyright in both the sound recordings and the album are owned by the same party.

## Unit of Publication

You may register multiple sound recordings as well as accompanying text and artwork as a "unit of publication," if they were physically packaged or bundled together and if all of the recordings were first published together as that integrated unit. In addition, the entity that bundles the works together as the integrated unit must be the claimant in all the works that are submitted for registration.

> *Example*
> ABC Records bundles ten sound recordings on a CD with an insert containing text and photographs, distributes the packaged unit to the general public, and owns the copyright in the sound recordings, text, and photographs. ABC Records may register the sound recordings, text, and photographs with one application as a unit of publication. The registration will cover all copyrightable content in the sound recordings, text, and photographs.

For more information concerning these special registration accommodations, see *Multiple Works* (**Circular 34**).

## Copyright Protection in Sound Recordings

Generally, the owner of a sound recording does not have the exclusive right to publicly perform that work under the Copyright Act. However, the owner of a sound recording does have the exclusive right to publicly perform a sound recording by means of a digital audio transmission.

Before February 15, 1972, federal copyright law did not protect sound recordings, but common law, or in some cases statutes enacted in certain states, generally did. In 1971, Congress amended the copyright law to provide federal copyright protection for sound recordings fixed and first published with a statutory copyright notice on or after February 15, 1972. All sound recordings created after January 1, 1978, are automatically protected by copyright. A sound recording is considered created when it is "fixed" in a phonorecord for the first time. Neither registration in the Copyright Office nor publication is required for protection under the present law.

Before March 1, 1989, the use of copyright notice was mandatory on all copies or phonorecords of published works, and any work first published before that date should have carried a notice. The copyright notice is optional for works published on and after March 1, 1989. For more information about copyright notice, see *Copyright Notice* (**Circular 3**).

The Uruguay Round Agreements Act, which became effective on January 1, 1996, restored copyright protection for certain unpublished foreign sound recordings fixed before February 15, 1972, and certain foreign sound recordings that were published without notice. For further information concerning restored sound recordings, see *Copyright Restoration Under the URAA* (**Circular 38B**).

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**NOTE**

1. This circular is intended as an introduction to registering sound recordings. The authoritative source for U.S. copyright law is the Copyright Act, codified in Title 17 of the *United States Code*. Copyright Office regulations are codified in Title 37 of the *Code of Federal Regulations*. Copyright Office practices and procedures are summarized in the third edition of the *Compendium of U.S. Copyright Office Practices*, cited as the *Compendium*. The copyright law, regulations, and the *Compendium* are available on the Copyright Office website at **www.copyright.gov**.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**For Further Information**

***By Internet***

The copyright law, the *Compendium*, electronic registration, application forms, regulations, and related materials are available on the Copyright Office website at **www.copyright.gov**.

***By Email***

To send an email inquiry, click the *Contact Us* link on the Copyright Office website.

***By Telephone***

For general information, call the Copyright Public Information Office at (202) 707-3000 or 1-877-476-0778 (toll free). Staff members are on duty from 8:30 am to 5:00 pm, eastern time, Monday through Friday, except federal holidays. To request application forms or circulars by postal mail, call (202) 707-9100 or 1-877-476-0778 and leave a recorded message.

***By Regular Mail***

Write to
      Library of Congress
      U.S. Copyright Office
      Outreach and Education Section
      101 Independence Avenue, SE #6304
      Washington, DC 20559-6304

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Exhibit F



CIRCULAR
**56A**

Copyright Registration of
# Musical Compositions and Sound Recordings

This circular explains the difference, for copyright purposes, between musical compositions and sound recordings and provides information on registering both types of works either separately or on one application.

For specific information about this topic, see **Chapter 800** of the *Compendium of U.S. Copyright Practices*, Third Edition.[1] For registration of sound recordings that do not contain musical compositions, or for registration of sound recordings on a separate application from musical compositions, see **Circular 56**.

