Dayna C. Cooper (*pro hac vice pending*)
Dayna@CooperLegalSolutions.com
COOPER LEGAL, LLC
1 Olympic Pl., Suite 900
Towson, MD 21204
Telephone: (202) 642 5470
Facsimile: (757) 257 9878

*Attorneys for Plaintiff Julius Johnson*
(Additional attorneys listed on signature page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS JOHNSON, an individual,<br><br>     Plaintiff,<br><br>     vs.<br><br>ONIKA TANYA MARAJ P/K/A NICKI MINAJ, *et al.*<br><br>     Defendants. | Case No. 2:23-cv-5061-PA-AFM<br><br>THIRD AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT; VICARIOUS COPYRIGHT INFRINGEMENT; CONTRIBUTORY COPYRIGHT INFRINGEMENT; DMCA VIOLATIONS, 17 U.S.C. § 1202 *et seq.*; DMCA - VICARIOUS LIABILITY; & DMCA – CONTRIBUTORY LIABILITY<br><br>DEMAND FOR JURY TRIAL<br><br>Date Action Filed: June 26, 2023 |

### THIRD AMENDED COMPLAINT

Plaintiff Julius Johnson ("Johnson") by and through his undersigned attorneys, brings this his Third Amended Complaint ("TAC") and alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over Johnson's claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 501 *et. seq.*; violations of the Digital Millennium Copyright Act and related claims pursuant to 17 U.S.C. §§ 1201 *et. seq.*, and 28 U.S.C. §§ 1331 & 1338.

2.     The Court has personal jurisdiction over the Defendants, because on information and belief, each of them is domiciled in and/or regularly transacts or solicits business in the State of California and this District, and because the cause of action arises out of each of the respective Defendants' contacts with the State of California, this District, and persons therein and thereof.

3.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b), (c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and, on information and belief, Defendants are subject to personal jurisdiction in this District.

### PARTIES

4.     Johnson is a songwriter, musician, music composer, and producer. He is a resident of the State of Tennessee.

5.     Defendant, Onika Tanya Maraj p/k/a Nicki Minaj ("Minaj"), is an artist, singer, entertainer, performer, recording artist, hip-hop performer, and/or a rapper who resides in the State of California, and at all material times herein, is and was doing business in the State of California within this judicial district. On information and belief, Minaj participated in, facilitated, and/or encouraged the wrongful conduct alleged herein within this judicial district and/or regularly conducts business within this judicial district.

6.     On information and belief, Defendant, Harajuku Barbie Music, LLC ("Harajuku"), is a Delaware music publishing company that participated in, facilitated, and/or encouraged the wrongful conduct alleged herein within this judicial district and/or regularly conducts business within this judicial district.

7.     Defendant, Universal Music Group ("UMG"), is a U.S. record label and music industry conglomerate and Delaware corporation that is admitted and authorized to conduct business throughout the United States, and more specifically, is authorized to and does regularly conducts business within the State of California and has/maintains offices in the County of Los Angeles, State of California. On information and belief, UMG participated in, facilitated, and/or encouraged the wrongful conduct alleged herein within this judicial district.

8.     On information and belief, Defendant, Songs of Universal, Inc. ("SOU") is a record label, music publisher, and/or production company and California corporation that conducts business throughout the United States, and more specifically, is authorized

1   to and does regularly conduct business within the State of California and has/maintains

2   offices in the County of Los Angeles, State of California. On information and belief,

3   SOU participated in, facilitated, and/or encouraged the wrongful conduct alleged herein

4   within this judicial district.

5        9.        On information and belief, Defendant, W Chappell Music Corp. d/b/a WC

6   Music Corp. f/k/a WB Music Corp, ("WB Music") is a Delaware record label, music

7   publisher, and/or production company that participated in, facilitated, and/or encouraged

8   the wrongful conduct alleged herein within this judicial district and/or regularly

9   conducts business within this judicial district.

10       10.       On information and belief, Defendant, Michael Len Williams II p/k/a Mike

11  Will Made It ("Williams"), is a music producer, and on information and belief,

12  participated in, facilitated, and/or encouraged the wrongful conduct alleged herein

13  within this judicial district and/or regularly conducts business within this judicial

14  district.

15       11.       On information and belief, Defendant, Sounds from Eardrummers LLC,

16  ("Eardrummers") is a Georgia record label, music publisher, and/or production company

17  that participated in, facilitated, and/or encouraged the wrongful conduct alleged herein

18  within this judicial district and/or regularly conducts business within this judicial

19  district.

20       12.       On information and belief, Defendant, Kazarion Fowler p/k/a Skooly

21  ("Skooly") is a music producer that participated in, facilitated, and/or encouraged the

wrongful conduct alleged herein within this judicial district and/or regularly conducts business within this judicial district.

13.     On information and belief, Defendant, Money Mack Music, Inc. ("Money Mack"), is a Louisiana record label, music publisher, and/or production company that participated in, facilitated, and/or encouraged the wrongful conduct alleged herein within this judicial district and/or regularly conducts business within this judicial district.

14.     On information and belief, Defendant, Esther Renay Dean p/k/a Ester Dean ("Dean") is a singer, songwriter, and/or music producer that participated in, facilitated, and/or encouraged the wrongful conduct alleged herein within this judicial district and/or regularly conducts business within this judicial district.

15.     On information and belief, Defendant, Dat Damn Dean ("DDD"), is an unincorporated record label, music publisher, and/or production company that is affiliated with Dean, and that participated in, facilitated, and/or encouraged the wrongful conduct alleged herein within this judicial district and/or regularly conducts business within this judicial district.

16.     On information and belief, Defendant, Marcus Bell ("Bell") is a singer, songwriter, and/or music producer that participated in, facilitated, and/or encouraged the wrongful conduct alleged herein within this judicial district and/or regularly conducts business within this judicial district.

17.     On information and belief, Defendants DOES 1-10, are one or more individuals and/or entities who participated in, facilitated, encouraged, and/or had supervisory authority over the wrongful conduct set forth herein within this judicial district.

18.     Whenever this SAC refers to any act or acts of a Defendant, the reference shall also be deemed to mean that the directors, officers, employees, affiliates, controlling companies or agents of the responsible Defendant authorized such act while actively engaged in the management, direction or control of the affairs of Defendant, and each of them, and/or by persons who are the alter ego of Defendants, or while acting within the scope of their agency, affiliation, control or employment.

## FACTS COMMON TO ALL CLAIMS

### *The Copyrighted Sound Recording and Composition*

19.     In 2010, Johnson battled severe depression. As an outlet to express his emotions and avoid being consumed in self-harm, drug abuse, and thoughts of suicide, Johnson dedicated his time and energy to creating music.

20.     In 2011, pursuant to his dedication to music, Johnson completed his original and unique musical work titled *OnMySleeve* (inclusive of the individual "Composition" and "Sound Recording," collectively the "Works").

21.     The Sound Recording and Composition of *OnMySleeve* is registered with the United States Copyright Office under Registration No. SR 921-043 (Exhibit B), and supplementary Registration No. SR 984-874 (Exhibit D).

22.     On September 23, 2011, Johnson, via his personal YouTube channel, JcubedEnt, published the Works. Exhibit A. The Works are still available for viewing at https://www.youtube.com/watch?v=Q-ATmEOOjs0&t=71s (last accessed October 23, 2023).

23.     Johnson repeatedly re-published and re-circulated the Works from the years of 2012-2015 via his personal social media platform(s).

24.     During the years of 2012-2015, Johnson attended the Art Institute of Atlanta (the "Institute"), where he received professional training in audio production.

25.     On information and belief, including consideration of conversations Johnson had with other classmates and students, associates and/or affiliates of Minaj and Williams attended and/or were physically present at the Institute during that same time period.

26.     On information and belief, during the relevant times herein, Williams was present the Institute.

27.     In or about winter 2013, during or after one of Johnson's studio session in the audio production studio room(s) at the Institute, Johnson's hard drive which contained *OnMySleeve* (as well as other valuable data, files, and copyrighted works) was taken without his consent.

28.     On information and belief, during the relevant times herein, Williams had full access to audio production studio room(s) at the Institute.

29.     On information and belief, at all times relevant herein, associates and/or affiliates of Williams had full access to audio production studio room(s) at the Institute.

30.     On information and belief, Williams, his associates, and/or his affiliates obtained Johnson's hard drive containing the Works (and other data, files, and copyrighted works).

31.     On information and belief, Williams accessed the hard drive, discovered *OnMySleeve* and realized that it would be "a smash" for Minaj.[1]

32.     On information and belief, Williams then misappropriated and copied the Works.

33.     On information and belief, in order to conceal his misappropriation and infringement, Williams knowingly and intentionally removed and/or altered all meta data and copyright management information ("CMI") including but not limited to Johnson's name, digital file name, song title, and other information identifying the work.

34.     Subsequent thereto, on information and belief, despite knowledge of the falsity, and without Johnson's authorization, Williams relabeled and misattributed the work as his own and further distributed the Johnson's musical works with the false CMI.

---

[1] *See, e.g.,* https://www.xxlmag.com/mike-will-made-it-ransom-chronic/ ("I got a smash with Nicki Minaj on her album as well that's called 'I Lied,' that shit is retarded.")(last accessed January 3, 2023).

35.     On information and belief, at all times relevant herein, associates and/or affiliates of Minaj had full access to audio production studio room(s) at the Institute.

36.     On information and belief, associates and/or affiliates of Minaj obtained Johnson's hard drive containing the Works (and other data, files, and copyrighted works).

