DAYNA C. COOPER *(pro hac vice pending)*
Dayna@CooperLegalSolutions.com
COOPER LEGAL, LLC
1 Olympic Pl., Suite 900
Towson, MD 21204
Telephone: (202) 642 5470
Facsimile: (757) 257 9878

*Attorneys for Plaintiff Julius Johnson*
(Additional attorneys listed on signature page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>ONIKA TANYA MARAJ, et al.<br><br>Defendants. | **Case No. 2:23-cv-5061-PA-SSCx**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR LEAVE TO AMEND PLEADINGS TO (RE)ADD PARTIES, AND TO RESET THE PROCEDURAL SCHEDULE**<br><br>**Date: November 4, 2024**<br>**Time: 1:30 P.M**<br><br>**Honorable Percy Anderson** |

1

2

# TABLE OF CONTENTS

3

4   I.    INTRODUCTION..................................................................................4

5   II.   PROCEDURAL AND FACTUAL RECITATION ..........................................6

    A.   Relevant Procedural History..........................................................7

6   B.   Despite Plaintiff's Diligence, the Williams DefendantsAppear to Have "Hid

7        the Ball" During Discovery to Frustrate and Delay Plaintiff ........................9

    III.  ARGUMENT..................................................................................16

8   A.   LEGAL STANDARD ................................................................16

9   B.   Plaintiff Has Good Cause To Re-Add Marcus Bell and Add Eardrummers

        Entertainment through His Fourth Amended Complaint ............................18

10      1.   Plaintiff Has Been Diligent ........................................................18

11      2.   Four of the Five Factors Support Granting Leave to Amend...................18

12      3.   In View of the Williams Defendants' Actions, "Justice So Requires"

            Leave to Amend...........................................................................24

13  C.   The Discovery Schedule Should be Reset to Enable Full Participation of

        Bell and Entertainment, and Permit Plaintiff the Obtain the Discovery to

14      Which It Is Entitled ......................................................................26

15  IV.   CONCLUSION..................................................................................26

16

17

18

19

20

21

22

# TABLE OF AUTHORITIES

**CASES**

*Cole v. CRST, Inc.,*
  317 F.R.D. 141 (C.D. Cal. 2016) ................................................... 18, 24

*DCD Programs, Ltd., v. Leighton,*
  833 F.2d 183 (9th Cir. 1987) .................................................... 17, 18, 24

*Eminence Capital, LLC v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir.2003) ............................................................. 18

*Johnson v. Buckley,* 3
  56 F.3d 1067 (9th Cir. 2004) .............................................................. 18

*Johnson v. Mammoth Recreations,*
  975 F.2d (9th Cir.1992) ...................................................................... 17

*Kannar v. Alticor Inc.,*
  2010 WL 891289 (C.D. Cal. Mar. 10, 2010) ...................................... 17

**RULES**

Fed. R. Civ. P. 15(a) .............................................................................. 17

Fed. R. Civ. P. 16 .................................................................................. 17

Fed. R. Civ. P. 26(a) ............................................................................... 5

Fed.R.Civ.P. 21 ..................................................................................... 16

3

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF  MOTION FOR LEAVE TO AMEND PLEADINGS TO (RE)ADD PARTIES, AND TO RESET THE PROCEDURAL SCHEDULE**
CASE NO. 2:23-cv-05061-PA-SSCx

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and 16(b)(4), Plaintiff, Julius Johnson ("Plaintiff" or "Johnson") respectfully submits this Memorandum in support of his Motion for Leave to File his Fourth Amended Complaint to re-add Marcus Bell ("Bell"), add Eardrummers Entertainment LLC ("Entertainment"), Cash Money Records, LLC ("Cash Money"), and Republic Records ("Republic") as Defendants; and reset the procedural schedule accordingly.

## I.    INTRODUCTION

Due to the evasion and gamesmanship of Defendants Michael Len Williams, II ("Williams") and Sounds from Eardrummers, LLC ("Eardrummers," collectively "Williams Defendants"), Plaintiff has only recently (i) obtained information sufficient to serve Bell and (ii) learned of the existence and relevance of Entertainment—a company owned by Williams through which he engaged Bell and, apparently, received the underlying infringing work.

As for Cash Money, the extent of their involvement has been confirmed in discovery. With respect to Republic, due to the evasion and gamesmanship of some or all Defendants, Plaintiff has been unable to ascertain the full extent of their involvement because, despite attempts to obtain information during discovery, Defendants had not disclosed the extent of their involvement. However, the Republic website shows that the infringing album appeared to be offered for sale at some point

by Republic and thus they are confirmed to have played a significant role in the infringement alleged in Plaintiff's Complaint.