Sound recordings and musical compositions are considered two separate works for copyright purposes. Even though a sound recording is a derivative work of the underlying musical composition, a copyright in a sound recording is not the same as, or a substitute for, copyright in the underlying musical composition. The chart that follows demonstrates the differences between these two types of works.

|  | Musical Compositions | Sound Recordings |
|---|---|---|
| *What is it?* | Music (melody, rhythm, and/or harmony expressed in a system of musical notation) and accompanying words (lyrics) | Fixation of a series of sounds (e.g., a particular performance) |
| *Who is the author?* | Composers Lyricists Songwriters | Performers Producers Sound Engineers |
| *How is it fixed?* | Copy (sheet music, either print or digital such as pdf)<br><br>Phonorecord (mp3, CD, LP) | Phonorecord (mp3, CD, LP) |

**Copyright**

United States Copyright Office

copyright.gov

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

| Does the owner have the exclusive right to... | Musical Compositions | Sound Recordings |
|---|---|---|
| reproduce the work? | Yes | Yes |
| prepare derivative works? | Yes | Yes |
| distribute the copies or phonorecords of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending? | Yes | Yes |
| perform the work publicly? | Yes | Only by means of a digital audio transmission |
| display the work publicly? | Yes | No |

A registration for a musical composition covers the music and lyrics (if any) embodied in that composition, but it does not cover a recorded performance of that composition. Likewise, a registration for a sound recording of a performance does not cover the underlying musical composition. For example, the composition "Respect" and a recording of Aretha Franklin singing "Respect" are two distinct works. The composition itself (i.e., the music and lyrics) is a musical composition, and a recording of an artist performing that composition is a sound recording.

**Determining Whether a Musical Composition and a Sound Recording Can Be Registered with One Application**

Since a musical composition and a sound recording are distinct works, separate registration applications generally should be submitted for each work. However, you may use one standard application to register a sound recording and an underlying musical composition when (1) the musical composition and sound recording are embodied in the same phonorecord and (2) the claimant for both the musical composition and sound recording are the same.

*Examples*

- When an artist performs and records a composition owned by someone else, the artist or artist's label (if appropriate) would submit an application for the recording only. For specific guidance, see *Copyright Registration of Sound Recordings* (**Circular 56**).

- When a songwriter creates a composition that someone else records, the songwriter or songwriter's publisher (if appropriate) would submit an application for the musical composition only. For specific guidance, see *Copyright Registration of Musical Compositions* (**Circular 50**).

- When a songwriter performs and records the songwriter's own composition, the songwriter may submit one application for both the composition and recording.

- When a record company owns both a composition and a recording of that composition, it may submit one application for both the composition and recording.

- When a record company owns both a composition and a recording of that composition,

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

and distributes the works to the public as both sheet music and an album at the time of registration, it should submit two separate applications, with a sheet music deposit for the music composition and a recording deposit for the sound recording.

Even though it is possible for some applicants described above to register the musical composition and sound recording on one application, it is very important to follow the instructions below in order to make sure both works are included on the application. Applicants may always choose to register sound recordings and musical compositions on separate applications.

**NOTE:** You may register one sound recording and the underlying musical composition using the Single Application, a streamlined version of the Standard Application, but only if you meet all three of the following conditions: (1) the composition and the sound recording are embodied in the same phonorecord, (2) the author is the only performer featured in the recording, and (3) the author is the only copyright owner of both works. For more information about these requirements and procedures, see *Using the Single Application* (**Circular 11**).

*Example:* Anne Smith submits a Single Application to register the sound recording and musical composition as the sole owner of copyright of both works. The deposit she submits is a recording of her solo performance of the composition.

## Completing the Online Application for Musical Compositions and Sound Recordings

Mistakes in applications lead to delays in registration, so it is important to complete the application accurately. Instructions for completing the Standard Application appear in the "help" text that accompanies the application. Here are some tips regarding common points of confusion when an application includes both a sound recording and a musical composition.

### Type of Work

At the beginning of the application, select the "Sound Recording" option on the "Type of Work" screen. The questions presented in the application are based on the type of work you select, and if you select the wrong option you will need to start over.



### Title



| All Titles | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | ◄ 1 - 4 of 4 ► |
| Title of Work | Volume | Number | Issue Date | Type | Edit | Delete |
| Album Title | | | | Title of work being registered | 🖉 | 🗑 |
| First Track Title | | | | Contents Title | 🖉 | 🗑 |
| Next Track Title | | | | Contents Title | 🖉 | 🗑 |
| Last Track Title | | | | Contents Title | 🖉 | 🗑 |

Provide each title exactly as it appears on the work itself, identifying album and track titles using the title types as shown above. If you are registering one sound recording or one musical composition, enter one title as "Title of work being registered."