37.     On information and belief, one or more of DOES 1-10 obtained Johnson's hard drive containing the Works (and other data, files, and copyrighted works) and gave the hard drive or Works to Williams, Minaj, and/or their affiliates who then accessed and without authorization, copied Johnson's Works.

38.     On information and belief, at least one of DOES 1-10 had a close relationship with Johnson and Williams, stole the hard drive, and delivered it to Williams.

39.     Johnson reported the missing hard drive to the administrative staff of the Institute and called on the help of his fellow classmates to assist with the search.

40.     Despite his efforts, the hard drive was never returned or otherwise recovered by Johnson.

### *The Infringing Work, Album, and Mixtape*

41.     On information and belief, during and prior to December 2014, Defendants in their individual and respective capacities and/or acting in concert with each other, without authorization, intentionally and knowingly removed CMI including but not limited to Johnson's name, digital file name, song title, and other information identifying the work, and Defendants knew, or should have known, that such falsification, alteration

and/or removal of said copyright management information would induce, enable, facilitate, or conceal their infringement of Johnson's Works.

42.    Further, Defendants, in violation of the 1978 Copyright Act, infringed upon Johnson's copyright protected Works, by taking, copying, using, and misappropriating the same for the infringing work, *I Lied*, which was included in Minaj's album entitled, *The Pinkprint* as well as Williams's *Ransom* mixtape.

43.    On information and belief, Minaj specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

44.    On information and belief, Harajuku specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

45.    On information and belief, SOU specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

46.    On information and belief, UMG specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which

includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

47. On information and belief, WB Music specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

48. On information and belief, Williams specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* and *Ransom* mixtape (both of which include the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

49. On information and belief, Eardrummers specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* and *Ransom* mixtape (both of which include the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

50. On information and belief, Skooly specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

51. On information and belief, Money Mack specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which

includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

52.    On information and belief, Dean specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

53.    On information and belief, DDD specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

54.    On information and belief, Bell specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* (which includes the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

55.    On information and belief, DOES 1-10 specifically and intentionally and strategically targeted, marketed, promoted the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*) within, to, and from the State of California and/or to residents of California and this District.

56.    On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken—Minaj released or caused to be released, distributed or caused to be distributed, marketed,

and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom*[2] mixtape (which include the infringing work, *I Lied*).

57.    On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken— Harajuku released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the Infringing work, *I Lied*).

58.    On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken— SOU released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

59.    On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken— UMG released or caused to be released, distributed or caused to be distributed, marketed,

---

[2] *Available at, e.g.*, https://www.discogs.com/release/13756491-Mike-Will-Made-It-Ransom (last accessed October 25, 2023).

and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

60.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken— WB Music released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

61.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken— Williams released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

62.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken— Eardrummers released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

63.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken—Skooly released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

64.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken—Money Mack released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

65.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken—Dean released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

66.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken—DDD released or caused to be released, distributed or caused to be distributed, marketed,

and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

67.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken— Bell released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

68.     On information and belief, on or about December 15, 2014—three years after Johnson's publication of the Works and one year after the hard drive was taken— DOES 1-10 released or caused to be released, distributed or caused to be distributed, marketed, and/or sold throughout the United States, and more specifically, in the State of California, the infringing album, *The Pinkprint* and *Ransom* mixtape (which include the infringing work, *I Lied*).

69.     On information and belief, *The Pinkprint* debuted at number two on the US Billboard 200, with 244,000 album-equivalent units (with 198,000 coming from pure sales and 46,000 combined track-equivalent units and streams) in its first week.[3]

---

[3] *See* https://en.wikipedia.org/wiki/The_Pinkprint (last accessed June 14, 2023).

THIRD AMENDED COMPLAINT
2:23-cv-05061-PA-AFM
- 16 -

70.     On information and belief, *The Pinkprint* was streamed 16.8 million times across all on-demand streaming services in the United States during its first week.[4]

71.     On information and belief, *The Pinkprint* held the number two position for three weeks before falling to number three on the *Billboard* 200.[5]

72.     On February 10, 2016, the Record Industry Association of America ("RIAA") certified the *The Pinkprint* album double platinum.[6]

73.     As of January 2, 2024, *I Lied* has been streamed 6,700,000 times on Minaj's YouTube page.[7]

74.     As of January 2, 2024, *I Lied* has been streamed 7,330,000 times on Williams's SoundCloud account.[8]

75.     The infringing work, *I Lied*, is strikingly similar (or at least, substantially similar) to and as outlined herein contains many substantially identical protectable

---

[4] *Id.*

[5] *Id.*

[6] *See* https://www.riaa.com/gold-%20platinum/?tab_active=default-award&ar=nicki+minaj&ti=&lab=&genre=&format=Album&date_option=release&from=&to=&award=&type=&category=&adv=SEARCH&col=label&ord=asc (last accessed June 14, 2023).

[7] *See* https://www.youtube.com/watch?v=CtRVroyAUu0 last accessed January 2, 2024).

[8] *See* https://soundcloud.com/mikewillmadeit/i-lied-feat-nicki (last accessed January 2, 2024).

elements from Johnson's original and unique copyright-protected Composition and Sound Recording, both of which are protected under the Copyright Act.

76.    For example, as exhibited in the clip available at https://youtu.be/AWCR3bITdiQ, when played in tandem, Defendants' infringing work, *I Lied,* and Johnson's Works are virtually indistinguishable (aside from the lyrics).

77.    Based upon Johnson's findings, an experienced forensic musicologist, Dr. Robert Tomaro, a symphonic conductor, trained in the areas of classical, popular, and commercial music, with experience in the techniques of the recording studio and in recorded music, as well as in guitar performance as a professional guitarist, and two-time Grammy nominated producer and arranger[9] was retained to perform a comparative analysis of *I Lied* and *OnMySleeve*.[10]

---

[9]*Curriculum Vitae*, https://www.forensicmusicologistroberttomaro.com/_files/ugd/7cf222_5f7feb0a33b44b1689e6b6b65937c7a4.pdf (last accessed January 3, 2024); Website, https://www.forensicmusicologistroberttomaro.com/ (last accessed January 3, 2024).

[10] In addition to his experience as a musician according to his website, Dr. Tomaro has served as an expert on notable Copyright infringement cases, including, but not limited to, cases involving Walt Disney, Beyoncé, Justin Timberlake, Lil Nas X, Billie Eilish, and Pitbull.

78.     After conducting a reductive analysis,[11] sound/recording analysis,[12] and timeline analysis,[13] Dr. Tomaro cited **fifteen significant similarities** between Johnson's Work and the infringing work in the following areas: "melody, harmony, melodic structure, tempo, musical arrangement, and percussion."

79.     The significant similarities identified by Dr. Tomaro include, but are not limited to:

a.  **Similar instrumental motives** – Dr. Tomaro has identified five points of similarity between the subject works' motive and concludes that the similarities found in opening melody of *I Lied* was **copied from *On My Sleeve* and inserted into *I Lied***:

  i.  Both motives (signature musical phrases) are comprised of three notes;

  ii. Both motives consist of a phrase that begins on the tonic of the key A minor (the note: A);

---

[11] A reductive analysis involves comparing two or more works of music to discern fine and even minute differences and variations found in musical data through the analysis of the acoustical features of the works in question. This set of musical data includes elements of melody, harmony, rhythm, and orchestration.

[12] A recording analysis involves the identification and differentiation between two recorded works in terms of melody, harmony, and/or digital signals, in the exact form in which they were recorded.

[13] A timeline analysis involves creating a timeline of significant events that may be present in both recordings.

   iii. Both motives begin by rising up a short interval to a neighboring tone;

   iv. Then, both motives descend to a lower neighboring tone; and

   v. Two out of the three pitches in both motives are the same.

 b. **Tempos** – The tempos of both recordings are identical.

 c. **Chord Progressions Virtually Identical** –

   i. Both songs feature a slow-moving-chord that uses three chords which repeats over and over throughout the recordings; This repetition creates a somnambulant, dreamy quality in both songs;

   ii. Two out of the three chords in both progressions are virtually the same; the third chord only differs by one note. Dr. Tomaro notes the chord progression, which, in musical terms, is: the 6th chord to the flat 7th chord to the tonic chord, is ***uncommon and unique***;

   i. The first chord in both progressions shares two out of their three pitches, a fact that produces an almost identical harmonic effect;

   i. The second chord in both chord progressions is identical. It is a G major triad; Moreover, the voicing of the chords (the configuration in which the notes are placed) is identical. From the lowest tone to the highest, they are: G… B… and D;

   i. Both G chords are played in the same register, making them sound exactly alike; and

ii.  The chord progressions end on the same chord, A minor.

d.  **Complex Drum parts virtually identical** – There are marked similarities in the complex and rhythmically interesting drum set parts to both songs; Both bass drum parts use a combination of even 8th notes and syncopated 16th note figures played on the offbeats to create rhythmic interest;[14]

e.  **Entrance of subject works identical** - At 0:00 in both recordings, the first and most notable musical entrance is of the melody line of both songs … In the view of Dr. Tomaro, it is no coincidence that both recordings begin with an almost identical three note melodic motive, performed in a plaintive, yearning fashion, one that establishes the emotional state of the vocal soloist in *I Lied* as the listener follows Minaj's narrative throughout the remainder of the recording; and

f.  The use of the drums appearing and disappearing at intervals throughout both songs.[15]

_____

[14] Further to Dr. Tomaro's point, the complexity of the particular drum sets in this case are unique and uncommon. More specifically, the purpose of drums in popular music is typically to provide a uniform, consistent pulse for the entire duration of a musical piece. In both of these pieces, the drums are used in an atypical fashion, with the stylistic choice to bring in a pattern of 8th and 16th syncopated rhythms in disappearing intervals. Johnson's artistic choice of making said drums disappear and reappear at specific intervals is an extremely unusual style, and Defendant's subsequent copying of this unique and uncommon musical choice is further indicative of copyright infringement.