Plaintiff's diligent attempts to obtain relevant parties have been repeatedly denied and delayed by Defendants' willful obfuscation and repeated shirking of its discovery obligations. Since the inception of this case and today, Plaintiff has alleged and believed that Williams, himself, and through his company, Eardrummers, improperly obtained Johnson's copyrighted work, made minor modifications, and passed it along as his own work for, *inter alia*, inclusion in the song "I Lied" on the double-platinum album, "The Pinkprint."  FAC ¶¶ 34-35, 40-41, 81, 101, 238-239.

In the early months of this case, Plaintiff struggled to serve Defendant Marcus Bell, filing two motions seeking extensions and permission to engage in alternative service. And due to Plaintiff's difficulties in locating Bell, the Court dismissed Bell from the case *without* prejudice after the second. The Williams Defendants stood idly by.

This Court has explicitly directed that the parties "[a]t the very least shall **comply fully with the letter and spirit** of Fed. R. Civ. P. 26(a) and thereby obtain and produce most of what would be produced in the early stage of discovery." Dkt. 12 at §3(b) (emphasis added). But, when it was time for Initial Disclosures pursuant to Rule 26(a), the Williams Defendants elected not to even list Bell as a person who might have discoverable information relevant to his defenses—let alone abide by the

Court's directive.

Then, nearly *three months later*, in the Williams Defendants' delayed responses to Plaintiff's Interrogatories on the source of the infringing work, Bell suddenly re-emerged—perhaps as the most relevant individual in this case. Williams and Eardrummers made Bell the fall guy, who allegedly gave Williams the underlying infringing work to Williams before it was incorporated into "I Lied."

At that time, Williams produced a contract under which Bell was engaged to provide production services on behalf of non-party Eardrummers Entertainment, LLC for the infringing track "I Lied." Entertainment is also a company owned by Williams and likely to have profited substantially from Johnson's copyrighted works.

In addition, with respect to Republic, none of the Defendants listed them in their Initial Disclosures. Nor have any of the Defendants produced documents evincing any agreement with Republic even though public records suggests that Republic played a role in the creation, reproduction, and/or distribution of "I Lied".

Plaintiff expects, based on fruitless meet and confers engaged in prior to the filing of this Motion that the Williams Defendants will argue that Plaintiff's inability to discover Bell's contact information and the existence of Entertainment is the result of Plaintiff's lack of diligence. But this is belied by the Williams Defendants' blatant obfuscation during discovery, starting with their abject failure to abide by the Court's order regarding "the letter and spirit" of Initial Disclosures. Beyond this, the Williams

Defendants (and all parties) have already stipulated to the diligence of Plaintiff's (and all Defendants') pursuit of discovery in this case. Plaintiff expects that Defendants will argue the same with respect to Cash Money and Republic Records, but such arguments should be rejected for the same reasons.

For the reasons set forth below, Plaintiff's Motion for leave to file his Fourth Amended Complaint re-adding Bell and adding Entertainment, Cash Money, and Republic as Defendants should be granted. And, the procedural schedule should be reset accordingly.

## II.    PROCEDURAL AND FACTUAL RECITATION

### A.    Relevant Procedural History

On June 26, 2023, Plaintiff filed his First Complaint against, *inter alia*, Bell and the current Defendants. Dkt. No. 1. After several diligent, but unsuccessful attempts to locate and serve Bell, Plaintiff, on September 22, 2023, filed a Motion for Alternate Service Dkt. 24. On October 20, 2023, the court granted Plaintiff an extension to serve Bell, but denied the request to permit alternative service. Dkt. 50. On November 22, 2023, having been unable to locate Bell after redoubling of efforts, Plaintiff filed a renewed notice of motion for service by publication on Bell. Dkt. 60. On January 5, 2024, the Court denied Plaintiff's motion, dismissing Bell *without prejudice*. Dkt. 78. In the Parties' February 12, 2024, Joint Rule 26(f) Report, Plaintiff made clear his intention to seek discovery that would enable re-adding Bell as a

defendant. Dkt. 97 at 8.

On February 22, 2024, the Court issued the Schedule of Trial and Pretrial Dates, designating, *inter alia,* May 20, 2024 as the "Last Day for Hearing on Motion to Amend Pleadings or Add Parties" and September 30, 2024 as the Discovery Cut-off. Dkt. 102. The next day, the Court granted Plaintiff leave to file its Third Amended Complaint ("TAC"). Dkt. 104.

After Defendants' subsequent motion to dismiss the TAC was substantially denied Dkt. 120, Defendants filed their responsive Answers on May 3, 2024—just 17 days before the "Last Day for Hearing on Motion to Amend Pleadings or Add Parties." Dkts. 121-126.