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Publication*

- Publication occurs when phonorecords of a work are distributed to the public by sale; transfer of ownership; or by rental, lease, or lending. Offering to distribute phonorecords to a group of persons for the purpose of further distribution or the purpose of publicly performing the work also constitutes publication. A public performance does not—in and of itself—constitute publication.

- If the work has not been published, answer "no" to the publication question.

- If the work has been published, answer "yes" to the publication question and give the date when and nation where the phonorecords were first distributed to the public or first offered to a group of persons for further distribution or public performance.

*Year of Creation*

- The year of creation is the year in which the version of the work to be registered was first fixed or recorded in any other tangible form. When a work is written or recorded over a period of time or constitutes a new version of an earlier work, give the year of completion of the final work or new version.

*Author*

- On the Author screen, name the author(s) of the sound recording(s) and musical composition(s) being registered. The author of a sound recording is the performer(s) featured in the recording and/or the producer(s) who captured and/or manipulated or edited the sounds that appear in the final recording. The author of a musical composition is the person who created the music and/or lyrics.

- There is also the possibility that the sound recording (and/or musical composition) were works made for hire. The applicant, not the U.S. Copyright Office, must determine whether a work meets the statutory definition of a work made for hire. The two types of works that can be considered a work made for hire are: (1) works prepared by an employee within the scope of his or her employment; or (2) certain types of specially commissioned works, outlined in the statute, where the parties signed a written agreement that the work was a "work made for hire." If the work was created as a work made for hire, give the name of the employer, not the person who actually created the music and/or lyrics and sound recording. For more information on works made for hire, see *Works Made for Hire* (**Circular 30**).

*Claimant*

- A sound recording and musical composition can only be registered together if the same person or entity is named as the copyright claimant for both works. For purposes of registration, the claimant may be the author of both the musical composition and the sound recording, or a party that owns the copyright in both works.

- If the claimant is not the author of either the musical composition or the sound recording, the applicant must also provide a transfer statement by checking one of the boxes (e.g., by written agreement, by inheritance, etc.) or by explaining how the claimant obtained the rights in the work in the space provided.

51
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Type of Authorship*

| | |
|---|---|
| * **Author Created:**<br><br>☐ Sound recording<br><br>Check this box to describe your sound recording authorship. | Help  **Other:** [          ]<br><br>Use this space to describe the musical composition authorship ("music," "lyrics," musical arrangement," etc.) |

*Limitation of Claim*

- Complete this space if the work being registered contains an appreciable amount of material that
  » was previously published
  » was previously registered with the U.S. Copyright Office
  » is in the public domain
  » is not owned by the claimant named in the application

Leave this space blank if the work does not contain an appreciable amount of any of this kind of material.

## Submitting the Works to the Copyright Office

To register your sound recording and musical composition, you must send the works to the Copyright Office. Once a deposit has been submitted, it becomes part of the public record and cannot be returned.

When registering a sound recording and musical composition that are unpublished or published solely in a digital form, the Copyright Office strongly encourages you to upload the deposit as a digital file through the online registration system instead of submitting a physical phonorecord, such as a CD, flash drive, or other physical storage device. Each file must be uploaded in an acceptable file format, and each uploaded file must not exceed 500 MB in size. You may compress the files to fit within that size limit.

When registering a sound recording and musical composition published in a physical format, such as a compact disc or LP, you should submit two copies of the work in the physical format, even if there is a corresponding digital version. To submit physical copies of your work after completing an online application, you should print a shipping slip from the bottom of the "Submit Your Work" screen and send the shipping slip and deposits in the same package to the address given on the shipping slip. To submit a physical copy (or copies) of your work with a paper application, complete Form SR and submit the deposit in the same package with the application and the filing fee.

If the sound recording has been published in the United States in multiple physical formats at the time of registration, you will need to comply with the "best edition" requirement by sending the two copies of the "best" edition. The "best" edition generally will be the highest quality edition that has been publicly distributed in the United States. The Library of Congress has identified hierarchical criteria for what constitutes the highest quality edition for sound recordings:

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1. Compact disc
2. Vinyl disc
3. Open-reel tape
4. Cartridge tape
5. Cassette tape

For example, if the work was published both on compact disc and vinyl disc before the date of the deposit, you should submit two CDs rather than vinyl discs.