[15] See *id.*

80.     Consistent with Dr. Tomaro's observations, Johnson's selection and arrangement of the individual elements together constitute a unique and protectable work.

81.     Further, as provided by Dr. Tomaro, Defendants' selection and arrangement of the infringing work is virtually identical to, or at least, strikingly similar to that of Johnson's Works.

82.     Given the at least 15 similarities identified by Dr. Tomaro, he concluded that the works were strikingly similar such that the similarities have not occurred by chance or by coincidence and accordingly, they must have occurred by design. He further concludes that since *OnMySleeve* is the earliest copyrighted recording of the two, it appears as if significant aspects of Mr. Johnson's musical material found in *OnMySleeve* has been appropriated by the composer of *I Lied* and incorporated into the recording of that song.

83.     Defendants' songwriting process uses other parties' music as the basis for many of their songs.

84.     On information and belief, given that there are at a minimum ***15 striking similarities*** identified by Dr. Tomaro, Johnson's Sound Recording was sampled, and is the "core of I Lied."

85.     Further, given these similarities, on information and belief, an exact digital copy of Johnson's Sound Recording was placed by Defendant(s) without Johnson's

permission onto 2 tracks of the Defendant(s) initial master recording to serve as, including without limitation, a foundation, guide, beat track, and/or sample track.

86.    On information and belief, Johnson's Sound Recording was converted by Defendant(s), without permission, into other formats (hereinafter referred to as "New Media"), including but not limited to MIDI (musical instrument digital instrument format), by readily-available audio product and conversion software. (*See e.g.,* www.anyconv.com)

87.    On information and belief, the resultant New Media generated by Defendant(s) from Johnson's misappropriated Sound Recording contained programmed instructions, digital samples, and/or the like; and/or was used to control other synthesizers, sequencers, filters, and/or keyboards in Defendant(s)' infringing work.

88.    Johnson alleges *I Lied* contains samples of Johnson's work, and/or New Media created by Defendant's impermissible intermediate copying directly from Johnson's Sound Recording, and, in the eyes of the law, is a derivative work of Johnson's Sound Recording.

89.    The copied protectable Sound Recording elements include, but are not limited to, (i) actual sounds from/sound samples of Johnson's work; and (ii) any and all rhythms, melodies, harmonies, and/or the like created by (a) converting the Sound Recording into other formats; and/or (b) using the New Media to control other synthesizers, sequencers, filters, and keyboards to create internal form, rhythm, style, melody, harmony, chord pattern, and/or .wav files. The .wav (or related format) files of

the infringing works, together with all the other elements, are so strikingly similar, it is readily apparent that the Sound Recording was sampled, converted, and controlled other media.

90.     In the instant case, Johnson has not licensed Defendant(s) to do anything, and not only contends his Composition was infringed, but, in light of the protectable Sound Recording copyright elements (including, without limitation, the right to prevent others from using a direct copy of a Sound Recording owned by another, as a sample, to make media with programming instructions, to control other synthesizers, sequencers, filters, and keyboards), but his Sound Recording as well.

91.     Conversion of existing sound recordings to other formats saves time in creating a new work with the same form (*e.g.* Sonata, Rondo) and ability to control other media, including without limitation, synthesizers, sequencers, filters, and keyboards. All the foregoing elements can be, and in this case, were derived directly from the Sound Recording via music tools in an exact digital copy. Defendants' unlicensed copying and converting Johnson's Sound Recording in such a manner is in and of itself infringement of the Sound Recording.

92.     Accordingly, Defendants are in violation of the 1978 Copyright Act (*e.g.*, 17 U.S.C. §501 *et seq*.), including by infringing upon Johnson's unique copyright-protected Works, by taking, copying, using, performing, and misappropriating the same for *I Lied, The Pinkprint* album, and *Ransom* mixtape without the permission and consent of Johnson.

93.     As noted above, Johnson published and disseminated his works via YouTube and various social media platforms, disseminated the work via the Internet, and on information and belief, thereby caused the works to be viewed by at least one of the Defendants and or their/its agents.

94.     Also as noted above, on information and belief, at least Williams or another Defendant personally or via affiliates, obtained access the Works via improper possession of Johnson's hard drive that was taken from an audio production studio room at the Institute.

95.     As outlined above and concluded by the forensic musicologist, on information and belief, there are too many striking similarities between the infringing work and Johnson's Works to have been caused by chance or coincidence. Accordingly, it may be surmised that the striking similarities are *by design* and evince Defendants' access to Johnson's Works and copying thereof.

96.     Despite such direct copying of the underlying Composition and sampling of the Sound Recording, Defendants failed to credit or compensate Johnson or even seek a license from Johnson.

97.     Johnson is and continues to be the sole author, creator, composer, writer, and producer of the Works in addition to, being the sole legal and/or beneficial owner of all copyright interest therein.

98.     Defendants knowingly and intentionally credited other parties as being authors of Defendants' infringing work, *I Lied*—to the exclusion of Johnson. Exhibit C.

99.    On information and belief, Minaj, individually or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

100.   On information and belief, Harajuku, on its own or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

101.   On information and belief, SOU, on its own or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

102.   On information and belief, UMG, on its own or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

103.   On information and belief, WB Music, on its own or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

104.   On information and belief, Williams, individually or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

105.   On information and belief, Eardrummers, on its own or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

106.   On information and belief, Skooly, individually or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

1    107.   On information and belief, Money Mack, on its own or acting in concert

2  with one or more of the other Defendants, gave clearance and approval for, facilitated,

3  promoted and/or otherwise supported the release and distribution of Defendants'

4  infringing work*, I Lied* throughout the world and, more specifically, into and throughout

5  the State of California.

6    108.   On information and belief, Dean, individually or acting in concert with one

7  or more of the other Defendants, gave clearance and approval for, facilitated, promoted

8  and/or otherwise supported the release and distribution of Defendants' infringing work*,

9  *I Lied* throughout the world and, more specifically, into and throughout the State of

10  California.

11    109.   On information and belief, DDD, on its own or acting in concert with one

12  or more of the other Defendants, gave clearance and approval for, facilitated, promoted

13  and/or otherwise supported the release and distribution of Defendants' infringing work*,

14  *I Lied* throughout the world and, more specifically, into and throughout the State of

15  California.

16    110.   On information and belief, Bell, individually or acting in concert with one

17  or more of the other Defendants, gave clearance and approval for, facilitated, promoted

18  and/or otherwise supported the release and distribution of Defendants' infringing work*,

19  *I Lied* throughout the world and, more specifically, into and throughout the State of

20  California.

21

111.   On information and belief, DOES 1-10, individually or acting in concert with one or more of the other Defendants, gave clearance and approval for, facilitated, promoted and/or otherwise supported the release and distribution of Defendants' infringing work, *I Lied* throughout the world and, more specifically, into and throughout the State of California.

112.   On information and belief, Minaj, individually or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

113.   On information and belief, Harajuku, on its own or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

114.   On information and belief, SOU, on its own or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

115.   On information and belief, UMG, on its own or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

116.   On information and belief, WB Music, on its own or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

117.   On information and belief, Williams, individually or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

118.   On information and belief, Eardrummers, on its own or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson

for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

119.   On information and belief, Skooly, individually or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

120.   On information and belief, Money Mack, on its own or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

121.   On information and belief, Dean, individually or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

122.   On information and belief, DDD, on its own or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album,

*The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

123.   On information and belief, Bell, individually or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

124.   On information and belief, DOES 1-10, individually or acting in concert with one or more of the other Defendants, placed the infringing work, *I Lied*, the infringing album, *The Pinkprint*, and *Ransom* mixtape into the California and worldwide marketplaces and stream of commerce without due credit or compensation to Johnson for Defendant's use of Johnson's copyright protected Composition and/or Sound Recording.

125.   On information and belief, Minaj, individually or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, broadcast, and/or caused *I Lied* to be performed or broadcast worldwide and in the State of California without the express permission or consent of Johnson.

126.   On information and belief, Harajuku, on its own or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, broadcast, and/or caused *I Lied* to be performed or broadcast

worldwide and in the State of California without the express permission or consent of Johnson.

127.   On information and belief, SOU, on its own or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, broadcast, and/or caused *I Lied* to be performed or broadcast worldwide and in the State of California without the express permission or consent of Johnson.

128.   On information and belief, UMG, on its own or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, broadcast, and/or caused *I Lied* to be performed or broadcast worldwide and in the State of California without the express permission or consent of Johnson.

129.   On information and belief, WB Music, on its own or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, broadcast, and/or caused *I Lied* to be performed or broadcast worldwide and in the State of California without the express permission or consent of Johnson.

130.   On information and belief, Williams, individually or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, broadcast, and/or caused *I Lied* to be performed or broadcast worldwide and in the State of California without the express permission or consent of Johnson.

131.   On information and belief, Eardrummers, on its own or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, broadcast, and/or caused *I Lied* to be performed or broadcast worldwide and in the State of California without the express permission or consent of Johnson.

132.   On information and belief, Skooly, individually or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, broadcast, and/or caused *I Lied* to be performed or broadcast worldwide and in the State of California without the express permission or consent of Johnson.