Since then, the parties engaged in discovery and on August 26, 2024, the parties filed a joint stipulation/motion seeking to extend discovery and other aspects of the procedural schedule. Dkt. 131. Therein, Plaintiff and **<u>all</u>** Defendants expressly stipulated that "**The parties <u>diligently</u> have been <u>pursuing</u> discovery.**" Dkt. 131 at ¶3(emphasis added), *see also id*. at p.2, ¶¶5, 8, 10, 12, 14, 16 (further reciting diligence by parties and counsel). The Court granted the joint stipulation/motion, but not in the manner requested by the parties—extending the close of discovery to October 28, 2024, and the last day for hearing motions to November 4, 2024, as well as making other modifications to the procedural calendar. Dkt. 132.

**B.    Despite Plaintiff's Diligence, Defendants Appear to Have "Hid the Ball" During Discovery to Frustrate and Delay Plaintiff**

On May 24, 2024, the parties exchanged Initial Disclosures pursuant to Rule 26(a). Co-represented Defendants Williams and Eardrummers listed *only* Plaintiff, Williams, and non-party D.J Mormile as individuals "likely to have discoverable information" pursuant to Fed R. Civ. P. 26(a)(1). Ex. A. The Williams Defendants' May 24, 2024, Initial Disclosure also recited the "disclosures represent a **good faith** effort to identify individuals and documents" *Id.* (emphasis added). For his part,[1] Plaintiff explicitly identified Bell in his Initial Disclosures, but could only indicate his address/location as "TBD." Ex. B.

Less, than three weeks later, on July 12, 2024, Plaintiff served the following interrogatory on, *inter alia*, the Williams Defendants:

> Interrogatory No. 1. Describe in detail the facts and circumstances concerning the conception, development, and creation of the Disputed Work, including but not limited to … the ***identity of all individuals present at each session*** … and their role in connection with the conception, development, or creation of the Disputed Work….

Ex. D (Emphasis Added).

---

[1]Defendants Ester Dean ("Dean") and Songs of Universal ("SOU"), also listed "Marcus Anthony Bell, c/o of his counsel" on their Initial Disclosures as relevant to, *inter alia*, "lack of access to Plaintiff's alleged work." Ex. C. Yet, curiously, during Dean's deposition, she testified that she did not know who Bell was. The remaining Defendants did not list Bell in their Initial Disclosures.

On August 19, 2024, the Williams Defendants served delayed[2] responses and objections to Plaintiff's First Set of Interrogations and specifically identified Bell as being the (alleged) original creator of the subject work. In relevant part, Williams responded,

> To the best of Williams's understanding and recollection, Marcus Bell began creating the beat for the musical composition and sound recording "I Lied" at the home of a third party. Bell then brought the beat to Williams's home studio. To the best of Williams's recollection, he listened to the beat with Bell; either modified, or advised Bell on modifications to make to, the beat, and subsequently brought the then-existing musical composition to Nicki Minaj. Williams does not recall specific elements of the musical composition or sound recording "I Lied" that he modified or advised to be modified….FL Studio would have been used by Williams and/or Bell in Williams's home studio.

Ex. F009-F010.[3]

On July 30, 2024, Plaintiff served the following interrogatory on, *inter alia*, the Williams Defendants:

> Interrogatory No. 13. Identify and describe in detail your relationship, connection, affiliation with, or knowledge of all Persons listed in Plaintiff's 26(a) Disclosures.[4]

Ex. G. This, of course, included Bell. *See*, Ex. B-004 (Pl. Initial Disclosures).

---

[2] As professional courtesies, Plaintiff's counsel granted requests by Williams Defendants' counsel to extend the 30 day interrogatory response deadline, ultimately extending the response date to August 19, 2024. Ex. E.

[3] Eardrummers provided that it was "unaware of information in its possession, custody, or control that is responsive to this interrogatory." Ex. F-032.

[4] The same interrogatory was served on all Defendants. None of the other Defendants provided any contact information for Bell.

10

On August 29, 2024, in response to Interrogatory No 13 (and subject to objections), the Williams Defendants responded, in relevant part,

> [Defendant] responds as follows **based on [his/its] current knowledge after reasonable inquiry**: **[Defendant] currently is unaware of information in [his/its] knowledge, possession, custody, or control that is responsive to this interrogatory.**

Ex. H. (Emphasis Added).