### Registering Multiple Musical Compositions and Sound Recordings on One Application

To register multiple sound recordings and musical compositions together on one application, they must qualify for group registration, as a collective work, or unit of publication. This section provides specific guidance for registering musical compositions and sound recordings using these methods. For more general information regarding multiple work registration, see *Multiple Works* (**Circular 34**).

#### *Group Registration of Unpublished Works*

An applicant may register up to ten unpublished sound recordings and the underlying musical works using the online group registration option, provided that the musical compositions and sound recordings were created by the same author or authors and all of the authors are named as copyright claimants.

When registering multiple musical works and sound recordings using the group registration option, provide a title for each of the individual works within the collection.

*Example One*
Three unpublished compositions were written and performed by Jim, Pam, and Dwight. Assuming there was no transfer of ownership, the authors and owners of all three compositions and sound recordings are the same, and the compositions may be registered using the group registration option.

*Example Two*
Three unpublished compositions were written by Jim and Dwight: Composition 1 was performed by Jim; Composition 2 was performed by Jim; Composition 3 was performed by Dwight. Jim and Dwight may register the three unpublished compositions, but not the three sound recordings, on one group application. Jim may register the sound recordings for Composition 1 and Composition 2 on one group application, while Dwight registers the sound recording for Composition 3 on a separate application.

#### *Collective Work*

A collective work is a compilation in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole. The "authorship" in a collective work comes from the original selection, coordination, and arrangement of the independent works included in the collective work.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Under the Copyright Act, a collective work is considered one work for purposes of registration. A registration for a collective work covers the copyrightable authorship in the selection, coordination, or arrangement of the work. A registration for a collective work also covers the individual copyrightable works that are contained within the collective work if (1) the collective work and the individual works are owned by the same party, (2) the individual works have not been previously published or previously registered, and (3) the individual works are not in the public domain.

Accordingly, an applicant may use one application to register a number of musical compositions and sound recordings as a collective work if the applicant owns the musical compositions and sound recordings, selected and arranged the musical compositions and sound recordings into a collective whole, and the musical compositions and sound recordings have not been previously published or previously registered.

For example, a CD album with multiple tracks that embody musical compositions and sound recordings is considered a collective work. If the person or entity selecting, coordinating, or arranging the musical compositions and sound recordings on the album also owns the sound recordings, which were not previously published or registered, then the album and sound recordings may be registered with one application as a collective work. If that party also owns the musical compositions, which were not previously published or registered, then the collective work registration would also extend to the musical compositions.

By contrast, if the copyright owner of the musical composition is not the copyright owner of the sound recordings, the musical compositions and sound recordings must be registered separately. If an author only selects or arranges the songs on an album, but is not the copyright owner of the component sound recordings or the musical compositions, or if those recordings or compositions were previously published or registered, that author may still file an application for a collective work covering only the selection, coordination, and arrangement of the songs on the album. This might occur, for example, in the case of a "best of" album or a movie soundtrack album. But in this situation, the registration in the collective work would not extend to the individual sound recordings or the musical compositions on the album.

> *Example*
> An artist wrote and performed multiple tracks for a published album and determined how to arrange the compositions on the album. The artist can register this work on one application as a collective work. The claim may include the individual musical compositions and sound recordings as well as the selection, coordination, and arrangement of the tracks on the album.

### Unit of Publication

The Copyright Office has a narrow registration accommodation for units of publication. A unit of publication is a physical package that contains a number of separately fixed works that have been physically bundled together for distribution to the public as a single, integrated unit. The unit of publication accommodation is meant to solve a very particular problem: the burdens that would arise if applicants were required to submit, and the Office were required to process, multiple copies of the same product in order to register different copyrightable elements of that product.

An applicant may register a number of works as a unit of publication only if:

- All of the copyrightable elements are recognizable as self-contained works.

- All of the works claimed in the application are first published as a single unit on the same date.

- The copyright claimant for all of the works claimed in the unit is the same.

54
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

- The unit and all of the works within the unit are distributed in a physical format.

- The unit contains an actual physical copy or phonorecord of all the works.

- The unit is distributed to the general public.