133.   On information and belief, Money Mack Music, on its own or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, and/or caused *I Lied* to be performed worldwide and in the State of California without the express permission or consent of Johnson.

134.   On information and belief, Dean, individually or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, and/or caused *I Lied* to be performed worldwide and in the State of California without the express permission or consent of Johnson.

135.   On information and belief, DDD, on its own or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released,

performed, and/or caused *I Lied* to be performed worldwide and in the State of California without the express permission or consent of Johnson.

136.   On information and belief, Bell, individually or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, and/or caused *I Lied* to be performed worldwide and in the State of California without the express permission or consent of Johnson.

137.   On information and belief, DOES 1-10, individually or acting in concert with one or more other Defendants managed, produced, composed, arranged, controlled, released, performed, and/or caused *I Lied* to be performed worldwide and in the State of California without the express permission or consent of Johnson.

138.   On information and belief, Minaj, individually or acting in concert with one or more other Defendants controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

139.   On information and belief, Harajuku, on its own or acting in concert with one or more other Defendants, controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

140.   On information and belief, SOU, on its own or acting in concert with one or more other Defendants, controlled, governed, and/or managed significant contractual

and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

141.   On information and belief, UMG, on its own or acting in concert with one or more other Defendants, controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

142.   On information and belief, WB Music, on its own or acting in concert with one or more other Defendants, controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

143.   On information and belief, Williams, individually or acting in concert with one or more other Defendants controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

144.   On information and belief, Eardrummers, on its own or acting in concert with one or more other Defendants, controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

145.   On information and belief, Skooly, individually or acting in concert with one or more other Defendants controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

146.   On information and belief, Money Mack, on its own or acting in concert with one or more other Defendants, controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

147.   On information and belief, Dean, individually or acting in concert with one or more other Defendants controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

148.   On information and belief, DDD, on its own or acting in concert with one or more other Defendants, controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom.*

149.   On information and belief, Bell, individually or acting in concert with one or more other Defendants controlled, governed, and/or managed significant contractual

and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom*

150. On information and belief, DOES 1-10, individually or acting in concert with one or more other Defendants controlled, governed, and/or managed significant contractual and financial aspects involved in the management, production, creation, release, marketing, distribution, selling, and promotion of, *The Pinkprint, I Lied,* and *Ransom*

151. On information and belief, Minaj knew of or had reason to know of and/or cleared and approved, directly, and/or by way of her labels, its departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

152. On information and belief, Harajuku knew of or had reason to know of and/or cleared and approved, directly, and/or by way of its labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

153. On information and belief, SOU knew of or had reason to know of and/or cleared and approved, directly, and/or by way of its labels, departments, subdivisions,

subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

154.   On information and belief, UMG knew of or had reason to know of and/or cleared and approved, directly, and/or by way of its labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

155.   On information and belief, WB Music knew of or had reason to know of and/or cleared and approved, directly, and/or by way of its labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

156.   On information and belief, Williams knew of or had reason to know of and/or cleared and approved, directly, and/or by way of his labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating

songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

157.   On information and belief, Eardrummers knew of or had reason to know of and/or cleared and approved, directly, and/or by way of its labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

158.   On information and belief, Skooly knew of or had reason to know of and/or cleared and approved, directly, and/or by way of his labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

159.   On information and belief, Money Mack knew of or had reason to know of and/or cleared and approved, directly, and/or by way of its labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

160.   On information and belief, Dean knew of or had reason to know of and/or cleared and approved, directly, and/or by way of her labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

161.   On information and belief, DDD knew of or had reason to know of and/or cleared and approved, directly, and/or by way of its labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

162.   On information and belief, Bell knew of or had reason to know of and/or cleared and approved, directly, and/or by way of his labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

163.   On information and belief, DOES 1-10 knew of or had reason to know of and/or cleared and approved, directly, and/or by way of their labels, departments, subdivisions, subsidiaries including, but not limited to one or more of the other

Defendants, the contractual retainers, agreements, contracts of all collaborating songwriters and/or collaborating producers engaged for Defendants' infringing work, *I Lied,* for the infringing album, *The Pinkprint*, and the infringing *Ransom* mixtape.

164.   On information and belief, Minaj worked, conducted business, and/or appeared at various music studios within the State of California; caused, assisted, aided, booked, and/or caused herself to be scheduled to appear, perform, and/or work at various music studios and/or music performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

165.   On information and belief, Harajuku caused, assisted, aided, booked, and/or scheduled Minaj to appear, perform, and/or work at various music studios and/or music performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

166.   On information and belief, SOU caused, assisted, aided, booked, and/or scheduled Minaj to appear, perform, and/or work at various music studios and/or music performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

167.   On information and belief, UMG caused, assisted, aided, booked, and/or scheduled Minaj to appear, perform, and/or work at various music studios and/or music

performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

168.   On information and belief, WB Music caused, assisted, aided, booked, and/or scheduled Minaj to appear, perform, and/or work at various music studios and/or music performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

169.   On information and belief, Williams worked, conducted business, and/or appeared at various music studios within the State of California; caused, assisted, aided, booked, and/or caused Minaj to be scheduled to appear, perform, and/or work at various music studios and/or music performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

170.   On information and belief, Eardrummers caused, assisted, aided, booked, and/or scheduled Minaj to appear, perform, and/or work at various music studios and/or music performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

171.   On information and belief, Skooly worked, conducted business, and/or appeared at various music studios within the State of California; caused, assisted, aided,

booked, and/or caused Minaj to be scheduled to appear, perform, and/or work at various music studios and/or music performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

172.  On information and belief, Money Mack worked, conducted business, and/or appeared at various music studios within the State of California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

173.  On information and belief, Dean worked, conducted business, and/or appeared at various music studios within the State of California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

174.  On information and belief, DDD worked, conducted business, and/or appeared at various music studios within the State of California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

175.  On information and belief, Bell worked, conducted business, and/or appeared at various music studios within the State of California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

176.   On information and belief, DOES 1-10 worked, conducted business, and/or appeared at various music studios within the State of California; caused, assisted, aided, booked, and/or scheduled Minaj to appear, perform, and/or work at various music studios and/or music performance venues in California; and/or participated in music production on behalf of one or more other Defendants with the intention of marketing and distributing *I Lied* in California and to California residents.

### *Johnson's Discovery of the Infringing Work*

177.   In or about January 2022, while surfing Facebook Reels, a video of Minaj was suggested to Johnson. Johnson watched the Reel and after researching the approximately 16-second clip, he then discovered the song *I Lied* via a Google® Search of "Did I Lie" + "Niki Minaj".

178.   Upon his first hearing of *I Lied,* Johnson immediately recognized that, with the exception of the vocals, virtually all critical elements in *I Lied* were substantially similar and/or strikingly similar to those of his copyrighted Works.

179.   Johnson obtained a copyright registration for the Works from the United States Copyright Office on February 16, 2022. Exhibit B.[16]

---

[16] On October 7, 2023, Johnson applied for a supplementary registration to amplify the claim and clarify the record regarding the inclusion and/or ownership of the underlying composition of *OnMySleeve*. The supplementary registration has duly issued at SR 984-874. Exhibit D.

1    180.   Soon thereafter, on or about March 31, 2022, Johnson, by and through his

2    undersigned counsel, sent a cease and desist letter to UMG and Minaj to avoid further

3    harm to Johnson.

4    181.   UMG and Minaj ignored the demand, and to date, continue to exploit the

5    Composition and/or Sound Recording to Johnson's detriment and to Defendants'

6    continued profit.

7    ***Defendants' Continuing Infringement, Wrongful Acts, and Harm to Johnson***

8    182.   Since each sale, stream, or duplicate constitutes a separate claim against

9    Defendants under the Copyright Act, Johnson has sustained and will continue to sustain

10   substantial damages to the value of his copyright in that the previously described

11   activities of Defendants have diminished and will continue to diminish the revenues in

12   which Johnson would have otherwise been able to realize but for the unlawful

13   infringement of his Composition and/or Sound Recording.

14   183.   Defendants have realized unlawful and unjust profits from their

15   unauthorized and illegal copying, duplications, distribution, and release of Johnson's

16   original copyright protected Composition and/or Sound Recording and derivatives

17   thereof—including, in particular, *I Lied.*

18   184.   Defendants continue to infringe Johnson's copyright in *OnMySleeve* and

19   unless temporarily, preliminarily, and permanently enjoined by Order of this Court, will

20   continue to infringe said copyrights, all to Johnson's irreparable injury.

21

185.   As a result of Defendants' acts of infringement, Johnson is without an adequate remedy at law in that the full scope of damages are difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Johnson may be required to pursue a multiplicity of actions.

186.   As a direct result of the conduct of Defendants, Johnson has suffered and continues to suffer damages in an amount to be determined. Johnson was deprived of and unable to realize profit from his Composition and/or Sound Recording, as attention and demand for his work has been hijacked or, at a minimum, overshadowed by the unauthorized copy and/or derivation thereof in Defendants' infringing work, *I Lied.*

187.   On information and belief, Defendants' acts were willfully, maliciously, and oppressively made without regard to Johnson's proprietary rights.

## COUNT I
### COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 501 et seq.)

188.   Johnson repeats and realleges the allegations contained in Paragraphs 1 through 187 of the Complaint as if fully set forth herein.

189.   Johnson is the exclusive owner of the copyright in the Works, and, as such, has the exclusive rights under the Copyright Act, among other things, to reproduce, distribute, prepare derivative works from, perform, and otherwise exploit the Works, and to allow or not allow parties to exercise such rights.