Soon thereafter, these statements proved to be patently false,[5] because as discussed in more detail below, within 24 hours of his deposition, in which he was questioned about Bell, Williams provided an affidavit and Supplemental Initial Disclosures to include Bell's contact information. Such flagrant obfuscation, if not outright discovery misconduct, has given Plaintiff significant reason to doubt that the Williams Defendants have and will discharge their discovery obligations in and honest and forthright manner.[6]

---

[5] To date, the Williams Defendants still have not served verifications for these responses.

[6] Dean's and Williams's depositions and discovery requests reveal that there has been spoliation of evidence. Specifically, Dean advised that Williams alerted her to the lawsuit via text. Dean (Draft) Dep. 40:2-4; 41:10-15. Dean also testified that she received a letter. Dean (Draft) Dep. 44:7-11, 18-25, 45:1-9. To date, despite being served with discovery requests requesting such information, Dean has not produced any texts or letters. Ex. Q007-008. Doc. Req., 33-34. In fact, in response to Request 34, Dean provides, that she is "presently unaware of any non-privileged documents within the scope of this Request." In addition, and notably, contrary to Dean's testimony, Williams testified that he had not been in contact with any Defendants and suggested that he might no longer be in possession of texts dating back to the commencement of the case. Williams (Draft) Dep. 34:20-25; 35:2-5; 53:23-25; 54:2-6, 10-12. Although requested, no communications have been produced Williams. In

11

In addition, in response to Plaintiff's first document requests, on August 19, 2024, Williams produced a contract indicating that Eardrummers Entertainment, LLC was the party responsible for providing the services of both Williams and Bell for the infringing work. Ex. I at § 1(a). The agreement provides that Bell was engaged to provide production services on behalf of Entertainment, and explains why Bell gave Williams the infringing work. *Id.* Production of this contract was the first time Plaintiff's counsel had heard of Entertainment, and to counsel's knowledge, was the first reference to Entertainment in the entire litigation.[7]

Having been unsuccessful in acquiring information on Bell after sending several discovery requests and with the close of discovery fast approaching,[8] Plaintiff endeavored to attempt to obtain the information during depositions.

On September 10, 2024, Plaintiff deposed Williams. By that time, the Williams Defendants had still not meaningfully responded to interrogatory No. 13. During his deposition, Williams testified that he knew Bell for several years and taught Bell to develop beats. Ex. T, Williams (Draft) Dep. 18:17-24. In response to questions

---

fact in response to document requests 34, Williams provided, "[t]here are no documents in Williams's possession, custody, or control that may be responsive to this request." Ex. R . Doc. Req. 34, *see also*, 27 and 33.

[7] On August 19, 2024, WCM produced agreements as well for the first time naming, Eardrummers Entertainment, LLC as having a role in the production of "I Lied."

[8] Plaintiff is diligently working to send additional deficiency letters and conduct meet and confers with Defendants to ascertain relevant and discoverable information to which he is entitled. Plaintiff expects to file motion to compel with the Magistrate shortly.

seeking information on Bell's counsel and contact information, Williams demurred, but his counsel stated that he would take the request "under advisement." Ex. T, Williams (Draft) Dep. 22:4.

After **over three months** of withholding the information, the following day, Defendants Williams and Eardrummers, produced an affidavit of Marcus Bell ("Bell affidavit") "in support of their defenses" and Supplemental Initial Disclosures identifying Bell along with his contact information. Ex. J. The Williams Defendants declined to give any explanation as to why the contact information and declaration had not been provided earlier in discovery. The Bell affidavit appears to have been drafted by an attorney[9] in a manner carefully calculated to support the Williams Defendants' defense without revealing unquestionably relevant information that might subject it to investigation by Plaintiff. *Id.* at 007. For example, the Bell affidavit asserts that Bell created the work "at the home of a third party" without revealing the name of this mysterious "third party." *Id.* at 008 ¶ 7. That is, it substantially tracks the language recited in the Williams Defendants' response to interrogatory No. 1. Ex. F009-010.

In an abundance of caution and embodying continued diligence, Plaintiff served Bell with subpoenas for documents and testimony on September 17, 2024,

---

[9] Plaintiff can only speculate that Williams Defendants' counsel drafted it.

promptly after being provided with his information. Ex. K.[10, 11]

With respect to Republic records, Defendants have engaged in similar games of hid the ball. Specifically, Plaintiff propounded discovery requests on all Defendants requesting that they,

> Interrogatory No. 2: Describe in detail the circumstances surrounding each reproduction, distribution, display, sale, performance, or exploitation, ***including the persons involved and the nature of their involvement***; how the Disputed Work was reproduced, distributed, displayed, sold, performed, or otherwise exploited; the dates on which the Disputed Work was reproduced, distributed, displayed, sold, performed, or otherwise exploited; and (c) the number of copies reproduced, distributed, displayed, sold, performed, and otherwise exploited.