In the context of music albums, a registration relying on the unit of publication option may also extend to the copyrightable text, artwork, and photographs that appear in the liner notes for the unit. When registering these types of works, include a brief statement describing the works in the "Other" field on the Author screen using the specific terms, such as "artwork," "photographs," and "text of liner notes." Please note that names and titles of tracks are not copyrightable so the applicant should not assert a claim in "text of liner notes" if the names and titles of tracks are the only text present in the unit of publication.

All of the above-mentioned conditions must be met for an applicant to use the unit of publication option. If any of the compositions were published individually, and not within the unit of publication, then the unit of publication option cannot be used to register those works. Similarly, an applicant cannot use the unit of publication option if the tracks, cover art, and/or liner notes are owned by different parties, or if one or more of the works was published on a different date or in a different unit of publication.

*Example*

A CD album with two tracks that embody musical compositions and sound recordings along with an insert containing text and artwork is considered a unit of publication when they are distributed to the general public as a single, integrated unit. If the copyright owner of the text and artwork is the same as the copyright owner of the two musical compositions and sound recordings, the musical compositions, sound recordings, text and artwork may be registered together with one application.

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**NOTE**

1. This circular is intended as an overview of the distinction between musical compositions and sound recordings. The authoritative source for U.S. copyright law is the Copyright Act, codified in Title 17 of the *United States Code*. Copyright Office regulations are codified in Title 37 of the *Code of Federal Regulations*. Copyright Office practices and procedures are summarized in the third edition of the *Compendium of U.S. Copyright Office Practices*, cited as the *Compendium*. The copyright law, regulations, and the *Compendium* are available on the Copyright Office website at **www.copyright.gov**.

56
DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**For Further Information**

*By Internet*

The copyright law, the *Compendium*, electronic registration, application forms, regulations, and related materials are available on the Copyright Office website at **www.copyright.gov**.

*By Email*

To send an email inquiry, click the *Contact Us* link on the Copyright Office website.

*By Telephone*

For general information, call the Copyright Public Information Office at (202) 707-3000 or 1-877-476-0778 (toll free). Staff members are on duty from 8:30 am to 5:00 pm, eastern time, Monday through Friday, except federal holidays. To request application forms or circulars by postal mail, call (202) 707-9100 or 1-877-476-0778 and leave a recorded message.

*By Regular Mail*

Write to
      Library of Congress
      U.S. Copyright Office
      Outreach and Education Section
      101 Independence Avenue, SE #6304
      Washington, DC 20559-6304

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Exhibit G

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**COOPER**
**L E G A L**

1 Olympic Place, Suite 900
Towson, MD 21204
(202) 642.5470

March 31, 2022

**CEASE AND DESIST**

<u>**VIA PRIORITY MAIL – SIGNATURE CONFIRMATION**</u>

Jeffrey Harleston, Esq.
Onika Tanya Maraj a/k/a/ and p/k/a Nicki Minaj
Universal Music Publishing Group, Inc
2220 Colorado Ave.
Santa Monica, CA 90404-3506

**FOR NEGOTIATION AND
SETTLEMENT PURPOSES
ONLY**

**RE: I Lied by Nikki Minaj - Copyright Infringement of OnMySleeve**

Dear Mr. Harleston and Ms. Maraj:

This firm represents Mr. Julius Johnson. It has recently come to my client's attention that his composition "OnMySleeve" (the "Work") has been infringed by Universal Music Publishing Group, Inc. ("Universal") and Ms. Maraj. After much contemplation regarding the infringement of his Work, Mr. Johnson has authorized my firm to send this cease and desist.

<u>**COPYRIGHTED WORKS - *ONMYSLEEVE***</u>

In 2011, Mr. Johnson published OnMySleeve to YouTube,[1] and in 2022, registered the Work. A copy of the registration record is enclosed for your reference. As a copyright holder of many works, I am sure Universal and Ms. Maraj can understand and appreciate the substantial commercial value of the Work to Mr. Johnson.

<u>**COPYING AND ACCESS**</u>

In 2014, Universal and Ms. Maraj reproduced, published, distributed, transmitted, displayed, and publicly performed *I Lied* which incorporates Mr. Johnson's entire Work. The copying is irrefutable. As you will hear and see in the enclosed video,[2] when played in tandem, the songs are indistinguishable. More specifically, *inter alia*, both melodies start on a single chord, both repeated exactly twice (as two half notes) to take up the space of one 4/4 measure, or 4 full

---

[1] https://www.youtube.com/watch?v=Q-ATmEOOjs0&t=71s. Last accessed March 29, 2022.
[2] https://www.youtube.com/watch?v=YZ56I43AHuk. Last accessed March 30, 2022.