190.   On information and belief, more than one Defendant is likely to have participated in the direct infringement.

191. On information and belief, Williams and/or his affiliated company, Eardrummers, bear primary fault for the infringement because, on information and belief, Williams has a history and/or pattern of misappropriating the intellectual property of unsuspecting artists for his benefit and without due compensation to those artists.

192. For example, Williams was alleged to have been provided "with a copy of [a] promotional mix, The Big Bang, containing the original musical composition 'J's On My Feet ft Fleetwood'" authored by an up-and-coming artist ("Asher"). [17]

193. Shortly after having been given the composition by an acquaintance of Asher, Williams was alleged to have "posted a message to his verified Twitter handle @MikeWiLLMadeIt: 'First song drops soon. It's called '23' and its (sic) NOT RIGHT.'"[18]

194. A few months later, Williams, Eardrummers, SOU, UMG, WB Music, and others published and released an album, *Bangerz* which included "23s (J's On My Feet)" which was alleged to have infringed Asher's composition "J's On My Feet."[19]

---

[17] *Asher v. Cyrus*, 1:18-cv-02288, (D. Colo. Oct 23, 2018), Am. Compl. (ECF No. 29) at ¶¶34, *available at* https://www.courtlistener.com/docket/13561891/29/asher-v-cyrus/. Defendants point out that the infringement in this case is not limited to the composition but also infringement of her lyrics. Mtn to Dismiss. Dkt. 54-1 at 17.

[18] *Id.*at ¶35.

[19] *Id.* at ¶¶36-37, 39.

195. On information and belief, Asher's composition "J's On My Feet" has since been removed from the Internet to eliminate all evidence of the infringement as a term of the parties' settlement agreement.

196. On information and belief, to avoid admitting liability, Williams settled with Asher.

197. On information and belief, to avoid a finding of liability, Williams settled with Asher.

198. On information and belief, to avoid admitting liability, Eardrummers, settled with Asher.

199. On information and belief, to avoid a finding of liability, Eardrummers settled with Asher.

200. On information and belief, to avoid admitting liability, SOU, settled with Asher.

201. On information and belief, to avoid a finding of liability, SOU settled with Asher.

202. On information and belief, to avoid admitting liability, UMG, settled with Asher.

203. On information and belief, to avoid a finding of liability, UMG settled with Asher.

204. On information and belief, to avoid admitting liability, WB Music, settled with Asher.

205.   On information and belief, to avoid a finding of liability, WB Music, settled with Asher.

206.   On information and belief, Eardrummers, SOU, UMG, and WB Music have a history or pattern of, at least, complicity in Williams's infringing conduct.

207.   On information and belief, Eardrummers, SOU, UMG, and WB Music have a policy or practice of turning a blind eye to infringing conduct of its agents and contractors.

208.   In another instance, involving the same album, Williams was alleged to have been directly involved in the selection and misappropriation of the works belonging to a Jamaican artist ("May").[20]

209.   On information and belief, to avoid admitting liability, Williams, settled with May.

210.   On information and belief, to avoid a finding of liability, Williams, settled with May.

211.   In yet another instance of copyright infringement for that same *Bangerz* album, Williams was alleged to have stolen a work (*i.e.*, title, lyrics, music) from a gentleman ("Cruz") who, at the time of the alleged misappropriation, was incarcerated.

---

[20]*May v. Cyrus*, 1:18-cv-02238, (S.D.N.Y. June 5, 2018), 2nd Am. Compl. (Dkt. 32) *available at* https://www.courtlistener.com/docket/6333384/32/may-v-cyrus/.

Cruz alleged that the published work was virtually identical and Williams took credit for the entire work.[21]

212.   On information and belief, prior to being served and entering an appearance in the case, Williams settled with Cruz.

213.   On information and belief, as in the similarly situated instances above, Williams had access to Johnson's Composition and/or Sound Recording when he copied, took, used, misappropriated, and incorporated it/them into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

214.   Upon accessing Johnson's Composition and/or Sound Recording, Williams took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing he did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing album, *The Pinkprint* and *Ransom* mixtape.

215.   Williams never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

216.   Given the instances and circumstances closely resembling those involving

---

[21] *Cruz v. RCA Record label*, 3:14-cv-00623 (M.D. Tenn. Feb 4, 2014), Am. Compl. (ECF No. 89), *available at* https://www.courtlistener.com/docket/5068677/89/cruz-v-rca-record-label/.

Williams, Johnson's recited beliefs regarding Williams's role in the other allegations made herein are substantiated and justified.

217. On information and belief, Minaj is also likely to bear substantial fault regarding infringement of the Composition and/or Sound Recording as she also has a history and/or pattern of misappropriating the intellectual property of creators and without due compensation to those artists.

218. In one instance, Minaj is accused of misappropriating several copyrighted images, and despite the owner's numerous demands to cease the infringing conduct, Minaj is alleged to have continued to use, copy, and distribute the images without consent and compensation to the owner. [22]

219. On information and belief, to avoid admitting liability, Minaj, settled with the owner.

220. On information and belief, to avoid a finding of liability, Minaj, settled with the owner.

221. In another case, *Rich Sex* artist, Headley ("Headley") alleges that he had "a long-standing relationship" with Minaj; that he let Minaj hear his song, *Rich Sex;* that he informed Minaj that he intended to include the song on his own album; and that Minaj

---

[22]*Splash News and Picture Agency, LLC v. Onika Tanya Maraj*, 2:20-cv-00551, (C.D. Cal.), 1st Am. Compl. (Dkt. 36), *available at* https://www.courtlistener.com/docket/16729485/36/splash-news-and-picture-agency-llc-v-onika-tanya-maraj/

"admitted/acknowledged to [Headley] that his song was a hit, was extremely marketable and would be a global commercial success." [23]

222.   Headley alleges that Minaj requested a copy of the song, and two years later, Headley learned that Minaj, without his consent and without compensation, misappropriated his song and incorporated it on her album, *Queen*.[24]

223.   On information and belief, to avoid admitting liability, Minaj, settled with Headley.

224.   On information and belief, to avoid a finding of liability, Minaj, settled with Headley.

225.   Similarly, on information and belief, Minaj had access to Johnson's Composition, Sound Recording, and/or infringing derivative thereof when she copied, took, used, misappropriated, and incorporated it/them into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

226.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, Minaj took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound

---

[23] *Headley v. Universal Music Group, Inc.*, 1:20-cv-11120, (S.D.N.Y. Mar 22, 2021), Am. Compl. (ECF No. 40) at ¶¶ 88, 100, *available at* https://www.courtlistener.com/docket/27457078/40/headley-v-universal-music-group-inc/.

[24] *Id.* at, *e.g.,* ¶¶ 104.

Recording knowing she did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing album, *The Pinkprint* and *Ransom* mixtape.

227.   Minaj never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

228.   Considering Minaj's track record of copyright infringement, particularly the accusations of infringement made by someone alleged to have a "long-standing relationship" her, Johnson's belief that he, a stranger, is not immune from having his own creative works intentionally infringed upon by Minaj and, thus his belief is well-founded.

229.   On information and belief, Harajuku obtained access to Johnson's Composition, Sound Recording, and/or infringing derivative and thereafter proceeded to copy, misappropriate, and/or incorporate its musical and/or lyrical contribution into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

230.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, Harajuku took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing it did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing album, *The Pinkprint* and *Ransom* mixtape.

231.   Harajuku never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

232.   On information and belief, SOU obtained access to Johnson's Composition, Sound Recording, and/or infringing derivative and thereafter proceeded to copy, misappropriate, and/or incorporate its musical and/or lyrical contribution into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

233.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, SOU took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing it did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

234.   SOU never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

235.   Given SOU's apparent complicity in Williams's history of infringement, Johnson's belief of SOU's involvement is well-founded.

236.   On information and belief, UMG obtained access to Johnson's Composition, Sound Recording, and/or infringing derivative and thereafter proceeded to copy, misappropriate, and/or incorporate its musical and/or lyrical contribution into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

237.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, UMG took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing it did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

238.   UMG never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

239.   Given UMG's apparent complicity in Williams's history of infringement, Johnson's belief of UMG's involvement is well-founded.

240.   On information and belief, WB Music obtained access to Johnson's Composition, Sound Recording, and/or infringing derivative and thereafter proceeded to copy, misappropriate, and/or incorporate its musical and/or lyrical contribution into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

241.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, WB Music took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing it did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

242.   WB Music never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

243.   Given WB Music's apparent complicity in Williams's history of infringement, Johnson's belief of WB Music's involvement is well-founded.

244.   On information and belief, Eardrummers obtained access to Johnson's Composition, Sound Recording, and/or infringing derivative and thereafter proceeded to copy, misappropriate, and/or incorporate its musical and/or lyrical contribution into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

245.   Given Eardrummers' apparent complicity in Williams's history of infringement, Johnson's belief of Eardrummers' involvement is well-founded.

246.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, Eardrummers took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing it did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

247.   Eardrummers never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

248.   On information and belief, Skooly had access to Johnson's Composition, Sound Recording, and/or infringing derivative when he copied, took, used,

1    misappropriated, and incorporated it/them into the infringing work, *I Lied,* and the

2    infringing albums, *The Pinkprint* and *Ransom* mixtape.

3    249.   Upon accessing Johnson's Composition, Sound Recording, and/or

4    infringing derivative, Skooly took and continues to take, use, usurp, copy, make

5    derivative works of, and publicly perform Johnson's Composition and/or Sound

6    Recording knowing he did not write, create, author, arrange, compose, or produce the

7    Composition and/or Sound Recording which is/are incorporated into Defendants'

8    infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

9    250.   Skooly never sought to secure a license or other permission from Johnson

10   herein and never obtained any permission from Johnson herein.