*See, e.g.* Ex. D.[12] (Emphasis Added).

In addition, Plaintiff submitted the following discovery requests to all Defendants:

> DOCUMENT REQUEST NO. 7: ***Documents sufficient to show all persons involved*** in the conception, development, or creation of the Disputed Work and ***each person's role*** in connection with the work's conception, development, or creation.

---

[10] To avoid overwhelming the Court with excess paper, the Complaint was extracted in the submission to the Court.

[11] On September 24, 2024, Bell was served. On September 25, 2024, counsel for Plaintiff had a telephone conversation with Bell regarding the (re)scheduling of his deposition at which time Bell advised that he was represented by counsel and would have his counsel reach out to reschedule. Cooper Decl. ¶¶ 13-14. On October 1, 2024, counsel for Williams Defendants sent an email advising that Bell's prior statements about being represented, was a reference to him. Cooper Decl. ¶¶ 14-15, Ex. U. That is, it appears that that counsel for the Williams Defendants will also represent Bell in this Action.

[12] A substantially identical interrogatory was served on all Defendants.

14

DOCUMENT REQUEST NO. 8: All contracts and other agreements *concerning the conception, development, or creation* of the Disputed Work.

DOCUMENT REQUEST NO. 11: *All contracts and agreements* concerning the *reproduction, publication, distribution, performance, advertisement, sale, or other exploitation* of the Disputed Work.

DOCUMENT REQUEST NO. 22: All documents concerning communications between Defendant *and any third party* about Plaintiff or Plaintiff's Work.[13]

DOCUMENT REQUEST NO. 25: Produce all documents relating to the *ownership and chain of title* of the Disputed Work and elements of the Disputed Work, including assignments, transfers, and any other documents evidencing ownership rights.

DOCUMENT REQUEST NO. 41: All documents concerning any third-party inquiries regarding the purchase of any interest in the Disputed Work and responses to any such inquiries.

*See, e.g.* Ex. P.[14] (Emphasis Added). All of the seven requests above would require some or all Defendants produce an agreement with Cash Money, Republic, or some other label outlining their involvement in the "*conception, development, or creation*" and/or "*reproduction, publication, distribution, public display, advertisement, sale, or other exploitation*" of "I Lied."

---

[13] Logic dictates that at least one named Defendant has contacted Cash Money and/or Republic or some other label/entity of the lawsuit and claims alleged therein to alert them of any potential exposure.

[14] Requests for Production substantially identical to these were served on all Defendants.

15

On August 19, 2024 and August 26, 2024, Williams and then Minaj/ Harajuku Barbie Music, respectively, produced an agreement outlining Young Money's involvement.[15] Ex. I-001 § (1)(a).[16] On August 19, 2024, SOU produced an email transmitting a Song Information Sheet naming Cash Money as the record label. Ex. L. Accordingly, Plaintiff has only recently received confirmation that Cash Money should be joined. With respect to Republic, to date, Plaintiff has not received an agreement between any party and Republic, but the infringing album appears to have been offered for sale on its website at some point. Ex. M008-009. Accordingly, despite having received no discovery from Defendants, the offering for sale is sufficient to support Plaintiff's allegations regarding Republic's involvement.

## III.  ARGUMENT

### A.    LEGAL STANDARD

Rule 21 of the Federal Rules of Civil Procedure recites, in relevant part, that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative *at any stage* of the action and on such terms as are just." Fed.R.Civ.P. 21 (emphasis added).

A motion seeking leave to amend a pleading after a scheduling order has been

---

[15] According to Louisiana secretary of state records, the entity was defunct at the time of the agreement. Ex. N (defunct as of February 15, 2013). Accordingly, Plaintiff is not currently seeking to join this entity as a party.

[16] To avoid overwhelming the Court with excess paper, rather than duplicating the agreement/exhibit Plaintiff has only producing the agreement produced by Williams.

16

entered is governed in the first instance by the requirements of Rule 16(b). *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607–08 (9th Cir.1992). Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. Good cause may be established by showing that the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Id*. (citing and quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). Although a court may consider other factors, such as whether amending the scheduling order would prejudice the opposing party, "the focus of the inquiry is upon the moving party's reasons for seeking modification.