Jeffrey Harleston, Esq.
Page 2 of 3

counts before moving in a small interval either up or down to two different chords (again, taking up the space of one 4/4/ measure or 4 full counts, and again, as two half notes), before both returning to the starting tone again for two whole notes, or 8 full counts - then, repeating the exact same pattern as the song continues. Both songs incorporate high hat drums. In addition, the phrasing, as outlined in the melody, is not only substantially similar but nearly identical in chord movement timings during each progression.

Accordingly, there is no question that *I Lied* incorporates the entirety of Mr. Johnson's copyright-protected Work and that Universal and Ms. Maraj had access to Mr. Johnson's Work as it was publicly available on YouTube.

Despite the appreciation for such rights and commercial value resulting therefrom, Universal and Ms. Maraj reproduced, published, distributed, caused to be transmitted and displayed, and publicly performed, *I Lied*, an unauthorized use the Work without proper attribution or compensation.

## **RESERVATION OF RIGHTS AND REMEDIES**

Mr. Johnson has reserved all rights in his Work under U.S. copyright laws and has not authorized Universal or Ms. Maraj to reproduce, publish, distribute, transmit, display, publicly perform, or otherwise make any use of his Work. Therefore, Universal's and Ms. Maraj's use of his Work is a clear infringement of Mr. Johnson copyrights in violation of Sections 106 and 501 of the federal Copyright Act.

Moreover, the extent of identical copying from Mr. Johnson's Work plainly establishes that the infringement was knowing and intentional. Mr. Johnson treats copyright infringement as a very serious matter and fully enforces his rights against infringers. Mr. Johnson prefers to resolve this matter amicably and without protracted litigation provided that Universal and Ms. Maraj cooperate fully.

We, therefore, request that Universal and Ms. Maraj:

1. Immediately cease and desist from all further production, reproduction, publishing, distribution, transmission, display, performance, advertising, licensing, and sale of *I Lied* and any further infringement of Mr. Johnson's Work.
2. Destroy all such materials in your inventory or otherwise in possession or control.
3. Provide Mr. Johnson with a full accounting of all copies sold, licensed, or otherwise distributed worldwide, and all proceeds therefrom.

Universal and Ms. Maraj are specifically advised that any failure or delay in complying with these demands will likely compound the damages for which Universal and Ms. Maraj may be liable.

We ask that Universal, Ms. Maraj, or counsel promptly provide my office with written confirmation that Universal and Ms. Maraj will comply with these demands. If we do not receive a satisfactory response by 6 p.m. ET on April 19, 2022, Mr. Johnson is prepared to take all steps

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Jeffrey Harleston, Esq.
Page 3 of 3

necessary to protect his valuable intellectual property rights, without further notice to Universal and Ms. Maraj.

The above is not an exhaustive statement of all the relevant facts and law and Mr. Johnson expressly reserves all of his equitable and legal rights and remedies, including the right to seek injunctive relief and recover monetary damages.

Thank you for your time and prompt attention regarding this matter.

Regards,

Dayna C. Cooper, Esq.

Enclosure: Copyright registration

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## SR 921-043

**Effective Date of Registration:**
February 07, 2022
**Registration Decision Date:**
February 16, 2022

## Title

Title of Work:  onmysleeve

## Completion/Publication

Year of Completion:  2011
Date of 1st Publication:  September 23, 2011
Nation of 1ˢᵗ Publication:  United States

## Author

- Author:  Julius JanMichael Johnson
  Author Created:  sound recording
  Work made for hire:  No
  Citizen of:  United States
  Domiciled in:  United States
  Year Born:  1987

## Copyright Claimant

Copyright Claimant:  Julius JanMichael Johnson
205 county road 433, Englewood, TN, 37329, United States

## Rights and Permissions

Name:  Julius JM Johnson
Email:  middlecreekstudios@gmail.com
Telephone:  (423)368-7893
Alt. Telephone:  (423)368-2598
Address:  205 county road 433
Englewood, TENNESSEE 37329 United States

Page 1 of 2

DECLARATION OF THOMAS C. LUNDIN JR. IN SUPPORT OF MOTION TO DISMISS COMPLAINT