11   251.   On information and belief, Money Mack obtained access to Johnson's

12   Composition, Sound Recording, and/or infringing derivative and thereafter proceeded

13   to copy, misappropriate, and/or incorporate its musical and/or lyrical contribution into

14   the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom*

15   mixtape.

16   252.   Upon accessing Johnson's Composition, Sound Recording, and/or

17   infringing derivative, Money Mack took and continues to take, use, usurp, copy, make

18   derivative works of, and publicly perform Johnson's Composition and/or Sound

19   Recording knowing it did not write, create, author, arrange, compose, or produce the

20   Composition and/or Sound Recording which is/are incorporated into Defendants'

21   infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

253.   Money Mack never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

254.   On information and belief, Dean had access to Johnson's Composition, Sound Recording, and/or infringing derivative when she copied, took, used, misappropriated, and incorporated it/them into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

255.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, Dean took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing she did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

256.   Dean never sought to secure a license or other permission from Johnson herein and never obtained any permission from Johnson herein.

257.   On information and belief, DDD obtained access to Johnson's Composition, Sound Recording, and/or infringing derivative and thereafter proceeded to copy, misappropriate, and/or incorporate its musical and/or lyrical contribution into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

258.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, DDD took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording

knowing it did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

259.   DDD never sought to secure a license or other permission from Johnson and never obtained any permission from Johnson.

260.   On information and belief, Bell had access to Johnson's Composition, Sound Recording, and/or infringing derivative when he copied, took, used, misappropriated, and incorporated it/them into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

261.   Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, Bell took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing he did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

262.   Bell never sought to secure a license or other permission from Johnson herein and never obtained any permission from Johnson herein.

263.   On information and belief, DOES 1-10 had access to Johnson's Composition, Sound Recording, and/or infringing derivative when they copied, took, used, misappropriated, and incorporated it/them into the infringing work, *I Lied,* and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

264.  Upon accessing Johnson's Composition, Sound Recording, and/or infringing derivative, DOES 1-10 took and continues to take, use, usurp, copy, make derivative works of, and publicly perform Johnson's Composition and/or Sound Recording knowing they did not write, create, author, arrange, compose, or produce the Composition and/or Sound Recording which is/are incorporated into Defendants' infringing work, *I Lied*, and the infringing albums, *The Pinkprint* and *Ransom* mixtape.

265.  DOES 1-10 never sought to secure a license or other permission from Johnson herein and never obtained any permission from Johnson herein.

266.  Despite the foregoing, Minaj, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

267.  Despite the foregoing, Harajuku, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

268.  Despite the foregoing, SOU, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

269.   Despite the foregoing, UMG, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

270.   Despite the foregoing, WB Music, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

271.   Despite the foregoing, Williams, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

272.   Despite the foregoing, Eardrummers, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

273.   Despite the foregoing, Skooly, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

274.   Despite the foregoing, Money Mack, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

275.   Despite the foregoing, Dean, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

276.   Despite the foregoing, DDD, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

277.   Despite the foregoing, Bell, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

278.   Despite the foregoing, DOES 1-10, among other things, prepared the infringing work, *I Lied*, using Johnson's copyright protected Composition, Sound Recording, and/or infringing derivative, thereby infringing Johnson's exclusive rights under the Copyright Act.

279.   Minaj individually or collectively reproduced the infringing work, *I Lied*, published and performed it thereby infringing Johnson's exclusive rights under the Copyright Act.

280.   Harajuku on its own or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

281.   SOU on its own or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

282.   UMG on its own or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

283.   WB Music on its own or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

284.   Williams individually or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

285.   Eardrummers on its own or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

286. Skooly individually or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

287. Money Mack on its own or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

288. Dean individually or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

289. DDD on its own or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

290. Bell individually or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

291. DOES 1-10 individually or collectively reproduced the infringing work, *I Lied*, distributed it, published it, broadcast it, performed, or caused or contributed to the same, thereby infringing Johnson's exclusive rights under the Copyright Act.

292. Minaj was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other

Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

293.   Harajuku was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

294.   SOU was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

295.   UMG was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

296.   WB Music was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

297.   Williams was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by

other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

298.  Eardrummers was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

299.  Skooly was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

300.  Money Mack was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

301.  Dean was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

302.  DDD was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other

Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

303.   Bell was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

304.   DOES 1-10 was and/or is contractually engaged in the production, manufacture, and worldwide distribution of musical works written and/or produced by other Defendants including, but not limited to, Defendants' infringing work, *I Lied,* and infringing albums, *The Pinkprint* and *Ransom* mixtape.

305.   As detailed above, Defendants' unlawful taking and copying of Johnson's Composition and/or Sound Recording, demonstrates Defendants' individual or collective willful, malicious, intentional, and deliberate efforts to unlawfully misappropriate, and use Johnson's copyright protected Composition and/or Sound Recording with complete disregard for Johnson's rights and constitutes a brazen violation of the Copyright Act.

306.   Minaj knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

307.   Harajuku knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

308.   SOU knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

309.   UMG knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

310.   WB Music knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

311.   Williams knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

312.   Eardrummers knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

313.   Skooly knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

314.   Money Mack knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

315.   Dean knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

316.   DDD knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

317.   Bell knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

318.   DOES 1-10 knew or should have known that other Defendants' writing, creation, and production of Defendants' infringing work, *I Lied*, contained, took, used, usurped, misappropriated, and implemented Johnson's copyright protected Composition and/or Sound Recording without Johnson's knowledge or consent and without due and lawful credit and compensation to Johnson for same.

319.   Minaj knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

320.   Harajuku knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

321.   SOU knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

322.   UMG knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

323.   WB Music knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

324.   Williams knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

325.   Eardrummers knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

326.   Skooly knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

327.   Money Mack knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

328.   Dean knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

329.   DDD knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

330.   Bell knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

331.   DOES 1-10 knew or should have known of the striking similarities (or at least substantial similarities) Johnson's Composition and/or Sound Recording and Defendants' infringing work, *I Lied*, that is contained in, used in, taken, copied, misappropriated, and implemented by Defendants in Defendants' infringing work, *I Lied*.

332. Defendants have continued to further authorize and execute the manufacturing of worldwide distribution of all medium formats of Defendants' infringing work, *I Lied*, and their infringing album, *The Pinkprint* including, but not limited to: singles, albums, records, CDs, DVDs, internet streams, and/or concert performances and the like, substantially utilizing, taking, copying, and misappropriating Johnson's copyright protected Composition and Sound/Recording in and as part of Defendants' infringing work, *I Lied*, and their infringing album, *The Pinkprint* and *Ransom* mixtape throughout the world.

333.   Johnson's Composition and/or Sound Recording was/were taken, copied, used, and misappropriated by Defendants without the opportunity for Johnson to agree to confer the benefit of consent to Defendants to copy, use, take, implement, or create derivative works from Johnson's copyright protected Composition and/or Sound Recording.

334.   As a direct result of the writing, creation, production, release, marketing, promotion, sales, performances, licensing, and/or distribution of Defendants' infringing work, *I Lied*, and their infringing album, *The Pinkprint*, Defendants herein received and accepted, and continue to receive and accept financial enrichment, financial gains, financial profits, monies, income and/or revenues from the writing, production, sale, and worldwide distribution of Defendants' infringing work, and further receive and continue to receive the same unjustly and to the financial detriment and expense of Johnson as set forth herein.

335.   As a direct result of the writing, creation, production, release, marketing, promotion, sales, performances, licensing, and/or distribution of Defendants' infringing work, *I Lied*, and the infringing *Ransom* mixtape, Defendants herein received and accepted, and continue to receive and accept financial enrichment, financial gains, financial profits, monies, income and/or revenues from the writing, production, sale, and worldwide distribution of Defendants' infringing work, and further receive and continue to receive the same unjustly and to the financial detriment and expense of Johnson as set forth herein.

336.   Such unjust enrichment to Defendants is contrary to Johnson's exclusive rights to reproduce and distribute his copyright protected work and create and authorize the creation of derivative works under U.S. copyright law.

337.   It is against equity and good conscience to permit the Defendants herein to retain, in perpetuity, the ill-obtained financial unjust enrichments gained and received by Defendants and sought by Johnson for recovery under this action herein.

338.   Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Johnson great and irreparable injury that cannot fully be compensated or measured in money. Johnson has no adequate remedy at law.

## COUNT II
### VICARIOUS COPYRIGHT INFRINGEMENT

339.   Johnson repeats and realleges the allegations contained in Paragraphs 1 through 338 of the Complaint as if fully set forth herein.

340.   To the extent that Minaj did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Minaj is vicariously liable for the copyright infringement alleged above because she had the right and ability to control the infringing conduct.

341.   Minaj failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and/or *Ransom* mixtape.

342.   Minaj has a direct financial interest in *I Lied* and the *Pinkprint*.

343.   On information and belief, Minaj has a direct financial interest in *I Lied* and the *Ransom* mixtape.

344.   To the extent that Harajuku did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Harajuku is vicariously liable for the copyright infringement alleged above because it had the right and ability to control the infringing conduct.

345.   Harajuku failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

346.   Harajuku has a direct financial interest in *I Lied* and the *Pinkprint.*

347.   On information and belief, Harajuku has a direct financial interest in *I Lied* and the *Ransom* mixtape.

348.   To the extent that SOU did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, SOU is vicariously liable for the copyright infringement alleged above because it had the right and ability to control the infringing conduct.