Upon a showing of "good cause," the party seeking to modify a pleading after the date specified in the scheduling order must then demonstrate that leave to amend is warranted under Rule 15. *See*, *Kannar v. Alticor Inc*., No. CV 09–2500 PSG (VBKx), 2010 WL 891289, at *2 (C.D. Cal. Mar. 10, 2010) (citing *Johnson*, 975 F.2d at 607). Rule 15 of the Federal Rules of Civil Procedure provides for amendment to a party's pleading by leave of the court at any time, and such leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *DCD Programs, Ltd., v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (noting that leave to amend should be granted with "extreme liberality" to "facilitate decision on the merits rather than on pleadings or technicalities"). The Court considers five

factors in assessing a motion for leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "The burden is on the party opposing amendment to show prejudice." *Cole v. CRST, Inc.,* 317 F.R.D. 141, 146 (C.D. Cal. 2016) (citing *DCD Programs*, 833 F.2d at 187). "Absent prejudice, or a strong showing of any of the remaining ... factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003).

### B.    Plaintiff Has Good Cause To (Re)Add Parties through His Fourth Amended Complaint

#### 1.    Plaintiff Has Been Diligent

Plaintiff has been diligent in his discovery efforts, but despite his diligence, Defendants denied Bell's relevance (through omission) until August 19, 2024, and did not reveal Bell's information until September 11, 2024. Moreover, the fact of Plaintiff's diligence cannot be disputed: The Williams Defendants (and all Defendants) have already stipulated that "[t]he parties diligently have been pursuing discovery." Dkt. 131-3 at §3. Accordingly, leave to amend should be granted to add Bell and Entertainment.

With respect to Cash Money and Republic, the copyright registration did not name either party as having an ownership interest in "I Lied." Ex. O. While there are

public records naming both parties, the records are inconsistent. Ex. M. Some name both parties as well as Young Money (which was defunct at the time of the release of "I Lied") and some only named Cash Money. *Id.* In an abundance of caution, to avoid naming unnecessary parties into the Action, Plaintiff relied on the most reliable record, government records from the U.S. Copyright Office, which did not name either Cash Money or Republic. As provided above, Plaintiff has propounded several discovery requests on Defendants which have revealed Cash Money's role, but with respect to Republic, while discovery has not been fruitful, their involvement is at least supported by the fact that the infringing album was offered for sale at some point on Republic's website. Ex. M008-009.

### 2.    Four of the Five Factors Support Granting Leave to Amend

First, there is no bad faith on the part of Plaintiff. Plaintiff only seeks to bring unquestionably relevant parties into the action, and has been transparent about seeking discovery sufficient to serve Bell since before Initial Disclosures were even exchanged. Dkts. 24, 50, 60, 78. Plaintiff has been trying to ascertain the location of Bell *at least* since his initial filing, and as outlined above, since the commencement of discovery.

Notwithstanding their ironic invocation of "good faith" in their Initial Disclosures, the Williams Defendants have engaged in bad faith conduct by purposefully withholding the contact information of Bell since at least their service of

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF  MOTION FOR LEAVE TO AMEND PLEADINGS TO (RE)ADD PARTIES, AND TO RESET THE PROCEDURAL SCHEDULE**
CASE NO. 2:23-cv-05061-PA-SSCx

Initial Disclosures on May 24, 2024 and through at least until September 11, 2024. Similarly, the Williams Defendants apparently hid the existence of their related entity, Entertainment, that directly participated in the underlying alleged infringement until at least August 19, 2024.

With respect to Cash Money and Republic, again, it is Defendants that have acted in bad faith. Defendants have long been fully aware of the labels' involvement in the "***conception, development, or creation***" and/or "***reproduction, publication, distribution, public display, advertisement, sale, or other exploitation***" but have elected not to disclose the information to Plaintiff.[17]

Bringing the relevant parties into the litigation is not bad faith; it ensures that justice is accomplished by permitting Plaintiff to protect his rights and recover his damages from those individuals and entities engaged in the illegal conduct—and especially those entities that are particularly culpable for the infringement at issue here.

Second, Defendants cannot establish undue delay on part of Plaintiff because as outlined above, Plaintiff has been diligent in attempting to ascertain Bell's location since well before the onset of the case, and after the case commenced, sent discovery requests targeted to obtain his identity and location. Dkt. 131 at ¶ 3; *see also id*. at

---

[17] Since Plaintiff has been unsuccessful in his attempts to get Defendants to cooperate in discovery, on September 26, 2024, Plaintiff issued a subpoena duces tecum to both entities to obtain information to shed light on the outstanding issues.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND PLEADINGS TO (RE)ADD PARTIES, AND TO RESET THE PROCEDURAL SCHEDULE**
CASE NO. 2:23-cv-05061-PA-SSCx

p.2, ¶¶ 5, 8, 10, 12, 14, 16 (further reciting diligence by parties and counsel); Exs. D and G. In addition, as detailed above Plaintiff has been diligent in attempting to ascertain information about the record companies via several discovery requests, but to no avail. Moreover, Defendants have already stipulated to Plaintiff's diligence in ***pursuing*** discovery. Dkt. 131 at ¶ 3; *see also id.* at p.2, ¶¶ 5, 8, 10, 12, 14, 16 (further reciting diligence by parties and counsel).