349.   SOU failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

350.   SOU has a direct financial interest in *I Lied* and the *Pinkprint.*

351.   On information and belief, SOU has a direct financial interest in *I Lied* and the *Ransom* mixtape.

352.   To the extent that UMG did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, UMG is vicariously liable for the copyright infringement alleged above because it had the right and ability to control the infringing conduct.

353.   UMG failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

354.    UMG has a direct financial interest in *I Lied* and the *Pinkprint.*

355.   On information and belief, UMG had a direct financial interest in *I Lied* and the *Ransom* mixtape.

356.   To the extent that WB Music did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, WB Music is vicariously liable for the copyright infringement alleged above because it had the right and ability to control the infringing conduct.

357.   WB Music failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

358.   WB Music has a direct financial interest in *I Lied* and the *Pinkprint*.

359.   On information and belief, WB Music has a direct financial interest in *I Lied* and the *Ransom* mixtape.

360.   To the extent that Williams did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Williams is vicariously liable for the

1   copyright infringement alleged above because he had the right and ability to control the

2   infringing conduct.

3       361.   Williams   failed   to   take   reasonable   measures   to   avoid   copyright

4   infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and

5   the *Ransom* mixtape.

6       362.   Williams has a direct financial interest in *I Lied* and the *Pinkprint.*

7       363.   Williams has a direct financial interest in *I Lied* and the *Ransom* mixtape.

8       364.   To the extent that Eardrummers did not engage in the direct infringement

9   of Johnson's Composition and/or Sound Recording, Eardrummers is vicariously liable

10   for the copyright infringement alleged above because it had the right and ability to

11   control the infringing conduct.

12       365.   Eardrummers   failed   to   take   reasonable   measures   to   avoid   copyright

13   infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and

14   *Ransom*.

15       366.   Eardrummers has a direct financial interest in *I Lied* and the *Pinkprint.*

16       367.   On information and belief, Eardrummers has a direct financial interest in *I*

17   *Lied* and the *Ransom* mixtape.

18       368.   To the extent that Skooly did not engage in the direct infringement of

19   Johnson's Composition and/or Sound Recording, Skooly is vicariously liable for the

20   copyright infringement alleged above, because on information and belief, he had the

21   right and ability to control the infringing conduct.

369.   Skooly failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

370.   Skooly has a direct financial interest in *I Lied* and the *Pinkprint*.

371.   Skooly has a direct financial interest in *I Lied* and the *Ransom* mixtape.

372.   To the extent Money Mack did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Money Mack is vicariously liable for the copyright infringement alleged above because it had the right and ability to control the infringing conduct.

373.   Money Mack failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

374.   Money Mack has a direct financial interest in *I Lied* and the *Pinkprint*.

375.   On information and belief, Money Mack has a direct financial interest in *I Lied* and the *Ransom* mixtape.

376.   To the extent Dean did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Dean is vicariously liable for the copyright infringement alleged above, because on information and belief, she had the right and ability to control the infringing conduct.

377.   Dean failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

378.   Dean has a direct financial interest in *I Lied* and the *Pinkprint*.

379.   On information and belief, Dean has a direct financial interest in *I Lied* and the *Ransom* mixtape.

380.   To the extent DDD did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, DDD is vicariously liable for the copyright infringement alleged above, because on information and belief, it had the right and ability to control the infringing conduct.

381.   DDD failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

382.   DDD has a direct financial interest in *I Lied* and the *Pinkprint*.

383.   On information and belief, DDD has a direct financial interest in *I Lied* the *Ransom* mixtape.

384.   To the extent Bell did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Bell is vicariously liable for the copyright infringement alleged above because he had the right and ability to control the infringing conduct.

385.   Bell failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and *Ransom*.

386.   Bell has a direct financial interest in *I Lied* and the *Pinkprint*.

387.   On information and belief, Bell has a direct financial interest in *I Lied* and the *Ransom* mixtape.

388.    To the extent DOES 1-10 did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, DOES 1-10 are vicariously liable for the copyright infringement alleged above because they had the right and ability to control the infringing conduct.

389.    DOES 1-10 failed to take reasonable measures to avoid copyright infringement in the production, manufacture, and/or release of *I Lied*, the *Pinkprint*, and/or *Ransom*.

390.     DOES 1-10 has/have a direct financial interest in *I Lied* and the *Pinkprint*.

391.    On information and belief, DOES 1-10 has/have had a direct financial interest in *I Lied* and the *Ransom* mixtape.

392.    On information and belief, Minaj maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in the underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing, broadcasting, and/or distributing of Defendants' infringing work, *I Lied;* their infringing album, *The Pinkprint;* and/or the *Ransom* mixtape.

393.    On information and belief, Harajuku maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those

obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

394.   On information and belief, SOU maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

395.   On information and belief, UMG maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

396.   On information and belief, WB Music maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

397.   On information and belief, Williams maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

398.   On information and belief, Eardrummers maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in

connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

399.   On information and belief, Skooly maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

400.   On information and belief, Money Mack maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

401.   On information and belief, Dean maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all

underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

402.   On information and belief, DDD maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

403.   On information and belief, Bell maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or

distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

404.   On information and belief, DOES 1-10 maintained and continues to maintain and have or own a significant degree of contractual and/or financial interest in any and all underlying and/or resulting legal ownership rights including, but not limited to, those obtained through copyright protections initiated and/or held, individually or jointly, by one or more of the Defendants and/or by any third parties related thereto, in connection with the creating, producing, marketing, selling, releasing, performing and/or distributing of Defendants' infringing work, *I Lied* and their infringing album, *The Pinkprint* and *Ransom* mixtape.

405.   As result of Defendant(s)' infringement, Johnson has sustained substantial injury, loss, and damage in an amount to be determined at trial, and, on information and belief, Defendants have derived substantial income and profits to which they are not entitled.

406.   As a result of Defendant(s)' actions, the infringing work, *I Lied*, is available through multiple websites and/or streaming services hosted by Internet service providers all of the world. If Defendants are permitted to continue to use the Composition and/or Sound Recording, and/or not required to take reasonable steps to stop the continued exploitation of the infringing work, Johnson will suffer injury that is not compensable through an award of money damages, and for which he has no adequate remedy at law.

<u>**COUNT III**</u>

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

407.   Johnson repeats and realleges the allegations contained in Paragraphs 1 through 406 of the Complaint as if fully set forth herein.

408.   To the extent that Minaj did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Minaj knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

409.   To the extent that Minaj did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Minaj knew or had reason to know of the copyright infringement alleged above.

410.   To the extent that Harajuku did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Harajuku knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

411.   To the extent that Harajuku did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Harajuku knew or had reason to know of the copyright infringement alleged above.

412.   To the extent that SOU did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, SOU knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

413.   To the extent that SOU did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, SOU knew or had reason to know of the copyright infringement alleged above.

414.   To the extent that UMG did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, UMG knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

415.   To the extent that UMG did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, UMG knew or had reason to know of the copyright infringement alleged above.

416.   To the extent that WB Music did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, WB Music knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

417.   To the extent that WB Music did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, WB Music knew or had reason to know of the copyright infringement alleged above.

418.   To the extent that Williams did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Williams knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

419.   To the extent that Williams did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Williams knew or had reason to know of the copyright infringement alleged above.

420.   To the extent that Eardrummers did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Eardrummers knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

421.   To the extent that Eardrummers did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Eardrummers knew or had reason to know of the copyright infringement alleged above.

422.   To the extent that Skooly did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Skooly knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

423.   To the extent that Skooly did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Skooly knew or had reason to know of the copyright infringement alleged above.

424.   To the extent that Money Mack did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Money Mack knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

425.   To the extent that Money Mack did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Money Mack had knew or reason to know of the copyright infringement alleged above.

426.   To the extent that Dean did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Dean knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

427.   To the extent that Dean did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Dean knew or had reason to know of the copyright infringement alleged above.

428.   To the extent that DDD did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Dat Damn knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

429.   To the extent that DDD did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, DDD knew or had reason to know of the copyright infringement alleged above.

430.   To the extent that Bell did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, Bell knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

431.   To the extent that Bell did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, Bell knew or had reason to know of the copyright infringement alleged above.

432.   To the extent that DOES 1-10 did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, on information and belief, DOES 1-10 knowingly induced, participated in, or aided and abetted the copyright infringement alleged above.

433.   To the extent that DOES 1-10 did not engage in the direct infringement of Johnson's Composition and/or Sound Recording, DOES 1-10 knew or had reason to know of the copyright infringement alleged above.

434.   By reason of the foregoing, some or all Defendants copied or aided in the copying and performing of Johnson's Composition and/or Sound Recording in various media without Johnson's permission.

435.   Defendants undertook these actions both individually and jointly. Defendants conspired and acted in concert with one another to accomplish their scheme to commit such acts, which they knew would damage, violate, and infringe Johnson's copyrights.

436.   As a result of the Defendants' unlawful and deliberate conduct as set forth above, Johnson has been, and will continue to be, damaged.

437.   Defendants unlawful conduct, as set forth herein, was deliberate, intentional, malicious, and willful.

438.   As a result of Defendants' unlawful conduct as set forth herein, all Defendants are jointly and severally liable for contributory infringement of Johnson's copyrights.