Third, the Williams Defendants cannot establish prejudice for actions created and caused by their exercise of legal gamesmanship and continued attempts[18] to withhold relevant information. In fact, given the relationships among Defendants in this action, the other Defendants are likely to have had Bell's information or had the ability to obtain Bell's information. For example, Dean's and SOU's Initial Disclosures stated that Bell was likely to have information regarding "lack of access." Ex. C-002. This, despite the fact that Dean testified that she had not heard of Bell. Ex. S, Dean (Draft) Dep. 30:15-19. Notably, counsel for Dean revealed on the record that counsel provided such information, but declined to reveal where, how, or when he obtained it:

---

[18] In his interrogatory response, Williams refers to a "third-party" residence where the work was allegedly created but does not identify this third-party. Ex. F009-F010. Similarly, in Bell's affidavit, the "third-party" is mentioned without disclosing his or her name. Ex. J-008 ¶ 7. It is undeniable that this individual is a key witness and potentially another defendant. The ongoing refusal to identify this "third party" may cause additional and unnecessary delays in the timely progression of the case.

21

I want this on the record. This is badgering the witness. She did not participate. She did not -- let me put it differently. ***She did not sign or verify the initial disclosures. They are prepared by counsel as to the information counsel has.*** For you to argue with her and ask her how she could identify a witness that she doesn't know, the answer is easy.· Her counsel put it in.

Ex. S, Dean Depo. 36:4-12 (emphasis added). Accordingly, it appears that Dean's counsel may have information that he withheld from the Initial Disclosures and/or discovery responses with respect to Bell—including, for example, contact information for Bell or his then (alleged) legal counsel. In addition, Defendant Nicki Minaj and Harajuku Barbie Music produced the same Entertainment contract produced by Williams naming Bell as being engaged to provide production services. Ex I at § 1(a).[19]

As for the other Defendants, as provided above, Plaintiff propounded at least seven requests and other Defendants failed to timely produce the requested information. Therefore, they cannot claim unfairness for a situation that is entirely of their own making. Moreover, any theoretical prejudice from resetting the procedural schedule is more harmful to Plaintiff, who is an independent creator seeking justice, than to sophisticated and powerful, well-resourced entities in the music industry using those very resources to engage in a scheme of delay and obfuscation designed to wear Plaintiff down and exhaust his resources.

---

[19] To avoid overwhelming the Court with excess paper, rather than duplicating the agreement/exhibit, Plaintiff has only produced the agreement produced by Williams.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND PLEADINGS TO (RE)ADD PARTIES, AND TO RESET THE PROCEDURAL SCHEDULE**
CASE NO. 2:23-cv-05061-PA-SSCx

Fourth, the addition is not futile, because it is now clear that Bell can be served in view of the (egregiously late) disclosure of his address, Williams regular contact with him, the fact that counsel for the Williams Defendants was able to obtain the Bell affidavit with such ease, and his most recent receipt of the subpoena. Moreover, Williams' identification of Bell as the individual who provided him with the infringing work places him at the heart of this lawsuit. As to Entertainment, Williams (or his counsel) can or should accept service on behalf of his company. As the entity that contracted with Bell with respect to the infringing work at issue, its connection to this case is also manifest. As for Cash Money, the contract produced in discovery evinces its involvement with the creation, reproduction, and distribution of the infringing work, and Republic is offering the infringing album for sale on its website. Accordingly, they should also be joined as parties. Ultimately, excluding these Defendants will cause an injustice, likely deny Plaintiff damages to which he is entitled, and, perhaps, prevent a full presentation of the evidence and adjudication on the merits.

As to the fifth factor, Plaintiff concedes that the Complaint has been amended previously in this Action. However, the attached proposed Fourth Amended Complaint is virtually identical to the TAC. *Compare* Ex. V *with* Dkt. 105. The only amendments are re-adding Bell as a party, along with contextual allegations present in the Second Amended Complaint; and adding Entertainment, Cash Money, and

23

Republic as parties. *Id.*.

In sum, Rule 15's policy of "extreme liberality" with respect to allowing amendment weighs heavily in favor of granting Plaintiff's motion. *See, DCD Programs*, 833 F.2d at 186. Defendants cannot demonstrate prejudice, nor can it carry its burden of making a "strong showing" that the remaining factors require denial of leave to amend. *See Cole*, 317 F.R.D. at 146

### 3. In View of the Williams Defendants' Actions, "Justice So Requires" Leave to Amend

Since Plaintiff's Initial Disclosures identified Bell, any Defendant having knowledge of Bell's whereabouts was obligated to provide his contact information in response to Plaintiff's Interrogatories. Finally, on September 11, 2024, Williams Defendants disclosed the information in their Supplemental Initial Disclosures.