439.   Defendants' actions have caused and will continue to cause irreparable damage to Johnson, for which Johnson has no remedy at law. Unless Defendants are restrained by this court from continuing their infringement of Johnson's copyrights, these injuries will continue to occur in the future. Johnson is accordingly entitled to injunctive relief restraining Defendants from further infringement.

**COUNT IV**
**DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA")**
**FALSIFICATION AND REMOVAL OF CMI (17 U.S.C. § 1202 *et seq.*)**

440.   Johnson repeats and realleges the allegations contained in Paragraphs 1 through 439 of the Complaint as if fully set forth herein.

441.   Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are aware that digital music contains CMI.

442.   Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are aware that CMI is used to identify the owners of and to protect digital music/works.

443.   On information and belief, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 use(s) CMI to identify and protect their works.

444.   Each of Johnson's musical works contained on his hard drive contained CMI including but not limited to Johnson's name and/or pseudonym, song title, file name, and/or meta data which was conveyed in connection with Johnson's musical works.

445.   On information and belief, Exhibit E contains a partial listing of musical works contained on Johnson's hard drive (along with CMI) when it was improperly obtained and possessed by some or all Defendants.

446.   Given   expert   forensic   musicologist,   Dr.   Tomaro's   conclusion   that Johnson's Works and the infringing work are striking similar, Johnson believes that since some or all Defendants removed and falsified CMI on Johnson's Infringed Works (*OnMySleeve*), that it highly likely that Defendants did the same with his other musical works contained on his hard drive, including those identified at Exhibit E.

447.   On information and belief, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 either separately or in concert with each other intentionally removed Johnson's CMI from his musical works.

448.   On information and belief, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 knew, or had reason to know, that such removal and/or alteration of CMI would induce, enable,   facilitate,   or   conceal   responsible   Defendant(s)'   infringement   of   Johnson's

copyrights because each Defendant is familiar with CMI, its purposes, and use CMI to protect their own copyrightable works.

449.  On information and belief, after obtaining access to Johnson's musical works on the hard drive, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10, either separately or in concert with each other, intentionally and knowingly provided false CMI (at the very least, false identification of authorship, song title, and/or file names) in connection with Johnson's musical works.

450.  On information and belief, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10, either separately or in concert with each other, intentionally and knowingly distributed false CMI (at the very least, false identification of authorship, song title, and/or file names) in connection with Johnson's musical works internally among Defendants and/or to other third-parties.

451.  On information and belief, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10, either separately or in concert with each other, knew that the CMI it conveyed in connection with Johnson's musical works was false because Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 knew that they were not the true author(s) and copyright owner(s) of the musical works.

452.   On information and belief, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10, either separately or in concert with each other, knowingly provided such false CMI and distributed such false CMI in connection with the Johnson's musical works.

453.   On information and belief, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 knowingly distributed Johnson's musical works or copies of Johnson's musical works with the knowledge that the CMI had been removed.

454.   Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 knew or had reason to know that the aforementioned actions would induce, enable, facilitate, or conceal the infringement of Johnson's copyrights.

455.   Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 engaged in the aforementioned conduct with the intent to induce, enable, facilitate, or conceal the infringement of Johnson's copyrights.

456.   Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 engaged in the above unlawful conduct without the consent or authorization of Johnson.

457.   As a result of Maraj's, Harajuku's, UMG's, SOU's, WB Music's, Williams's, Eardrummers', Skooly's, Money Mack's, Dean's, DDD's, Bell's, and/or

1  DOES 1-10 wrongful acts as alleged herein, Johnson has sustained significant injury and

2  monetary damages.

3                              ### COUNT V

   **CONTRIBUTORY LIABILITY UNDER 17 U.S.C. § 1202 *et seq.***

4

5       458.   Johnson repeats and realleges the allegations contained in Paragraphs 1

   through 457 of the Complaint as if fully set forth herein.

6

7       459.   To the extent either Maraj, Harajuku, UMG, SOU, WB Music, Williams,

8  Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are not

9  directly responsible for the DMCA violations above, Maraj, Harajuku, UMG, SOU, WB

   Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES

10 1-10 had actual or constructive knowledge of the DMCA violations alleged above.

11

12      460.   To the extent either Maraj, Harajuku, UMG, SOU, WB Music, Williams,

   Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are not

13 directly responsible for the DMCA violations above, on information and belief, Maraj,

14 Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack,

15 Dean, DDD, Bell, and/or DOES 1-10 knowingly induced, participated in, or aided and

16 abetted the violations of the DMCA alleged above.

17

18      461.   To the extent either Maraj, Harajuku, UMG, SOU, WB Music, Williams,

19 Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are not

   directly responsible for the DMCA violations above, on information and belief, Maraj,

20 Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack,

21

Dean, DDD, Bell, and/or DOES 1-10 knew or had reason to know of the violations of the DMCA alleged above.

462. By reason of the foregoing, some or all Defendants aided in the DMCA violations alleged above without Johnson's permission.

463. Defendants undertook these actions both individually and jointly. Defendants conspired and acted in concert with one another to accomplish their scheme to commit such acts, which they knew or had reason to know would damage, violate, and infringe Johnson's copyrights.

464. Defendants unlawful conduct, as set forth herein, was deliberate, intentional, malicious, and willful.

465. As a result of the Defendants' unlawful and deliberate conduct as set forth above, Johnson has been, and will continue to be, damaged.

466. As a result of Defendants' unlawful conduct as set forth herein, all Defendants are jointly and severally liable.

## COUNT VI
### VICARIOUS LIABILITY UNDER 17 U.S.C. § 1202 *et seq.*

467. Johnson repeats and realleges the allegations contained in Paragraphs 1 through 466 of the Complaint as if fully set forth herein.

468. To the extent either Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are not directly responsible for the DMCA violations above, Maraj, Harajuku, UMG, SOU, WB

Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are vicariously liable because he/she/it has the right and ability to supervise and control its own conduct and conduct of its agents concerning the integrity of CMI of third-party works, including but not limited to preventing the unauthorized removal and/or falsification of the CMI conveyed in connection with third-party works (*i.e.,* Johnson's musical works) and to ensure proper attribution.

469.   To the extent either Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are not directly responsible for the DMCA violations above, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10, failed to take reasonable measures to maintain the integrity of the CMI conveyed in connection with some or all of Johnson's musical works.

470.   To the extent either Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 is/are not directly responsible for the DMCA violations above, Maraj, Harajuku, UMG, SOU, WB Music, Williams, Eardrummers, Skooly, Money Mack, Dean, DDD, Bell, and/or DOES 1-10 has a direct financial interest in the use of some or all of Johnson's musical works.

## **DEMAND FOR JURY TRIAL**

471.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

472.   WHEREFORE, Johnson prays for judgment against all Defendants, jointly and severally, and in its favor as follows:

    a.  For a judgment permanently enjoining and restraining Defendants and their agents, servants, and employees, and all other persons acting in concert and participation with Defendants or acting on their behalf, and each of them, from copying or otherwise using or exploiting the infringing album, *The Pinkprint, Ransom* mixtape, and the infringing work, *I Lied*, including its interpolation of the Composition and/or Sound Recording;

    b.  For a judgment permanently enjoining and restraining Defendants and their agents, servants, and employees, and all other persons in active concert and participation with Defendants or acting on their behalf, and each of them, to take reasonable steps to prevent third parties from using or exploiting the infringing work, *I Lied*, including its interpolation of the Composition and/or Sound Recording;

    c.  For a judgment permanently enjoining and restraining Defendants and their agents, servants, and employees, all other persons acting in concert and participation with Defendants or acting on their behalf, and each of them, to take reasonable steps to prevent third parties from the use of Johnson's other musical works contained on his hard drive;

    d.  For a judgment declaring that Johnson was an author of the music of *I Lied*;

e.  For a judgement ordering that Defendants publicly and prominently provide Johnson with attribution credit for his contribution to *The Pinkprint, Ransom,* and *I Lied*;

f.  An award of actual damages and Defendants' profits;

g.  An award for statutory damages for continued infringement;

h.  An award of statutory damages for willful infringement;

i.  An award of up to $25,000 per violation of 17 U.S.C. § 1202(a);

j.  An award of up to $25,000 per violation of 17 U.S.C. § 1202(b),

k.  An award of exemplary damages;

l.  An award of pre-judgment and post-judgment interest on any monetary award;

m. An award of Johnson's costs including his reasonable attorneys' fees;

n.  An award of future royalties for all performances, sales, derivatives, and uses of *I Lied*;

o.  An award of any and all equitable relief to which Johnson may be entitled; and

p.  For such other and further relief as the Court deems just and proper.

1   Dated: January 22, 2024                    Respectfully submitted,

2                                              /s/ Dayna C. Cooper
                                               Dayna C. Cooper (*pro hac vice*)
3                                              Dayna@CooperLegalSolutions.com
                                               COOPER LEGAL, LLC
4                                              1 Olympic Pl., Suite 900
                                               Towson, MD 21204
5                                              Telephone: (202) 642 5470
                                               Facsimile: (757) 257 9878

6                                              Laurence M. Sandell (SBN 262186)
7                                              lsandell@meimark.com
                                               MEI & MARK LLP
8                                              P.O. Box 65981
                                               Washington, DC 20035-5981
9                                              Telephone: 888-860-5678
                                               Facsimile: 888-706-1173

10                                             Manni Li (SBN 273984)
11                                             mli@meimark.com
                                               Mei & Mark LLP
12                                             9440 Santa Monica Blvd., Suite 301
                                               Beverly Hills, CA 90212
13                                             Telephone: 888-860-5678 ext. 713
                                               Facsimile: 310-564-2769

14                                             *Attorneys for Plaintiff,* Julius Johnson

15

16

17

18

19

20

21