Moreover, it is indisputable that Bell should have been identified in Williams's Initial Disclosures as Williams cannot defend his claim of independent creation[20] or innocent infringement since he was not the originator of the track, Bell was. Assuming *arguendo*, Williams believed he could defend without Bell, it is unquestionable that having worked with Bell through, not one but two of his companies[21] Bell's last known contact was within his possession, custody, or control and therefore should

---

[20] Williams Answer - Affirmative Or Other Defenses. Dkt.121 ¶¶ 5, 16-17.
[21] Ex. J007-008, Bell Aff. ¶ 3.

24

have been provided in response to Plaintiff's numerous interrogatory requests. In fact, there is no doubt Williams had Bell's contact information, because **within 24 hours** of being questioned about it at his deposition, and with discovery nearing its end, Williams provided Bell's affidavit and alongside Supplemental Initial Disclosures "in support of [Williams's and Eardrummers] defenses[.]"

Bell's affidavit raises several unanswered questions: (1) who is the mysterious "third-party" that Williams and Bell refuse to identify; (2) where is the original track that was allegedly created at this unnamed person's residence; and (3) why is Bell only now, over a year after the case began, offering any statement or taking responsibility when for several months Williams was allegedly fully aware that he was not the creator. The only inference to be drawn from these tactics employed by Williams Defendants, is that something is awry, otherwise the evasion and obfuscation would be unnecessary. These unresolved questions underscore the need and justice demands amending the party that appears to be at the heart of the case and conducting further discovery.

With respect to Cash Money and Republic, as the labels responsible for distributing the infringing work, they likely played a central role in the infringing activity. It is reasonable to conclude that they were aware of or contributed to the infringement, had the capacity to oversee and manage the infringing actions, and, unquestionably, had a direct financial stake in the infringement. Therefore, holding

them accountable is essential for justice. Furthermore, the Williams Defendants (and the other Defendants) should not rewarded for their gamesmanship.

**C.    The Discovery Schedule Should be Reset to Enable Full Participation of Bell, Entertainment, Cash Money, and Republic and Permit Plaintiff the Obtain the Discovery to Which It Is Entitled**

Discovery is nearing completion and Plaintiff expects that only minimal additional discovery will be required from the existing parties, with the primary focus now on the Williams Defendants and newly added Parties unless something unexpected arises that would require additional discovery. Due to Defendants' game of "hide the ball," it is essential that the discovery schedule be reset to permit Plaintiff to obtain the discovery to which he is rightfully entitled and address any outstanding issues related to these newly introduced parties. Resetting the schedule is necessary to avoid any prejudice to Plaintiff and ensure a fair process moving forward.

## IV.    CONCLUSION

For all the foregoing reasons, in the interest of justice, Plaintiff respectfully requests the Court grant Plaintiff leave to add parties, permitting the amendment of his Complaint to include Marcus Bell, Eardrummers Entertainment, LLC, Cash Money Records, LLC, and Republic Records. Plaintiff further requests that the Court order a revised scheduling order to accommodate the addition of these parties and any necessary adjustments to the discovery deadlines.

Dated: October 2, 2024                          Respectfully submitted,

                                                /s/    Dayna C. Cooper          Dayna
                                                C. Cooper (*pro hac vice*)
                                                Dayna@CooperLegalSolutions.com
                                                COOPER LEGAL, LLC
                                                1 Olympic Pl., Suite 900
                                                Towson, MD 21204
                                                Telephone: (202) 642 5470
                                                Facsimile: (757) 257 9878

                                                Laurence M. Sandell (SBN 262186)
                                                lsandell@meimark.com
                                                MEI & MARK LLP
                                                P.O. Box 65981
                                                Washington, DC 20035-5981
                                                Telephone: 888-860-5678
                                                Facsimile: 888-706-1173

                                                Manni Li (SBN 273984)
                                                mli@meimark.com
                                                Mei & Mark LLP
                                                9440 Santa Monica Blvd., Suite 301
                                                Beverly Hills, CA 90210
                                                Telephone: 888-860-5678 ext. 713
                                                Facsimile: 310-564-2769

                                                *ATTORNEYS FOR PLAINTIFF,*
                                                JULIUS JOHNSON

The undersigned, counsel of record for Plaintiff certifies that this brief contains 6409 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 2, 2024                          /s/    Dayna C. Cooper
                                                Dayna C. Cooper